# CRAVATH

Lauren A. Moskowitz
lmoskowitz@cravath.com
T+1-212-474-1648
New York

October 15, 2024

Particle Health Inc. v. Epic Systems Corporation, 24-cv-07174

Dear Judge Buchwald:

I write on behalf of Epic Systems Corporation ("Epic") pursuant to Your Honor's Individual Rule 2(B) to request a pre-motion conference in support of Epic's anticipated motion to dismiss the Complaint filed by Particle Health Inc. ("Particle") in the above-captioned matter.

This lawsuit is Particle's attempt to distract from the public reckoning stemming from Particle's customers violating patient privacy by improperly accessing patient records for non-treatment purposes, such as when Particle knowingly enabled access to patient data for a company that sells medical records analysis for class action lawsuits. Particle alleges that Epic had anticompetitive motives in identifying and raising questions with Carequality—a voluntary network for exchanging patient data for treatment—about Particle's suspicious activity on the network. But Particle brazenly admits that its own business model encourages payers to characterize health records requests as for "treatment" to get access to far more data than is permitted by HIPAA rules governing payer access to data. (Compl. ¶ 9. (acknowledging that "traditional payer use cases for medical records have not been considered 'treatment'").) In an effort to deliberately monetize patient data, Particle acted as a go-between on the Carequality network to substantiate its customers' claims that they were providing "treatment" to get them improper access to patient records. Interoperability networks like Carequality—on which automated responses to treatment-based queries for patient data are provided by healthcare systems—are built on trust that each participant is being honest about the purpose for its requests. Thus, when Epic detected suspicious activity, at the direction of its healthcare provider-led governing council it initiated a process under the Carequality voluntary dispute resolution process (id. ¶ 16), resulting in a corrective action plan for Particle (id. ¶ 17). Particle even acknowledges that it removed one of its customers after Epic raised its concerns. (Id. ¶ 110.) But instead of accepting responsibility, Particle launched this baseless lawsuit under the incredible notion that Epic violated the Sherman Act by initiating the agreed Carequality process and taking other steps to ensure that patient privacy was being protected. There are many deficiencies in the Complaint, including numerous factual misstatements, but this letter focuses, as it must, on core legal flaws that support dismissal in its entirety.

**Failure to Plead a Relevant Product Market.** To state a Sherman Act claim, a plaintiff must plausibly allege a relevant product market. *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237-38 (2d Cir. 2008). "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's

NEW YORK
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

LONDON
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

WASHINGTON, D.C.
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

favor, the relevant market is legally insufficient and a motion to dismiss may be granted". *Id.* (quotation omitted). Here, Particle alleges that the "relevant market at issue in this case is the payer platform market". (Compl. ¶ 52.) The products are "software platforms that allow payers to consolidate multiple aspects of their business on a single platform, including by [allowing] them the ability to retrieve [electronic health records] at scale through smooth, automated processes, and then to store and analyze those records". (*Id.* ¶ 53.) At odds with reality, Particle alleges that the only two participants in this supposed market are Epic and Particle. (*Id.* ¶ 62.)[1]

Instead of engaging, as it must, with the many competing and substitutable products that exist in the real world, Particle artificially narrows the market to a single category of customers—payers. *See Planetarium Travel, Inc. v. Altour Int'l, Inc.*, 97 F. Supp. 3d 424, 428 (S.D.N.Y. 2015) (defining a "market by customer is too narrow and unsupported"). Particle offers no reason *why* this purported market is limited to payers, aside from the conclusory allegation that "[o]ther types of platform software or methods for retrieving medical records do not have the same use case or application". (Compl. ¶ 56.) Particle admits that obtaining electronic health records at scale is a service sought by more than payers; many types of entities, including health care providers, do just that through various software providers and "third-party platforms, like Particle" that compete for that business. (*Id.* ¶¶ 46, 51.) And even if the market were limited to payers, Particle fails to address the dozens of other substitutable products that exist for payers to obtain these services, instead setting up a strawman that the fax machine is the only alternative. And beyond a passing reference to what a SSNIP test might look at if one were to be performed (*id.* ¶ 57), Particle fails to do any analysis of interchangeability or cross-elasticity of demand. Particle itself acknowledges that one of its customers, XCures, switched its services to *another* platform, Kno2, which Particle claims "does *not* compete with Epic in the payer platform market". (*Id.* ¶¶ 86-87.) In other words, either (1) Particle and Kno2 are in the same market, and the market is thus broader than Particle alleges, or (2) Particle, which provides services to payers who serve provider functions (so-called "pay-viders") is not a participant in the very market it defines. *See, e.g.*, *McCagg v. Marquis Jet Partners, Inc.*, 2007 WL 2454192, at *6 (S.D.N.Y. Mar. 29, 2007) ("The implausibility and extreme narrowness of [the] proposed market is perhaps best highlighted by the fact that if the Court were to accept it, one of the two defendants would nonetheless be dismissed for failure to compete in the proposed market").

