# CRAVATH

Lauren A. Moskowitz
lmoskowitz@cravath.com
T+1-212-474-1648
New York

December 19, 2024

Particle Health Inc. v. Epic Systems Corporation, 24-cv-07174-NRB

Dear Judge Buchwald:

I write on behalf of Epic Systems Corporation ("Epic") pursuant to Your Honor's Individual Rule 2(E)(1) to outline the arguments advanced in Epic's motion to dismiss and to respectfully request oral argument.

This case is a baseless retributive attack directed at Epic for bringing to light the fact that Particle's customers were obtaining confidential patient medical records under false pretenses. Despite acknowledging that "privacy and security are paramount concerns" in the health care industry (¶ 14), Particle touts that its business model enables *payers* (health insurance companies) to purport to offer "treatment recommendations" in order to obtain patients' full medical records—far more than the "minimum necessary" information payers may obtain under HIPAA—and then use or distribute those records broadly for "secondary" purposes (¶ 9). Particle's customers obtain those records from health care providers through Carequality, a network that facilitates the electronic exchange of records for treatment purposes.  (¶ 16.) Carequality is built on trust that each participant is honest about the purpose for its requests and the scope of those requests are consistent with HIPAA.  (Ex. 2 at 2.)  Following reports of suspicious activity on Carequality involving Particle, Epic investigated and subsequently initiated a dispute against Particle pursuant to Carequality's dispute resolution process.  (¶¶ 16, 77; Ex. 2.)  It is undisputed that two Particle customers were suspended by Carequality as a result of the dispute process (Ex. 1 §§ IV.1.b.i, IV.2.b.i), and Particle concedes that, in response to Epic's concerns, Particle eventually removed both of those customers (¶ 104).

Notwithstanding the demonstrable legitimacy of Epic's and its health care provider customers' concerns, and the months-long Carequality process they used to address such concerns, Particle now claims that Epic's concerns were pretextual and baseless, and that Epic "manufactured [the] dispute" to squash Particle. (¶¶ 11-16, 134-37.)  Particle's invented claims, however, are supported only by conjecture and legal conclusions rather than facts.  The Complaint should therefore be dismissed in its entirety.

**Failure to Plead Antitrust Claims (Counts 1-5).**  Particle's antitrust claims under the Sherman Act and the Donnelly Act suffer from major overarching pleading deficiencies.

Particle Fails to Plead a Plausible Antitrust Product Market.  Particle's alleged "payer platform market" represents a clear "attempt to define the elements of the relevant market to suit [Particle's] desire for high [Epic] market share". *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 106 (2d Cir. 2002).  Particle restricts the alleged market to software sold to a particular set of

NEW YORK
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

LONDON
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

WASHINGTON, D.C.
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

customers—payers (¶ 53)—and to only Epic and Particle's products—a prime example of gerrymandering the alleged market to increase the defendant's market share.  But Particle does not allege any facts to show that payers differ from other customers with respect to their demand for this type of software.  Furthermore, it undertakes no analysis of the rule of reasonable interchangeability or cross-elasticity of demand, as it must to support its claim that the market should be limited solely to Epic and Particle's products.  It cannot simply ignore the myriad alternative software products.  Indeed, despite referencing that a customer *actually substituted* Particle's software with that of a competitor, Kno2, Particle then ignores that fact in defining its alleged market, and assumes the product is not a substitute.  (¶¶ 62, 87.)  Moreover, Particle artificially attempts to restrict the market to software that offers three functions in one product—record retrieval, storage, *and* analysis—without showing that the combination of those functions in one product is economically significant.

Particle Fails to Plead Section 2 Anticompetitive Conduct.  Particle fails to adequately plead anticompetitive conduct, *i.e.*, "conduct without a legitimate business purpose that makes sense only because it eliminates competition".  *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014).  Particle itself admits that the privacy and security of patient health records is "paramount" (¶ 14) to Epic and its customers "given obligations [they] must meet with respect to patient privacy" (¶ 112).  It is undisputed that two Particle customers were suspended as a result of the Carequality dispute process for improperly claiming a treatment purpose (Ex. 1 §§ IV.1-.2).  Epic's temporary suspension of certain Particle customers pending confirmation of their asserted treatment purpose, use of the Carequality dispute mechanism to investigate these privacy concerns, and notification to its own customers of the dispute all served the "legitimate business purpose" of protecting the privacy and security of patient data.  *In re Adderall*, 754 F.3d at 133.  Particle's conclusory allegations that these concerns were mere "pretext" are not only entirely unsupported (*see, e.g.*, ¶¶ 78, 134-37), but they are undermined by documents Particle incorporated into the Complaint, which show that Epic acted at the behest of its health care provider customers (Ex. 2 at 4).  Moreover, Epic's alleged conduct did not affect competition in the purported payer platform market.  Epic's actions to protect patient data allegedly mostly impacted Particle's provider customers (¶ 79), and providers are not alleged to participate in the payer platform market (¶ 53).  Particle does not allege that it lost a single payer customer as a result of Epic's actions, or that Epic gained a single such customer.  (¶¶ 86-87, 91.)  Particle's "allegations do not plausibly allege harm to competition in the [proposed product] market".  *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 393 (S.D.N.Y. 2022).

