**quinn emanuel** trial lawyers | new york

295 5th Avenue,, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
adamwolfson@quinnemanuel.com

January 9, 2025
**VIA ECF**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   **Particle's Opposition to Epic's Motion to Dismiss**
*Particle Health Inc. v. Epic Systems Corporation*, 1:24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

We write on behalf Plaintiff Particle Health Inc. ("Particle") pursuant to the Court's Individual Rule 2(C)(1), in order to provide an overview of Particle's opposition to Epic Systems Corporation's ("Epic's") motion to dismiss.

Epic's motion to dismiss proceeds by doubling down on Epic's false and defamatory statements, ignoring dozens of well-pleaded allegations, and misconstruing the law. Epic's intensely factual arguments seem aimed more at spinning a false counter-narrative than attempting to argue the legal merits of this case. That is of course improper on a motion to dismiss, and Particle will prove Epic's assertions are without merit at the appropriate time.

This is a case about Epic's unlawful and widespread campaign to eliminate competition in an emerging healthcare technology market in order to further cement its monopoly control. Epic's baseless and improper argumentation about patient privacy is merely an attempt to distract from that fact. Indeed, despite Epic's specific and repeated requests that it do so, Carequality—the industry group Epic coopted to harm competition and Particle—made no finding that Particle *ever* violated HIPAA, *ever* violated the group's rules, or *ever* put patient privacy at risk. *See* Dkt. 1 ("Complaint") ¶ 124; Dkt. 24-1 ("Motion") at 7, 13-14. Rather, Carequality found that Particle violated no laws, and employed a robust diligence process when onboarding customers. *Id.* All that Particle has done (and continues to do) is work to improve access to health information, including for payers providing treatment-related services ("pay-viders")—conduct that is not only legal and HIPAA compliant, but which the federal government itself actively encourages to support better health outcomes for all Americans.

Beyond its attempts to recast the narrative, Epic's Motion offers only an assortment of misplaced, incorrect, and deeply fact-bound arguments. None are availing.

**Market Definition**. Epic argues Particle's antitrust claims fail because there supposedly is no such thing as a payer-platform market. It claims Particle improperly alleges a "product market[] defined by a specific customer type" and does not define the market with respect to reasonable interchangeability and cross-elasticity of demand. Both arguments are wrong.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

*First*, Particle does not allege a "product market[] defined by a specific customer type." It alleges that payer platforms are a product designed for payers' unique business needs. Complaint ¶¶ 55, 87. This and other "practical indicia" Particle identifies are the exact sort of facts that support, not undercut, market definition, as the Supreme Court and Second Circuit each hold. *Id.* ¶¶ 8-9, 55-56, 87. Epic simply ignores these allegations. And, regardless, even if Particle did allege a customer-defined market, "[a] product market can be limited to a particular category of buyers." *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 458 (E.D.N.Y. 2024). Such limitations are particularly appropriate where, as here, "different classes of customers have varied ability to substitute" alternative products. *See Fed. Trade Comm'n v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 49 (D.D.C. 1998); *see also* Complaint ¶¶ 62, 69-73, 87.

*Second*, the Complaint contains extensive discussion of reasonable interchangeability and cross-elasticity of demand. Particle explains at length why "traditional services that assist [payers] with medical records" (which include the companies Epic improperly identifies in its Motion) are not reasonably interchangeable substitutes for payer platforms. Complaint ¶¶ 56-57, 59, 69. It explains, for example, that such services cannot serve payers' needs by "retriev[ing] medical records *instantaneously* and *at scale*," and that payer platforms have "quickly displac[ed] [these] older services and technologies," which "cost much [more] on a per-record basis." *Id.* These are the types of allegations that courts routinely find sufficient to plead a relevant market. *See, e.g.*, *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 339 (2d Cir. 2024). Moreover, Particle utilizes the well-recognized hypothetical monopolist test to explain that a hypothetical monopolist of payer platforms could profitably impose a small but significant, non-transitory increase in price ("SSNIP")—*i.e.*, a test the Second Circuit itself endorses for defining a market with respect to reasonable interchangeability. Epic provides no reason why Particle's SSNIP allegations fail (nor any of its other reasonable interchangeability-based allegations).

