UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARTICLE HEALTH INC.,

                                        Plaintiff,

                    vs.

EPIC SYSTEMS CORPORATION,

                                        Defendant.

Civil Action No. 1:24-cv-07174-NRB

ORAL ARGUMENT REQUESTED

**EPIC SYSTEMS CORPORATION'S REPLY MEMORANDUM**
**<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................2

I.    PARTICLE'S ANTITRUST CLAIMS (COUNTS 1-5) SHOULD BE
      DISMISSED. ...........................................................................................2

      A.    Particle Fails to Plead a Plausible Antitrust Product Market. ..................2

      B.    Particle Fails to Plausibly Allege Anticompetitive Conduct. ..................5

            1.    Particle Fails to Plead Anticompetitive Conduct Under Section 2. ...........5

            2.    Particle Fails to Plead a Section 1 Agreement in Restraint of Trade. ..........7

      C.    Particle Fails to Plausibly Allege Antitrust Injury. ..................................9

II.   PARTICLE'S STATE LAW CLAIMS (COUNTS 6-9) SHOULD BE
      DISMISSED. ..........................................................................................10

      A.    Particle Fails to State a Claim for Tortious Interference with Contract. ...............10

      B.    Particle Fails to State a Claim for Tortious Interference with Prospective
            Business Relations. ..............................................................................11

      C.    Particle Fails to State a Claim for Defamation. ...................................12

      D.    Particle Fails to State a Claim for Trade Libel. ...................................15

CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*,
  2020 WL 5259283 (S.D.N.Y. Sept. 3, 2020)............................................................11

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001).....................................................................................13

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)..................................................................................................9

*Alt. Electrodes, LLC v. Empi, Inc.*,
  597 F. Supp. 2d 322 (E.D.N.Y. 2009) .......................................................................7

*Am. President Lines, LLC v. Matson, Inc.*,
  633 F. Supp. 3d 209 (D.D.C. 2022) ..........................................................................6

*Atkins v. Bohrer*,
  2011 WL 6779311 (S.D.N.Y. Dec. 23, 2011) .........................................................15

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011).......................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................7

*Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*,
  142 F. Supp. 2d 296 (E.D.N.Y. 2001) ......................................................................3

*Bilinski v. Keith Haring Found., Inc.*,
  632 F. App'x 637 (2d Cir. 2015) .............................................................................15

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)...............................................................................................4, 5

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021)......................................................................12

*Cenedella v. Metro. Museum of Art*,
  348 F. Supp. 3d 346 (S.D.N.Y. 2018)........................................................................9

*Chapman v. N.Y. State Div. for Youth*,
  546 F.3d 230 (2d Cir. 2008)......................................................................................3

*Chase Mfg., Inc. v. Johns Manville Corp.*,
  84 F.4th 1157 (10th Cir. 2023) .................................................................................6

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
    377 F. Supp. 3d 303 (S.D.N.Y. 2019) ....................................................................11

*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*,
    611 F.3d 495 (9th Cir. 2010) ...............................................................................7

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016)...................................................................................4

*Conti v. Doe*,
    2019 WL 952281 (S.D.N.Y. Feb. 27, 2019) ........................................................13

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
    2007 WL 4526618 (E.D.N.Y. Dec. 20, 2007) .......................................................9

*EQT Infrastructure Ltd. v. Smith*,
    861 F. Supp. 2d 220 (S.D.N.Y. 2012) .................................................................14

*FTC v. Tapestry, Inc.*,
    2024 WL 4647809 (S.D.N.Y. Nov. 1, 2024) ..........................................................5

*Hodges v. Lutwin*,
    595 F. Supp. 3d 12 (S.D.N.Y. 2022), *aff'd*, 2023 WL 3362836 (2d Cir. May 11, 2023)........13

*Hogan v. Herald Co.*,
    446 N.Y.S.2d 836 (4th Dep't 1982).....................................................................14

*Honeywell Int'l, Inc. v. Ecoer Inc.*,
    2024 WL 3521591 (S.D.N.Y. July 23, 2024) .......................................................11

*Huggins v. Moore*,
    726 N.E.2d 456 (N.Y. 1999)...............................................................................13

*In re Actos End-Payor Antitrust Litig.*,
    417 F. Supp. 3d 352 (S.D.N.Y. 2019), *aff'd*, *United Food & Com. Workers Loc. 1776
    & Participating Emps.' Health & Welfare Fund v. Takeda Pharm. Co.* 11 F.4th 118
    (2d Cir. 2021)......................................................................................................6

*In re Adderall XR Antitrust Litig.*,
    754 F.3d 128 (2d Cir. 2014)..................................................................................5

*In re Crude Oil Commodity Litig.*,
    2007 WL 2589482 (S.D.N.Y. Sept. 8, 2007).......................................................15

*In re Google Digit. Advert. Antitrust Litig.*,
    627 F. Supp. 3d 346 (S.D.N.Y. 2022).................................................................5, 6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019)..............................................................6, 7

