# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARTICLE HEALTH INC.<br><br>*Plaintiff*,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION<br><br>*Defendant*. | Case No. 1:24-cv-07174 |

**PLAINTIFF'S FIRST SET OF REQUESTS TO DEFENDANT
FOR PRODUCTION OF DOCUMENTS AND THINGS**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Plaintiff Particle Health Inc. ("Plaintiff" or "Particle"), by and through its undersigned counsel, hereby requests that Defendant Epic Systems Corporation ("Defendant" or "Epic") produce for inspection, examination and copying by Plaintiff, its attorneys, or others acting on Plaintiff's behalf, the following documents and things at the offices of Quinn Emanuel Urquhart & Sullivan, LLP located at 295 5th Avenue, Ninth Floor, New York, New York 10016, by either: (1) a date set by the Court; or (2) no later than thirty (30) days after service of these requests, whichever date is earlier.  These Requests are continuing in nature and impose upon Defendant the obligations stated in Rule 26(e) of the Federal Rules of Civil Procedure.

**DEFINITIONS**

1. Pursuant to Rule 26.3 of the Local Rules, the Uniform Definitions in Discovery Requests are incorporated herein, including but not limited to the definitions of: Communication; Document; Identify (with respect to persons); Identify (with respect to documents); Parties; Person; and Concerning.

1

2. "Particle" and "Plaintiff" refer to Particle Health Inc. and its divisions, subsidiaries, parents, affiliates, predecessors, predecessors-in-interest, successors, and successors-in-interest, and any current and former employees, agents, advisors, and representatives, as well as any other Persons acting or purporting to act on behalf of the foregoing.

3. "Epic," "Defendant," "You," and "Your" shall refer to Epic Systems Corporation and its divisions, subsidiaries, parents, affiliates, predecessors, predecessors-in-interest, successors, and successors-in-interest, and any current and former employees, agents, advisors, and representatives, as well as any other Persons acting or purporting to act on behalf of the foregoing.

4. "Epic Payer Platform" shall refer to all products or services Epic markets as Epic Payer Platform, and, to the extent not marketed by Epic as Epic Payer Platform, any other ancillary or related services related to EHRs that Epic markets to Payers, including any data analytics, monitoring, storage, or aggregation services offered to Payers.

5. "Carequality" shall refer to Carequality, Inc., The Sequoia Project, Inc., and any current and former members of the Carequality Steering Committee, as well as any divisions, subsidiaries, parents, affiliates, predecessors, predecessors-in-interest, successors, successors-in-interest, current and former employees, agents, advisors, representatives, and any other Persons acting or purporting to act on behalf of the foregoing.

6. "Carequality Framework" or "Carequality Network" shall refer to the body of legal, technical, and other rules, standards, methods, processes, and infrastructure set out in the Carequality Connected Agreement and any other contractual, legal, and governance documents or implementation guides associated with the Carequality Interoperability Framework, including all those identified at https://carequality.org/resources/.

7. "Health Information Exchange Network" or "HIE Network" shall refer to any non-profit or government-sponsored organization, association, consortium, network, initiative, or governance framework in which healthcare organizations participate to facilitate the exchange or transfer of EHRs or other patient data, including, but not limited to, the Carequality Framework, CommonWell Health Alliance, eHealth Exchange, and state or regional networks such as CRISP, HealthInfoNet, Arizona Health Information Exchange, Manifest MedEx, Indiana Health Information Exchange, etc.

8. "Carequality Dispute" shall refer to the dispute initiated by Epic against Particle on March 21, 2024 using Carequality's Dispute Resolution Process and which resulted in the Carequality Steering Committee Resolution of August 29, 2024 titled "Epic – Particle Health Dispute."

9. "Payer" shall refer to any company, government entity, or other entity that regularly pays for healthcare services provided to other Persons, including any entity that offers health insurance, health plans, HMOs, PPOs, or other services that involve payment of healthcare costs on behalf of a patient.

10. "Pay-vider" shall refer to any Payer that offers any service, tool, platform, or product related to the treatment of patients or improvement of patient health, including any service, tool, platform, or product that assists healthcare providers in rendering services to patients.

11. "EHRs" shall refer to electronic health records, electronic medical records, or any other form of healthcare-related patient data that is regularly generated, stored, maintained, edited, or shared using EHR software, including Epic's EHR software.

12. "Epic EHRs" shall refer to any EHRs (a) stored, generated, or otherwise maintained by a healthcare provider using Epic's EHR software, and (b) in relation to which Epic holds any

right, permission, license, or responsibility to exercise any degree of control, practical or formal, under any circumstances, regardless of whether such EHRs are the property of Epic or whether Epic has ultimate decision-making power over the sharing or other use of such EHRs. For the avoidance of doubt, "Epic EHRs" shall include any EHRs whose sharing Epic conducts or oversees (or may conduct or oversee) through the Carequality Framework or any other HIE Network.