**Failure to Plead Anticompetitive Conduct.** To state a Sherman Act Section 2 claim based on a monopoly theory, a plaintiff must allege sufficient facts to show that "were [the conduct] not intended to obtain or sustain monopoly power, [it] would be uneconomic and irrational". *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 487 (S.D.N.Y. 2016). The premise of Particle's claim is that Epic took actions that were motivated to stop Particle from entering into a new market. But conclusory allegations of "Epic's goal of harming Particle" (Compl. ¶ 88) must be ignored. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The conduct alleged here—removing access to medical records for certain of Particle's customers, requiring approval before onboarding new Particle customers, notification to Epic's health care provider customers about potential patient privacy violations, and initiating a private dispute resolution process with Carequality to investigate data breaches (*e.g.*, Compl. ¶¶ 12-16)—was a response to concerns over privacy of patient health information. This is a legitimate business purpose and is not (and cannot be) alleged to be uneconomic or irrational. *See Shak*, 156 F. Supp. 3d at 487 (dismissing complaint where "[n]o allegations raise[d] a non-speculative inference that . . . conduct [was] incompatible with the rational behavior of a legitimate competitor"). Particle simply fails to raise any non-speculative inference that the conduct had anything at all to do with competition.

---

[1] Particle also alleges "EHR Software" and "EHR Provision Services" markets, but states that its claims do not depend on these being "defined as relevant antitrust markets". (Compl. ¶¶ 28-29, 43.)

**Failure to Plead a Conspiracy.**  Particle similarly fails to allege "enough factual matter (taken as true) to suggest that an [illegal] agreement was made" in violation of Section 1 of the Sherman Act.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "An agreement can be alleged through direct evidence" or through "circumstantial facts supporting the inference that a conspiracy existed".  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019).  The Complaint fails to allege either type.  Particle conclusorily alleges that Epic "engaged in individualized dealings" with Particle's customers.  (Compl. ¶¶ 175.)  But Particle identifies only a single contact with one of its customers (XCures), and concedes that *Particle* initiated that contact.  (*Id.* ¶ 86.)  Particle also conclusorily alleges that Epic "consummated agreements to restrain competition with Carequality, members of the Carequality Steering Committee, [and] the Epic Care Everywhere Governing Council".  (*Id.* ¶ 176.)  And yet, Particle falsely claims that the Carequality Steering Committee "completely vindicated Particle" in its dispute with Epic (*id.* ¶ 123)—which, if true, undermines Particle's claim that the Steering Committee and Epic colluded in an anticompetitive agreement.

**Failure to Plead Antitrust Standing.**  To state a Sherman Act claim, a plaintiff must plead an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful".  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  To do so, the plaintiff must plead "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market".  *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139 (2d Cir. 1998) (quotation omitted).  As an initial matter, Particle cannot demonstrate an antitrust injury because the Complaint does not plausibly allege that Epic engaged in anticompetitive conduct as discussed above.  But even if it did, Particle still fails to plead that Epic's alleged anticompetitive conduct adversely affected competition as a whole, as opposed to Particle alone, which is insufficient.  *See, e.g.*, *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) ("Were the law construed [to permit harm to an individual competitor to suffice], routine disputes between business competitors would be elevated to the status of an antitrust action".).  Particle attempts to plead anticompetitive harm by conflating its own business with "competition" in the purported payer platform market based on an impermissibly narrow market with Epic as the only competitor to Particle.  That is insufficient to survive a motion to dismiss, including because once the relevant market is appropriately broadened to include all the many substitutes and competitors, Particle cannot plausibly allege that conduct that solely impacts Particle constitutes a threat to "an entire mode of competition".  (Compl. ¶ 143.)

**Failure to Plead State Law Claims.**  Particle's tortious interference claims fail because Particle cannot plead that Epic "acted for a wrongful purpose or used dishonest, unfair, or improper means".  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015).  Particle's allegations are a far cry from the type of "physical violence, fraud or misrepresentation" or "extreme and unfair economic pressure" that satisfy the "wrongful purpose" element.  *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 216 (W.D.N.Y. 2021).  Particle also fails to allege that it "would have entered into an economic relationship but for the defendant's wrongful conduct".  *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 349 (S.D.N.Y. 2009).  Particle's contractual interference claim further fails because Particle cannot plead that Epic intentionally procured XCures' breach without justification.  *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797-98 (S.D.N.Y. 2008).  Indeed, Particle's claim is based on the same singular conversation with XCures discussed above, which Particle itself initiated.  (Compl. ¶ 86.)  Particle also fails to allege false statements of fact for its defamation and libel claims.  Epic's opinions, including that Particle "*might* be inaccurately representing the purpose associated with its record retrievals" (*id.* ¶ 103) (emphasis added), are not actionable. *See, e.g.*, *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 221 (S.D.N.Y. 2023).

Respectfully submitted,

*/s/ Lauren A. Moskowitz*

Lauren A. Moskowitz

The Honorable Naomi Reice Buchwald
    United States Courthouse
        500 Pearl St.
            New York, NY 10007-1312

Copies To:

All Counsel of Record

BY ECF