Particle Fails to Plead a Section 1 Agreement in Restraint of Trade.  Particle's Section 1 claim fails to allege facts to plausibly suggest that any illegal agreement was made.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Particle's allegations amount to nothing more than "labels and conclusions, and a formulaic recitation of the elements", which must be ignored.  *Id.* at 555.  With respect to the Epic Care Everywhere Governing Council, Particle fails to plead an agreement at all and instead alleges that "*Epic* instituted a new, unprecedented policy that every new Particle connection . . . had to be individually approved by Epic's 'Care Everywhere Governing Council'" (¶ 96)—unilateral conduct that cannot violate Section 1.  *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 596-97 (S.D.N.Y. 2011).  With respect to XCures, the Complaint alleges no direct evidence of an agreement, instead only quoting communications that are silent as to any agreement between XCures and Epic (¶ 86), and alleges no circumstantial facts from which to infer an agreement.  Finally, with respect to Carequality, Particle does not identify any supposed agreement, instead insinuating that "Epic conveyed its preferences to Carequality" and that Carequality's decisions constitute "evidence of Epic's undue influence" (¶¶ 131-32).  It presents no evidence, direct or indirect, to support the existence of an agreement.  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135-

36 (2d Cir. 2013). Moreover, even if Particle had plausibly alleged the existence of an agreement (it has not), it fails to plausibly allege anticompetitive effects of any such agreement on the purported payer platform market—such as an increase in prices or a reduction in quality or output—further warranting dismissal. *Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 362 (S.D.N.Y. 2018).

Particle Fails to Plausibly Allege Antitrust Injury. It is axiomatic that the antitrust laws "were enacted for the protection of competition not competitors". *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). "[H]arm[] [to] an individual competitor will not suffice". *Cap. Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir. 1993). But Particle alleges harm only to itself, and it would "trivializ[e] the [Sherman] Act" to allow "routine disputes between business competitors [to] be elevated to the status of an antitrust action". *Id.*

**Failure to Plead State Law Claims (Counts 6-9).** Because Particle fails to plead a viable federal cause of action, its state law claims should be dismissed under Rule 12(b)(1). The Court should decline to exercise supplemental jurisdiction where, as here, no pre-trial proceedings have taken place. Moreover, Particle fails to adequately plead any of its state law claims.

Particle Fails to State a Claim for Tortious Interference with Contract. *First*, Particle does not allege any facts to show that Epic had "actual knowledge . . . of the contractual obligation that was allegedly breached". *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *9 (S.D.N.Y. Apr. 17, 2020). *Second*, Particle fails to allege XCures's breach as it does not identify the term allegedly breached, and its allegations "leave open the possibility . . . that the contract was terminable at will". *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007). *Third*, Particle fails to plausibly allege that Epic intentionally procured XCures's alleged breach, as its communications with XCures occurred *at Particle's own request*, and XCures made an independent business decision to change its software provider. (¶ 86.)

Particle Fails to State a Claim for Tortious Interference with Prospective Business Relations. *First*, Particle's conclusory allegation that it was "in advanced talks" with a handful of potential customers (¶ 89) fails to plead "a reasonable probability of entering into a business relationship". *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 305 (S.D.N.Y. 2022). *Second*, Particle fails to allege that Epic even knew of Particle's prospective relationships, let alone intentionally interfered with them. *Third*, Particle fails to plead that Epic acted with the required level of culpability. *Fourth*, Particle fails to adequately allege causation.

Particle Fails to State a Claim for Defamation. Particle's defamation claim is premised on blatant misrepresentations of Epic's actual statements (*see* App'x A.1) and fails each element of a defamation claim. *First*, the conclusory allegation that "Epic knew its statements were false" (¶ 208) is woefully deficient because it fails to identify "objective facts" from which the Court could "infer actual malice". *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015). *Second*, as fair reports of the Carequality Dispute, Epic's statements are privileged under N.Y. Civ. Rights Law § 74. *Third*, Particle fails to plead false statements of fact, as each statement is an inactionable expression of opinion and/or is substantially true. *Fourth*, Particle does not plead special damages, as required given that Epic's statements were not defamatory per se.

Particle Fails to State a Claim for Trade Libel. *First*, Epic's statements—which Particle again mischaracterizes (*see* App'x A.2)—do not "speak to the quality of [Particle's] goods or services", *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 472 (S.D.N.Y. 2006), nor are they false statements of fact. *Second*, Particle fails to plead facts from which to infer actual malice. *Third*, Particle does not plead special damages.

                                        Respectfully submitted,

                                        */s/ Lauren A. Moskowitz*

                                        Lauren A. Moskowitz

The Honorable Naomi Reice Buchwald
    United States Courthouse
        500 Pearl St.
            New York, NY 10007-1312

Copies To:

All Counsel of Record

BY ECF

4