**Anticompetitive Conduct**. Epic next argues that Particle does not plausibly allege anticompetitive conduct. For this argument, Epic relies entirely on a made-up legal standard which supposedly requires an antitrust plaintiff to preemptively exclude, in its complaint, every possible justification a defendant might attempt to raise for its conduct. The case law on which Epic draws, however, is about the "unilateral refusal to deal" doctrine, a narrow antitrust liability theory that clearly has no applicability here, as Epic does not contend that Particle alleges a unilateral refusal to deal. Multiple courts from the Supreme Court on down have consistently recognized that the wrongful conduct Particle identifies is quintessentially anticompetitive. *See, e.g.*, *Lorain Journal Co. v. United States*, 342 U.S. 143, 148-149 (1951) (finding decision to cut off upstart competitor's customers anticompetitive conduct). And even under Epic's made-up standard, Particle more than plausibly alleges that Epic's conduct had no non-pretextual purpose other than to destroy Particle—its only competitor in the payer platform market.

**Agreement Under Sherman Act Section 1**. Epic argues that Particle fails to plausibly allege agreements for its Section 1 claim, but again simply ignores Particle's allegations. *First*, Particle alleges clear, direct evidence of vertical agreements Epic imposed on Particle's now-former customers to boycott Particle, including an admission from one of those customers itself. Complaint ¶¶ 86-88. *Second*, Particle alleges that Carequality acquiesced to Epic's efforts to coerce it into harming Particle, *id.* ¶¶ 125-32; courts recognize that such manipulation and acquiescence constitutes an "agreement" for Section 1 purposes. *See, e.g.*, *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 503 (9th Cir. 2010). *Third*, Particle alleges an agreement between

Epic and its "Governing Council" of *independent industry participants*, which Epic itself argues in its Motion is a separate entity.

**Antitrust Injury**. Epic claims that Particle has not pleaded injury, but attempted exclusion from a market by a monopolist is an entirely "conventional form of antitrust injury"—particularly where, as here, the plaintiff is the "only competing provider" in the market. *See, e.g.*, *Valassis Commc'ns, Inc. v. News Corp*., 2019 WL 802093, at *11 (S.D.N.Y. Feb. 21, 2019). Epic does not grapple with the decades of precedent holding as much, instead simply rehashing its same meritless arguments about market definition.

**Tortious Interference With Contract**. Epic raises a smattering of unavailing, hyper-technical arguments against Particle's claim for tortious interference with contract. *First,* it claims Particle fails to allege Epic's knowledge of the breached contract, but the Complaint clearly alleges that Epic knew its target—XCures—was in a contractual, client relationship with Particle. Complaint ¶ 86. *Second*, Epic claims Particle fails to allege the breached term, but the Complaint makes clear that "XCures ceased paying its monthly subscription fees … thereby breaching its contract." *Id.* ¶ 87. *Third*, Epic claims Particle fails to plausibly allege intentional inducement, but there could hardly be an inducement more clear than **directly telling** a third party to end its relationship with a competitor. *Id.* ¶ 86.

**Tortious Interference With Prospective Business Relations**. Here, too, Epic's arguments fail. *First*, Epic claims that Particle fails to allege causation and a likelihood of consummating customer relationships, but that is belied by those customers' express representations that they would have finalized agreements **but for** Epic's conduct. *Id.* ¶¶ 89-91. *Second*, Epic's argument that Particle fails to allege Epic's knowledge also fails because Epic directed its conduct at Particle's business prospects, which is sufficient to plead knowledge. *Third*, Particle easily pleads the required culpability—both by showing independent legal wrongs (*e.g.*, antitrust violations and defamation) and a clear desire to harm Particle. *Id.* ¶¶ 134-39.

**Defamation And Trade Libel**. Finally, Epic raises several misplaced arguments regarding Particle's defamation and trade libel claims. *First*, contrary to Epic's assertion, Particle does not have to plead actual malice because Epic's statements are not protected by either of the qualified privileges it identifies. And even if actual malice were necessary, the Complaint pleads ample facts to show malice. *See, e.g.*, Complaint ¶¶ 14, 80, 83, 105, 120. *Second*, the "Fair Report" privilege does not shield Epic's defamatory statements because it "does not extend to non-governmental proceedings." *Hogan v. Herald Co*., 84 A.D.2d 470, 477-78 (4th Dep't 1982). *Third*, Epic's arguments against the falsity of its statements rely on simply contradicting the Complaint and attempting to improperly draw inferences in Epic's favor, in addition to misconstruing the law on what constitutes a statement of fact. *Fourth*, Particle pleads defamation per se because Epic's statements tend to injure Particle in its business and impute dishonesty. Particle similarly pleads its trade libel claim adequately, including with respect to statements aimed at Particle's product, actual malice, and special damages.

Respectfully submitted,

*/s/ Adam B. Wolfson*

Adam B. Wolfson

3