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011)..................................................................8

*Indian Head, Inc. v. Allied Tube & Conduit Corp.*,
    817 F.2d 938 (2d Cir. 1987), *aff'd*, 486 U.S. 492 (1988) ..................................7, 9

*Just Play, LLC v. A.S. Plastic Toys Co.*,
    2022 WL 580876 (S.D.N.Y. Feb. 25, 2022)..........................................................12

*Kao v. Brit. Airways, PLC*,
    2018 WL 501609 (S.D.N.Y. Jan. 19, 2018) ...................................................10, 15

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)..................................................................................14

*Lorain J. Co. v. United States*,
    342 U.S. 143 (1951)................................................................................................6

*Mathias v. Daily News, L.P.*,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001)....................................................................3

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020)..................................................................12

*Merced Irrigation Dist. v. Barclays Bank PLC*,
    165 F. Supp. 3d 122 (S.D.N.Y. 2016)....................................................................6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)................................................................................................8

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)...................................................................................5

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) .............................................................................6

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019)..................................................................................13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)...................................................................................7

*Prospect Funding Holdings, LLC v. Vinson*,
    256 F. Supp. 3d 318 (S.D.N.Y. 2017)..................................................................10

*Regeneron Pharms., Inc. v. Novartis Pharma AG,*
    96 F.4th 327 (2d Cir. 2024) .......................................................................4

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    2009 WL 1492196 (S.D.N.Y. May 27, 2009) ........................................11

*Shak v. JPMorgan Chase & Co.*,
    156 F. Supp. 3d 462 (S.D.N.Y. 2016)......................................................7

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020)....................................................10

*Taboola, Inc. v. Ezoic Inc.*,
    2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020)........................................10

*United Food & Com. Workers Loc. 1776 & Participating Emps.' Health & Welfare Fund
    v. Takeda Pharm. Co.*,
    11 F.4th 118 (2d Cir. 2021) ..................................................................6, 7

*United States ex rel. Pinnacle Env't Corp. v. Volmar Constr.*,
    2024 WL 4892740 (S.D.N.Y. Nov. 25, 2024)......................................4, 5

*Valassis Commc'ns, Inc. v. News Corp.*,
    2019 WL 802093 (S.D.N.Y. Feb. 21, 2019)............................................9

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
    511 F. Supp. 2d 372 (S.D.N.Y. 2007)......................................................9

**Statutes & Rules**

N.Y. Civ. Rights Law § 74 ....................................................................................14

N.Y. Civ. Rights Law § 76-a .................................................................................12

## <u>PRELIMINARY STATEMENT</u>

Particle's Opposition ("Opposition" or "Opp'n")[1] makes clear that this case is nothing more than a vehicle for Particle's baseless retributive attack directed at Epic for bringing to light that Particle enabled its customers—including Integritort, which sells medical records to lawyers for class action lawsuits—to obtain confidential patient medical records under false pretenses. Desperate to maintain its business model that has been exposed as exploiting confidential patient data for profit, Particle deflects responsibility and invents claims where none exists.

Particle acknowledges that "security and privacy are paramount" in the health care industry. (Opp'n 11.) Carequality is a health record exchange network built on trust that each participant is honest about the purpose for its requests for patient health records and is complying with HIPAA. (Ex. 2 at 2.) Breaches of trust undermine Carequality, and unauthorized disclosures of patient records hurt everyone. (*See* Mot. 2 n.2.) As Particle concedes, Carequality determined that certain Particle customers inappropriately obtained patient records by falsely claiming a treatment purpose. Rather than accept responsibility as a Carequality implementer for failing to detect and prevent these abuses—which led Carequality to impose a corrective action plan *on Particle*—Particle blames everyone else: its customers (Opp'n 1, 9), and Epic for raising concerns on behalf of and at the direction of Epic customers, the custodians of those records.

Despite ample notice of the deficiencies in its pleading, Particle has elected not to amend, nor could it resolve its deficiencies through amendment in any event. Particle's arguments in opposition do not rescue its fatally deficient claims. The Complaint should be dismissed with prejudice.

---

[1] Defined terms and citation conventions reflect those in the Memorandum of Law in Support of Epic's Motion to Dismiss ("Mot.") (Dkt. 21). All emphasis is added, and citations and internal quotations omitted.

*First*, Particle's antitrust claims should be dismissed.  Particle fails to support its gerrymandered product market consisting of only its product and Epic's.  Particle resorts to mischaracterizing its own Complaint to avoid the reality that it artificially limited the market to payer customers and excluded many other substitutable products.  For Section 2, Particle does not—because it cannot—point to any well-pleaded allegations that Epic engaged in anticompetitive conduct rather than legitimately acting to protect the privacy and security of patient data.  For Section 1 and the Donnelly Act, Particle cannot overcome its failure to plead any illegal agreement or anticompetitive effects.