13. "EHR Sharing Activity" shall refer to any activity undertaken by Epic that results in the sharing of Epic EHRs with any third-party, including any performance or oversight of EHR sharing through the Carequality Framework or any other HIE Network.

14. "Particle Connection" shall refer to any organization or entity that requests or obtains EHRs through the use of services provided by Particle, regardless of whether such organization or entity is a direct client or customer of Particle.

15. "Cut-Off Particle Connection" shall refer to any Particle Connection with respect to which (a) Epic engaged in EHR Sharing Activity prior to March 21, 2024, and (b) Epic ceased, paused, suspended, limited, or otherwise restricted EHR Sharing Activity at any point during or after March 2024.

16. "Carequality Onboarding Process" shall refer to any steps undertaken by Epic, the Care Everywhere Governing Council, or their affiliates to investigate, vet, or evaluate a new prospective recipient of Epic EHRs—including with respect to EHR use case, eligibility, and HIPAA compliance—prior to inclusion of that prospective recipient in Epic's Carequality directory.

17. "Secondary Use" shall refer to any use of EHRs beyond the purpose for which they were originally obtained.

18. "Cures Act" shall refer to the 21st Century Cures Act, Pub. L. 114–255.

19. "Information Blocking" shall have the meaning ascribed to it by 42 U.S.C. § 300jj-52(a).

20. "Relevant Time Period" shall refer to the period from January 1, 2018 to the present.

## INSTRUCTIONS

1. For all purposes herein, all spelling, syntax, grammar, abbreviations, idioms, and proper nouns shall be construed and interpreted to give proper meaning and consistency to their context.

2. Wherever appropriate, verb tenses shall be interpreted to include past, present, and future tenses. References to a gender shall be interpreted to include the masculine, feminine, and neuter. The use of defined terms in these Requests apply whether or not they are capitalized.

3. Each Request shall be fully complied with unless it is objected to in good faith, in which event the reasons for any objection shall be stated in detail. If an objection pertains to only a portion of a Request, or a word, phrase or clause contained within it, state the objection in detail to that portion only and to produce documents pursuant to the remainder of the Request, using Your best effort to do so.

4. These Requests are intended to cover all documents in Defendant's possession, custody or control, whether located at any of Defendant's offices or elsewhere. If any document was, but is no longer, in Defendant's possession or subject to Defendant's control, or in existence, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others (and if so, to whom); or (iv) has been disposed of in some other manner.

5. If Defendant asserts that any information responsive to any Request is privileged or otherwise protected from discovery, Defendant is required to comply with the requirements of

Local Rule 26.2 as to each document, thing, oral communication, or piece of information for which a claim of privilege or protection from discovery is made.

6. These Requests are continuing in nature and Defendant's responses to them are to be promptly supplemented or amended if, after the time of its initial responses, Defendant learns that any response is or has become in some material respect incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

7. Each Request should be construed independently. No Request should be construed by reference to any other Request for the purpose of limiting the scope of response to such Request.

8. Unless otherwise specified below, the time period for each request is the Relevant Time Period.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Organizational charts, personnel directories, and other Documents sufficient to show Your organizational structure during the Relevant Time Period and to identify the names, positions, titles, duties, and any reporting relationships (as well as any changes over time to the same) of personnel with responsibility concerning: (1) the Epic Payer Platform, (2) Your competitive strategies, (3) Your EHR Sharing Activity, (4) Your participation in and relationship with any HIE Network, (5) Your Carequality Onboarding Process, (6) the Carequality Dispute, and (7) any other activities directed toward or relating to Particle between January 2024 and the present.

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to show Your document or data retention and/or destruction policies, procedures, and practices, including but not limited to any departure or variance from those policies, procedures, and/or practices between January 1, 2024 and the present.

**REQUEST FOR PRODUCTION NO. 3**

All Documents and Communications discussing, referring to, or analyzing any actual or potential competitor to the Epic Payer Platform (or the field thereof), including, but not limited to: (1) reports and analyses of the market shares of the Epic Payer Platform and any perceived competitors; (2) reports, analyses, and evaluations of the Epic Payer Platform's actual or potential competitors' EHR access, retrieval, aggregation, analysis, or other capabilities; (3) barriers to entry; and (4) evaluations of any actual or potential competitors' plans or potential.

**REQUEST FOR PRODUCTION NO. 4**

All Documents and Communications discussing or referring to any EHR-related platform or service marketed to Payers other than the Epic Payer Platform, including, but not limited to, (1) any discussion of any other company's ability, inability, potential, or failure to offer such services or platforms, and (2) any differences in price, quality, usefulness, capability, features, or functionality, between any such services and the Epic Payer Platform.