*Second*, Particle concedes that the state law claims should be dismissed under Rule 12(b)(1) if the Court dismisses its antitrust claims.  Particle also fails to overcome the numerous pleading deficiencies identified in Epic's Motion: that Particle's tortious interference claims fail to allege Epic's knowledge of the contract terms or business relationship, causation, and the required level of culpability; and that Particle's defamation and trade libel claims fail to allege actual malice, actionable non-privileged false statements of fact, and special damages.

## ARGUMENT

## I.     PARTICLE'S ANTITRUST CLAIMS (COUNTS 1-5) SHOULD BE DISMISSED.

### A.     Particle Fails to Plead a Plausible Antitrust Product Market.

Particle fails to support that its so-called "payer platform market" is a plausible product market.  (Mot. 12-17.)  Particle's proposed market is inappropriately restricted to a single customer type—payers.  (Mot. 12-13.)  Particle tries to argue that it has not restricted the market in this way (Opp'n 13), but reverts—just five pages later—to describing "payers and non-payers" as "multiple markets" as a basis to exclude Kno2 from the market as a "non-payer service".  (Opp'n 18.)  Particle fails to point to any place where it plausibly alleges that the market for health record software sold to payers "is any different from the larger market for [selling such

2

software] to other businesses". *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008). The allegations Particle cites for the supposed uniqueness of payers merely allege that payers have a need to retrieve, store, and analyze health records, but never explain how and why payers are unique in that respect. (Opp'n 14; ¶¶ 5, 51-57, 63, 68-73.) Particle also argues payers are unique based on Epic's argument (Mot. 9) that payers may only make "for payment" requests as opposed to "for treatment" requests, and thus cannot access full patient records under HIPAA or request records through Carequality. (Opp'n 14-15 & n.7.) But Particle's proposed market is not limited to requests for payment purposes; Particle's product allows payers to request full patient records "for treatment" just like providers. (¶¶ 10, 55.) Particle cannot credibly argue that its made-for-litigation two-competitor "payer platform" market is limited based on the restriction on payers to request only for payment purposes given that Particle's product allows payers to request records for treatment purposes.

Particle provides no analysis of the rule of reasonable interchangeability or cross-elasticity of demand, rendering its narrow market "legally insufficient". *Chapman*, 546 F.3d at 238. Particle's argument that it need not discuss specific products as opposed to "alternative product **types**" (Opp'n 17) is unsupported. *See, e.g.*, *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 481-82 (S.D.N.Y. 2001) (requiring "discussion of . . . arguably competing *products*"); *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 142 F. Supp. 2d 296, 303 (E.D.N.Y. 2001) (same). Moreover, Particle never addresses alternative product types anyway. The "traditional services that assist with medical records" discussed in the Complaint (¶ 57; *see* Opp'n 16) include only "traditional, *manual* methods" of retrieving records such as e-mail or fax (*e.g.*, ¶¶ 54-55, 57, 59, 68, 72). Particle fails to address the substitutability of *software* products. (Mot. 14.) Even the Complaint concedes that one software product, Kno2's, *was actually substituted* for Particle's,

confirming that substitutable products do exist.[2]  Particle's legal conclusion that Epic could

impose a SSNIP (¶ 57) is insufficient, and its reliance on *Regeneron Pharmaceuticals, Inc. v.*

*Novartis Pharma AG*, 96 F.4th 327, 341 (2d Cir. 2024) (Opp'n 17 & n.10), is misplaced.  There,

Regeneron alleged specific facts underlying the SSNIP, *i.e.*, "that more than 80% of

patients . . . transitioned from vials to PFSs".  96 F.4th at 341.  Particle provides no analogous

facts or analysis.

Particle's conclusory allegation that no other single product combines record retrieval,

storage, and analysis (¶ 62) does not save its claim.  Merely asserting that a product is unique,

without well-pleaded factual support, is not enough.  *Concord Assocs., L.P. v. Ent. Props. Tr.*,

817 F.3d 46, 54 (2d Cir. 2016).  Particle alleges that this combination reduces cost and frictions

(¶ 56), but ignores that other software performs each of those functions, suggesting that payers

could substitute a combination of products.  *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F.

Supp. 2d 569, 578 (S.D.N.Y. 2011) (requiring "sufficient facts to demonstrate that no [product]

combination is an acceptable substitute").[3]

Finally, Particle's appeal to "practical indicia" from *Brown Shoe Co. v. United States*,

370 U.S. 294, 325 (1962) (Opp'n 13-14), fails.  Particle's cited paragraphs (¶¶ 53-57, 62, 69, 87)

merely state that its and Epic's products retrieve, store, and analyze records without identifying

"peculiar characteristics and uses" of the products, *Brown Shoe*, 370 U.S. at 325.  Particle alleges

no "industry or public recognition of [the purported payer platform market] as a separate

---

[2] Particle responds to this fundamental inconsistency by suggesting that XCures used a different Particle product (outside of the payer platform market).  (Opp'n 18 (citing ¶¶ 73, 86-87).)  But that suggestion is not in the Complaint, and "a party may not amend its pleadings through its opposition to a motion to dismiss".  *United States ex rel. Pinnacle Env't Corp. v. Volmar Constr.*, 2024 WL 4892740, at *2 (S.D.N.Y. Nov. 25, 2024).  Critically, if true, it would undermine Particle's antitrust claims, as any alleged harm relating to XCures would have occurred outside the alleged relevant market.