**REQUEST FOR PRODUCTION NO. 5**

All Documents and Communications (including, but not limited to, any presentations, slide decks, or promotional materials) discussing or referring to the features and capabilities of the Epic Payer Platform (or any related Payer offering).

**REQUEST FOR PRODUCTION NO. 6**

All Documents and Communications discussing, reflecting, or referring to Epic's competitive strategies, plans, or objectives for the Epic Payer Platform.

**REQUEST FOR PRODUCTION NO. 7**

All Documents and Communications discussing, referring to, or reflecting Epic's internal policies and practices related to the fulfillment of EHR requests through the Carequality Framework or any other HIE Network for use cases other than "treatment," including any Documents or Communications discussing or evidencing the motivation or perceived effects of such policies and practices.

**REQUEST FOR PRODUCTION NO. 8**

All Documents and Communications discussing the permissibility, appropriateness, desireability, or legality of Payers (or any individual Payer) obtaining EHRs through the Carequality Framework, through any other HIE Network, or under a "treatment" use case, including any Documents or Communications discussing the effect of such activity on Epic's business interests.

**REQUEST FOR PRODUCTION NO. 9**

All Documents and Communications (including with any third party) discussing or referring to Particle between September 1, 2023 and the present, including, but not limited to, discussion of or reference to Particle as an existing or potential competitor to Epic, or as an actual or potential threat to any Epic business line, product, service, or activity, or to any of Epic's business interests, objectives, strategies, or revenues.

**REQUEST FOR PRODUCTION NO. 10**

All Documents and Communications discussing, referring to, reflecting, informing, or considering any suspension, cessation, or restriction of EHR Sharing Activity with respect to any Particle Connection between September 1, 2023 and the present (or the maintenance, alteration, or lifting thereof).

**REQUEST FOR PRODUCTION NO. 11**

All Communications between You and any Cut-Off Particle Connection from September 1, 2023 to the present discussing or referring to (1) Particle, or (2) any suspension, cessation, or restriction of EHR Sharing Activity, including, but not limited to, any acts or omissions such Cut-Off Particle Connection could or might take or omit to take to end, lift, or alter such restriction or suspension.

**REQUEST FOR PRODUCTION NO. 12**

All Documents and Communications discussing, referring to, or reflecting the Carequality Onboarding Process for any Particle Connection (including any policies applicable to new Particle Connections as a whole) between September 1, 2023 and the present, including any changes to such Carequality Onboarding Process.

**REQUEST FOR PRODUCTION NO. 13**

All Documents and Communications discussing or referring to Epic's April 10, 2024 "Issue Notification," including, but not limited to, (1) all drafts of the same, (2) all Communications with third parties discussing or referring to the same, and (3) all Documents or Communications relating to the preparation or consideration of the same.

**REQUEST FOR PRODUCTION NO. 14**

All Documents and Communications discussing, referring to, reflecting, informing, or considering Your decision to file the Carequality Dispute.

**REQUEST FOR PRODUCTION NO. 15**

All Documents and Communications related to or reflecting any discussion or evaluation of the merits, strengths, weaknesses, or likelihood of success of the Carequality Dispute, or of any plans, goals, or strategies regarding the Carequality Dispute.

**REQUEST FOR PRODUCTION NO. 16**

All Communications between You and Carequality between September 1, 2023 and the present discussing or referring to (1) the Carequality Dispute, (2) Particle, (3) Secondary Use of EHRs, (4) EHR Sharing Activity for non-treatment purposes, (5) Payers, or (6) any findings or decisions of the August 29, 2024 "Steering Committee Resolution."

Dated: February 24, 2025              By: /s/ *Adam B. Wolfson*
                                                            Adam B. Wolfson
                                                            QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                            865 S. Figueroa Street, 10th Floor
                                                            Los Angeles, California 90017
                                                            Telephone: (213) 443-3000
                                                            E-Mail: adamwolfson@quinnemanuel.com

                                                            Kathryn Bonacorsi
                                                            Lauren N. Beck
                                                            QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                            295 5th Avenue, Ninth Floor
                                                            New York, New York 10016
                                                            Telephone: (212) 849-7000
                                                            E-Mail: kathrynbonacorsi@quinnemanuel.com
                                                            E-Mail: laurenbeck@quinnemanuel.com

                                                            *Attorneys for Plaintiff Particle Health Inc.*

**CERTIFICATE OF SERVICE**

I, Adam B. Wolfson, certify that on February 24, 2025 a copy of the foregoing was served on all attorneys of record via email.


 */s/ Adam B. Wolfson*
Adam B. Wolfson