[3] Particle concedes that customers purchase combinations of software:  Particle integrates its product into other software (¶ 10), and XCures's analytics product used Particle's record-retrieval software (¶ 86).

economic entity". *Id.*[4] Nor does it plausibly allege that products in the alleged market are "directed toward a distinct class of customers". *Id.* Instead, Particle concedes that the products it sells to payers were initially developed for providers (¶¶ 8-10), and Particle still markets the same products to both customer types.[5] (Mot. 13 n.9.)

For all these reasons, Particle's alleged market is legally deficient, and thus, Particle's antitrust claims, each of which depends on this flawed market, should be dismissed.[6]

### B.    Particle Fails to Plausibly Allege Anticompetitive Conduct.

#### 1.    Particle Fails to Plead Anticompetitive Conduct Under Section 2.

Despite Particle's efforts to portray a dispute between the parties regarding the appropriate legal standard for alleging anticompetitive conduct (Opp'n 18-20), no actual disagreement exists. All cases cited by the parties acknowledge that to plead a Section 2 claim, the plaintiff must allege conduct that goes beyond legitimate competition on the merits, even though the specific terminology that courts employ varies. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015) (anticompetitive conduct must "impede[] competition through means other than competition on the merits"); *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (anticompetitive conduct must lack "a legitimate business purpose" and "make[] sense only because it eliminates competition"); *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 379 (S.D.N.Y. 2022) ("Anticompetitive

---

[4] Particle misquotes *FTC v. Tapestry, Inc.*, 2024 WL 4647809, at *20 (S.D.N.Y. Nov. 1, 2024) (Opp'n 14), omitting the final word: "[W]hen determining the relevant product market, courts often pay close attention to the defendants' ordinary course of business *documents*". Particle pleads no such documents.

[5] Particle asserts for the first time in its Opposition that its payer and non-payer customers "purchase different products" (Opp'n 8), but that is not in the Complaint and should be disregarded. *Pinnacle Env't Corp.*, 2024 WL 4892740, at *2. Moreover, the cited paragraphs allege different categories of customers, not different products. (¶¶ 12, 79, 84-88.)

[6] Particle's monopoly leveraging claim (Count 3) should also be dismissed because Particle does not dispute the flaws in its allegations of monopoly power in the two alleged markets on which that claim relies. (Mot. 17 n.14.)

conduct must represent something more than business activity that occurs in the normal competitive process or fosters commercial success."); *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (anticompetitive conduct must have "little or no value beyond the capacity to protect the monopolist's market power").  But the substance of all these standards is the same.  *See, e.g.*, *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 142 (S.D.N.Y. 2016) (treating various articulations of the standard for anticompetitive conduct as equivalent).  Accordingly, the substance of Epic's argument remains the same.[7]

Particle fails to engage with any version of the standard for anticompetitive conduct, instead arguing summarily that Epic's actions were "textbook forms of anticompetitive conduct". (Opp'n 20.)  But Particle has not alleged any of the "common forms" of anticompetitive conduct—tying, exclusive dealing, and defrauding regulators or consumers.  *Novell*, 731 F.3d at 1072.  While Particle seeks to compare its allegations to "exclusionary conduct", it concedes that Epic—at the behest of its customers—merely paused Particle's connections, temporarily, to confirm that they were appropriate under HIPAA.  (¶ 83.)  The fact that Particle can cite some cases in which a court has found *different* conduct by *different* defendants competing in *different* markets lacked a legitimate business purpose does not transform *Epic's* conduct into anticompetitive conduct.[8]  Particle cites no case in which reporting a company for concerns about patient privacy was deemed anticompetitive.

---

[7] Epic did not claim that Particle must allege a subjective intention to act unlawfully.  (Mot. 17-20.)  Thus, the cases Particle cites that hold that a complaint need not allege "willfully improper" conduct, *United Food & Com. Workers Loc. 1776 & Participating Emps.' Health & Welfare Fund v. Takeda Pharm. Co.*, 11 F.4th 118, 137 (2d Cir. 2021), or "bad faith", *In re Actos End-Payor Antitrust Litig.*, 417 F. Supp. 3d 352, 370 (S.D.N.Y. 2019), *aff'd*, *United Food*, 11 F.4th 118, are irrelevant.

[8] Particle's cited cases are readily distinguishable.  Three involve refusals to deal with customers or suppliers. *Lorain J. Co. v. United States*, 342 U.S. 143, 153 (1951); *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1165 (10th Cir. 2023); *Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 226-27 (D.D.C. 2022).  But Particle's customers are neither Epic's customers nor its suppliers, and Particle concedes that Epic continued providing records to the substantial majority of Particle's customers and restored record access to those that were suspended.  (¶ 83.)  Two rely on the standard that governs misleading marketing, *In re Keurig Green Mountain*

The alleged conduct plainly advanced the legitimate purpose, crucial to Epic's business, of protecting the privacy of customers' data.  (¶ 112; Ex. 2 at 2.)  Once Epic learned of inappropriate requests, like Integritort falsely claiming treatment to provide patient records to class action lawyers, Epic sought "additional information" to conduct its own diligence on Particle customers, temporarily suspending access until it had done so.  (Ex. 2 at 4; ¶ 83.)  Epic did not condition restoring access on terminating the relationship with Particle; Particle concedes Epic restored access to connections that stayed with Particle.  (¶ 83.)

Even conduct merely "[]consistent with a scheme to acquire or maintain monopoly power" would not suffice; Particle must further "differentiate [such a scheme] in likelihood from conduct permissible under § 2" by plausibly alleging its "uneconomic nature".  *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 488 (S.D.N.Y. 2016); *see Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 125 (2d Cir. 2007) (allegations "equally consistent" with monopolization and legitimate competition are insufficient).[9]  These allegations fail to do so.

### 2.    Particle Fails to Plead a Section 1 Agreement in Restraint of Trade.

Particle fails plausibly to allege any anticompetitive agreement.  (Mot. 20-23.)  Particle does not dispute that "a conclusory allegation of agreement at some unidentified point" does not suffice to state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Nonetheless,

---

*Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 240-41 (S.D.N.Y. 2019); *Alt. Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 331-32 (E.D.N.Y. 2009), which is not at issue here.  One involved a campaign of "predatory and harassing activities" to coerce a standard-setting body, *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 505 (9th Cir. 2010), but Particle fails to allege any action Epic took to coerce or subvert the Dispute, instead assuming it based on the misrepresentation that Carequality found "Epic's dispute was meritless".  (¶¶ 126-132.)  The last was an inapposite Section 1 case.  *Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938, 941 (2d Cir. 1987).

[9] Contrary to Particle's assertion (Opp'n 20 n.11), *Shak* was not abrogated by *United Food*.  *Shak* dismissed the Section 2 claim not because of a failure to allege willfully improper conduct or to exclude good faith—which *United Food* held is not required, 11 F.4th at 137—but because the "rational behavior of a legitimate competitor" is not anticompetitive, a principle *United Food* did not disturb, 156 F. Supp. 3d at 488.

Particle fails to comply with that pleading standard for each category of alleged agreement or with the standard for pleading anticompetitive effects.  (Opp'n 23-24.)

*First*, as to the Governing Council, Particle alleges only unilateral action:  "*Epic* instituted a new, unprecedented policy".  (Mot. 21 (quoting ¶ 96).)  In its Opposition, Particle misrepresents that allegation, stating that "Epic and the [] Governing Council *agreed*" to institute the new policy.  (Opp'n 24 (citing—not quoting—¶ 96).)  No allegation of an agreement between Epic and the Governing Council appears in the Complaint.  Particle also fails to allege that Epic and the Governing Council are independent.  *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 596-97 (S.D.N.Y. 2011) (requiring agreement "among separate economic actors pursuing separate economic interests").  Particle again misrepresents that it "alleges that the Governing Council is an independent oversight body".  (Opp'n 24 (citing—not quoting—¶ 96).)  No such allegation appears in in the Complaint, nor would such an allegation mean that the Governing Council is independent from Epic.

*Second*, Particle fails to plausibly allege that Epic entered into an agreement with XCures or any other Particle customer.  (Mot. 22-23.)  Particle argues an agreement can be found "where a customer acquiesces to an announced condition" or "a supplier pressures a customer not to do business with a rival".  (Opp'n 23.)  On its face, this rule applies to the supplier-customer relationship, which Epic does not have with *Particle's* customers.  Further, acquiescence is not enough unless it "was sought by the manufacturer", *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 n.9 (1984), which is not alleged here.  (*See* ¶ 87.)  Particle fails to point to any allegation that there was any meeting of the minds between Epic and any Particle customer.

*Third*, Particle fails to allege an agreement between Epic and Carequality or the Carequality Steering Committee.  (Mot. 23.)  Particle's two-sentence response is that

"manipulating or improperly influencing a standard-setting body . . . constitutes an 'agreement'" (Opp'n 24), but Particle cites no case dispensing with the requirement to allege an agreement, and the one case cited involved an agreement *between competitors* to influence the standard-setting organization, *Indian Head*, 817 F.2d at 940, *aff'd*, 486 U.S. 492 (1988), which is inapposite.

*Fourth,* Particle also fails to allege that any alleged agreement had "an adverse effect on competition" in the alleged relevant market. *Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 362 (S.D.N.Y. 2018). (Mot. 21-23.) Recognizing that it did not allege any harm to competition from any alleged agreement—such as the alleged agreement with XCures, a customer Particle claims does not participate in the payer platform market—Particle argues that anticompetitive effects resulted from other "facet[s] of Epic's attempts to cripple Particle as a competitor". (Opp'n 23.) But such allegations do not suffice, as they fail to plead "that the *alleged conspiracy* has harmed the market". *Cenedella*, 348 F. Supp. 3d at 362.

### C.    Particle Fails to Plausibly Allege Antitrust Injury.

Particle's claims should be dismissed for failure to plead antitrust injury. (Mot. 24.) Particle fails to adequately allege the injury it claims—*exclusion* from a market. (Opp'n 24-25.) In the case Particle relies upon, the defendant's conduct allegedly caused the plaintiff's "*exit* from the market", *Valassis Commc'ns, Inc. v. News Corp.*, 2019 WL 802093, at *12 (S.D.N.Y. Feb. 21, 2019), which Particle does not allege here.[10]

---

[10] Threat of exclusion may constitute "a *threatened* antitrust injury" sufficient for "injunctive relief", *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 381-82 (S.D.N.Y. 2007), but Particle brings "a claim for treble damages", of which "*actual* antitrust injury" is an "element", *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 2007 WL 4526618, at *3 (E.D.N.Y. Dec. 20, 2007).

## II.    PARTICLE'S STATE LAW CLAIMS (COUNTS 6-9) SHOULD BE DISMISSED.

Particle's "failure to oppose" Epic's "specific argument in [its] motion to dismiss" that the Court should decline to exercise supplemental jurisdiction over Particle's state claims once its antitrust claims are dismissed "is deemed waiver of that issue".  *Kao v. Brit. Airways, PLC*, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018); (Mot. 24-25).  Particle's responses to Epic's alternative Rule 12(b)(6) arguments fail.

### A.    Particle Fails to State a Claim for Tortious Interference with Contract.

Epic's Motion demonstrated that Particle's claim for tortious interference with contract fails.  (Mot. 25-26.)  None of Particle's arguments to the contrary has merit.

The core pleading deficiency in the Complaint is the failure to allege Epic's knowledge of the terms of the XCures contract.  (Mot. 25.)  Particle argues that it suffices to plead that Epic had "'some knowledge' of the relevant contract" (Opp'n 26), selectively quoting from *State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 349 (S.D.N.Y. 2020).  But *State Street* makes clear that the defendant "must have some knowledge of the *terms and conditions*" of the contract.  *Id.*  Thus, Particle's assertion that Epic was "aware of the contractual, client *relationship*" (Opp'n 26) is insufficient.  *E.g.*, *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *11 (S.D.N.Y. Apr. 17, 2020) (knowledge that a party entered into a contract "is not coextensive with [] actual knowledge of the terms of the specific contract[] at issue").

Particle also fails to identify any factual allegations in the Complaint "showing that [Epic's] *objective* was to procure [XCures's] breach" of those terms.  *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 328 (S.D.N.Y. 2017).  Particle relies on its allegation that Epic supposedly "told XCures its access to Epic data would be restored if it ended its relationship with Particle".  (Opp'n 28 (quoting ¶ 86).)  But that does not plausibly plead that Epic sought XCures's breach of any specific term of the XCures contract; rather, it shows that

10

any breach by XCures (alleged only conclusorily) was XCures's own independent breach for its own economic benefit, which does not constitute tortious interference. *See Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 320 (S.D.N.Y. 2019) (dismissing claim where third party "independently breached an agreement for its own economic benefit" rather than as a result of the defendant "directing or setting in motion the alleged breach").

###### B.    Particle Fails to State a Claim for Tortious Interference with Prospective Business Relations.

Epic's Motion also demonstrated the deficiency of Particle's tortious interference with prospective business relationships claim. (Mot. 26-28.) None of Particle's arguments has merit.

*First*, Particle fails to allege that it had a reasonable probability of entering into a business relationship and that Epic's alleged interference was the but-for cause of its failure to do so. Particle's primary argument rests on an e-mail from an *unnamed* customer. (Opp'n 28, 30 (citing ¶ 89).) But a plaintiff must "identify the *specific* business entities [defendant] supposedly influenced" to state a claim. *Honeywell Int'l, Inc. v. Ecoer Inc.*, 2024 WL 3521591, at *6 (S.D.N.Y. July 23, 2024) (emphasis in original). The Complaint alleges no *facts* to support the conclusory assertion that *named* prospective customers had "mirror[]" experiences. (¶ 91.)

*Second*, Particle concedes its failure to plead Epic's knowledge of Particle's prospective business relationships. It states only that the "Complaint alleges that Epic had knowledge of Particle's rapid expansion" (Opp'n 29), not of specific prospective customers, which is insufficient. *E.g.*, *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, 2020 WL 5259283, at *7 (S.D.N.Y. Sept. 3, 2020) (dismissing claim where plaintiff failed to allege the defendant knew about the specific prospective business relationships identified in the complaint); *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2009 WL 1492196, at *9 (S.D.N.Y. May 27, 2009) (same).

*Third*, Particle also fails to plead the requisite level of culpability.  Particle argues that "it satisfies the pleading standard for wrongful conduct" by alleging defamation and antitrust violations.  (Opp'n 30.)  That is not the law.  Wrongful conduct must be "directed at the party with which the plaintiff has or seeks to have a relationship" (*i.e.*, the prospective customers), which Particle does not even try to argue it has alleged.  *Just Play, LLC v. A.S. Plastic Toys Co.*, 2022 WL 580876, at *4-5 (S.D.N.Y. Feb. 25, 2022).

### C.    Particle Fails to State a Claim for Defamation.

Epic's Motion and accompanying Appendix revealed that Particle's defamation claim was based on five statements that it blatantly misrepresented, as shown in the side-by-side comparison of (a) the statements as Particle misleadingly alleged them and (b) Epic's actual statements.  (Mot. 28-29; App'x A.1.)  Where a "document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true".  *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021).  Particle's silence in response is telling.  The actual statements, taken in context as they must be, *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 181 (S.D.N.Y. 2020), cannot form the basis of a defamation claim.

*First*, Particle fails to rebut that it is required to and did not plead actual malice.  In attempting to sidestep N.Y. Civil Rights Law § 76-a, Particle argues that Epic "published its defamatory statements privately to a limited audience—its customers".  (Opp'n 31 (citing ¶ 102).)  But the very paragraph Particle cites contradicts that assertion, alleging that Epic's "statement was ostensibly intended for Epic customers . . . (and in fact, was emailed directly to thousands)[,] was not marked confidential and, as Epic knew it would be . . . was quickly picked

up by the media."[11]  (¶ 102.)  Finally, Particle's argument that common interest privilege cannot be considered on a motion to dismiss has been rejected.  *E.g.*, *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 20 n.2 (S.D.N.Y. 2022), *aff'd*, 2023 WL 3362836 (2d Cir. May 11, 2023).[12]

The cases Particle cites confirm that actual malice requires a "reckless disregard of whether [the statement] was false or not".  *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  Here, the allegedly defamatory statements are substantially true and not contradicted by knowledge Epic possessed at the time.  (Mot. 31.)  Epic believed there was a serious issue with the treatment requests facilitated by Particle.  (¶ 104; Ex. 1.)  That Carequality's Resolution suspended only three customers does not contradict that Epic had a broader concern—which Carequality shared by imposing a broad corrective action plan on Particle.  (Ex. 1 § IV.4.b.)

*Second*, the statements were either expressions of opinion or substantially true, not false statements of fact.  (Mot. 31-33.)  Particle asserts generally that using "words like 'might'" does not transform a statement into an opinion.  (Opp'n 33.)  But Epic did not just tack on the word "might" to statements of fact.  The full context and content of the statements make clear that they expressed Epic's opinion, providing its own hypothesis about the actions that led it to file a dispute with Carequality.  (Mot. 31-32.)[13]  For example, Epic states that it "filed a formal dispute with Carequality on the grounds that Particle Health ***might not be*** fulfilling its obligations as a

---

[11] Thus, Particle's cases concerning whether statements reached only a limited private audience are inapposite. *Albert v. Loksen*, 239 F.3d 256, 270 (2d Cir. 2001); *Huggins v. Moore*, 726 N.E.2d 456, 460-62 (N.Y. 1999).

[12] In *Conti v. Doe*, 2019 WL 952281 (S.D.N.Y. Feb. 27, 2019), decided before *Hodges*, the court found no support in the complaint for the claimed common interest. *Id.* at *9. Here, the Complaint acknowledges Epic's and its customers' shared interest in patient privacy. (¶ 14.) Contrary to Particle's argument (Opp'n 31), a plaintiff need not specifically allege that the common interest was the communication's purpose—the privilege applies where the facts alleged establish its existence. *See, e.g.*, *Hodges*, 595 F. Supp. 3d at 18-19 (applying common interest privilege on motion to dismiss where teacher shared concern about the behavior of another teacher despite allegations of a purpose to destroy her reputation).

[13] Alternatively, as Epic argued in its Motion—and Particle failed to address—the Court can conclude that Statements 1-4 are "vague" and thus incapable of being proven true or false. (Mot. 32 n.18.)

Carequality implementer" directly after it "outline[d] events that [] led Epic" to have that

concern.  (Ex. 2 at 2.)  Where, as here, the statement "discloses the facts on which it is based", it

is an "opinion [which] is not actionable".  *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997).

Particle does not contest the truth of the statements apart from a conclusory footnote claiming

that "the documents [Epic] references easily corroborate Particle's allegations as to the falsity

of" two of the statements.  (Opp'n 33 n.15.)[14]  Notably, Particle does not deny that the

challenged statements formed part of Epic's basis for initiating the Carequality Dispute, as the

statements claim (*see* Ex. 2 at 2).  Moreover, Particle's argument that the Resolution shows that

the statements are false is belied by the actual statements and the Resolution.  Particle again

misquotes Epic's statement, which was that "Particle Health and *its participant organizations*"

might be inaccurately representing the purposes of their requests.  (*Id.*)  The Resolution confirms

that Particle customers did indeed misrepresent the purposes of record requests that Particle

transmitted.  (Ex. 1 §§ IV.1.a; IV.2.a.)[15]

Third, Particle's defamation claim also fails because it concedes it does not plead special

damages, but instead insists it pleads defamation per se.  (Opp'n 34.)  But Epic did not "impugn"

Particle's "basic integrity or creditworthiness" by accurately informing its own customers of the

Carequality Dispute and its bases for filing it.  (Mot. 33-34.)  The cases Particle cites involve *ad*

---

[14] Particle's flippant statement that Epic's argument is "based on allegations and documents outside of the pleadings" is incorrect.  (Opp'n 33.)  The documents at issue were incorporated by reference in the Complaint (Mot. 4 n.3; Exs. 1-3), which Particle does not and cannot contest.  The Court can therefore consider them.  *See, e.g.*, *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012).

[15] Epic also contends that the fair report privilege applies to the statements, all of which are fair reports of the Carequality Dispute.  (Mot. 30-31.)  This privilege applies to "any judicial proceeding . . . or other official proceeding".  N.Y. Civ. Rights Law § 74.  Particle's selective quotation of a 50-year old case from the Fourth Department, *Hogan v. Herald Co.*, 446 N.Y.S.2d 836, 841 (4th Dep't 1982) ("**Normally** the privilege does not extend to nongovernmental proceedings because the public has no oversight responsibility for their conduct") (Opp'n 32-33), does not exclude the Dispute, which followed the defined dispute-resolution procedure of Carequality, a national framework for sharing patient data, a topic of public interest.  The Resolution deciding the Dispute was publicly released (Ex. 1), reflecting the public interest in the process.

*hominem* attacks that are distinguishable from the statements at issue.  *See, e.g.*, *Atkins v. Bohrer*, 2011 WL 6779311, at *7 (S.D.N.Y. Dec. 23, 2011) (calling plaintiff a "thief" who "forged healthcare documents").

>        **D.    Particle Fails to State a Claim for Trade Libel.**

Particle's trade libel claim, which is based on statements Particle fails to dispute it has misrepresented (App'x A.2), must also be dismissed.  *First*, Particle fails to dispute—and therefore waives*, see Kao*, 2018 WL 501609, at *5—that the alleged statements do not constitute "false statement[s] of fact", a critical element of Particle's claim.  (Mot. 34-35.)  *Second*, Particle fails to plead actual malice for the reasons discussed above with respect to its defamation claim. *Third*, Particle fails to plead special damages.[16]  Particle is wrong that merely "naming specific lost customers is sufficient to allege special damages at the pleading stage".  (Opp'n 35 n.16.) The Second Circuit has specified that "[t]o assert special damages based on lost sales, a plaintiff must both name the individuals who ceased to be customers, or who refused to purchase, and itemize the exact damages."  *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015).  Particle fails to do so.

>                              **CONCLUSION**

The Complaint should be dismissed in its entirety with prejudice.  *In re Crude Oil Commodity Litig.*, 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 8, 2007) (Buchwald, J.) (dismissing with prejudice where, as here, the plaintiff had "opportunities to amend as well as full notice of the deficiencies in [its complaint]").

---

[16] Particle's claim that Epic's "one-sentence [special damages] argument . . . need not be considered" ignores that Epic incorporated by reference the special damages discussion in the defamation section.  (Mot. 35.)

Dated:  January 24, 2025

Respectfully Submitted,

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz
Margaret T. Segall
Lauren M. Rosenberg
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10011
Telephone:  (212) 474-1000
lmoskowitz@cravath.com
msegall@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendant Epic Systems Corporation*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Lauren A. Moskowitz, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that Epic Systems Corporation's Reply Memorandum in Further Support of its Motion to Dismiss ("Reply Memorandum") was prepared using Microsoft Word and the document contains 5,250 words as calculated by the application's word counting function, excluding the parts exempted by Local Civil Rule 7.1(c).  I further certify that the Reply Memorandum is within fifteen (15) pages, as stipulated to by the parties and endorsed by the Court.  (*See* Dkt. 18.)

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 24th day of January, 2025 in New York, New York.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz
