**quinn emanuel** trial lawyers | new york

295 5th Avenue,, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
adamwolfson@quinnemanuel.com

September 18, 2025
**VIA ECF**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Particle Health Inc. v. Epic Systems Corporation*, 1:24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

We write on behalf of Particle Health Inc. ("Particle") in response to Epic Systems Corporation's ("Epic") September 15, 2025 letter (the "Letter," Dkt. 43), regarding the Court's September 5, 2025 Order, (the "Order," Dkt. 42) .

The parties met and conferred on September 11, 2025 and agreed clarification was needed as to how best to proceed under the Court's Order. Although the parties discussed a joint submission in that regard, Epic ultimately suggested it file a letter first. But the Letter does not accurately characterize Particle's positions, so Particle hopes to provide clarity below. However, more important is that Epic's interpretation of the Order and its requests of the Court would unduly prejudice Particle in multiple ways. Although Epic admitted on the meet and confer that it would likely take another "early shot" at Particle's complaint via an early motion for summary judgment on market definition, it also claimed that Epic need not (1) file an answer, (2) provide Rule 26(a)(1) initial disclosures, (3) perform any custodial document collections, (4) engage in fulsome discovery on market definition, (5) participate in narrow depositions or expert discovery on market definition, nor (6) even begin to negotiate a discovery schedule for the remainder of Particle's claims. Epic thus asks to hobble Particle until such time as it files another dispositive motion based on whatever limited discovery Epic chooses to provide. That is improper.

*First*, Epic's request to be relieved of its obligation to file an answer under Federal Rule of Civil Procedure 12 contravenes basic principles of civil procedure. Rule 12(a)(4)(A) is unequivocal that a defendant must file an answer within 14 days of a denied motion to dismiss. The purpose of an answer is to narrow the range of issues and "apprise the opponent of" which "allegations in the complaint" will "stand admitted." 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1261 (4th ed.); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he purpose of pleading is to facilitate a proper decision on the merits.") (quotation omitted). Importantly, Epic's answer may provide admissions relevant to the market definition discovery, including whether or not there is any *actual* disagreement between the parties on the definition of "payer" or "payvider," or whether Epic views Particle as a competitor. *See, e.g., Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (issue determined where party admitted in answer and was therefore judicially bound by the admission). Epic suggests that it will

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

take another "early shot" at Particle's case, yet it asks to withhold from Particle the factual denials, admissions, and affirmative defenses that go to the heart of, *inter alia*, market definition. Epic cites no authority supporting such a request, and it violates the core purpose of Rule 12(a)(4).

*Second*, Epic's request that the Court limit market definition discovery to "three narrow subjects" ignores that a plaintiff is entitled to prove market definition through a wide variety of different types of evidence. *See*, *e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (noting that markets may be defined by a wide variety of "practical indicia" of competition, reflected in many different types of proof); *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc*., 386 F.3d 485, 496–99 (2d Cir. 2004) (applying various "practical indicia"); *see also* U.S. Dep't of Justice & Fed. Trade Comm'n, *Merger Guidelines* (2023) (discussing multiple different forms of evidence relevant to market definition). This includes not only quantitative evidence, like pricing data, but also qualitative evidence such as how the defendant discusses its competitors, or how the defendant discusses the market in which it operates. This is because courts "assume that the economic actors usually have accurate perceptions of economic realities." *Todd v. Exxon Corp.*, 275 F.3d 191, 205 (2d Cir. 2001) (quotation omitted). It is therefore unsurprising that "[w]hen determining the relevant product market, courts often pay close attention to the defendants' ordinary course of business documents." *Fed. Trade Comm'n v. Tapestry, Inc*., 755 F. Supp. 3d 386, 430 (S.D.N.Y. 2024) (quotation omitted). Relevant examples of such evidence include, for example:

- Unguarded, internal communications regarding perceived competitors, competitive strategy, and market positioning. *See, e.g., Tapestry*, 755 F. Supp. 3d at 431; *Fed. Trade Comm'n v. IQVIA Holdings Inc.*, 710 F. Supp. 3d 354, 364 (S.D.N.Y. 2024).

- Communications with third-party customers revealing the "'commercial realities' faced" by customers. *See, e.g., In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 935 (9th Cir. 2025) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992)); *Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 64 (S.D.N.Y. 2003).

- Business strategy documents and projections showing companies' views of competitive threats. *See, e.g., PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 106 (2d Cir. 2002); *Geneva*, 386 F.3d at 499.

Also highly relevant is expert evidence on market definition, which is standard for market definition issues. *See*, *e.g.*, *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 35 (S.D.N.Y. 2016) (denying summary judgment motion on market definition based on lay and expert evidence). Expert opinions require substantial discovery and support. *See* Fed. R. Evid. 702, 703.

During the meet and confer, Epic conceded all of the above bear on market definition, and that the "narrow subjects" to which it seeks to limit discovery do ***not*** encompass all evidence relevant to market definition issues. Nonetheless, it apparently seeks to prevent Particle from obtaining discovery on these issues despite conceding that it intends to seek early summary judgment on "Particle's market definition." Letter at 1. Epic also argued at the meet and confer that it might try to limit discovery of its documents to central corporate files, rather than those files ***and*** internal communications, communications with third parties, and other business documents discussing EPP, Particle, and the competitive dynamics for the companies' respective payer

platforms. As the above precedent indicates, the latter is what will fully answer the Court's market-related questions, and is what courts routinely examine in connection with market definition issues.

For these reasons, Epic's position ignores Particle's rights under Fed. R. Civ. P. 56(d). A party cannot properly argue that its opponent must first survive summary judgment on an issue before obtaining full discovery on that issue. *See, e.g.*, *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 n. 5 (1986) (noting the nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment); *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (finding that party did not have "a fully adequate opportunity for discovery when the district court granted summary judgment.") (internal quotation omitted).

*Third*, Particle welcomes the Court's decision to expedite market definition discovery, as it is confident that the evidence will rebut much of what Epic has represented. However, Particle respectfully requests clarification as to whether the Court's Order contemplates a complete stay of non-market definition discovery or simply an extended schedule for its completion. Epic's request for a broad discovery stay ignores that, under ordinary procedure, discovery would proceed on all issues for which Particle plausibly alleged its claims—including anticompetitive conduct, antitrust injury, and tortious interference with contract.[1] Order at §§ A.1, A.3, B.1. Epic's argument for an overarching stay is simply that it intends to submit an early motion on market definition, a notoriously factual issue, *see Todd*, 275 F.3d at 199 ("[M]arket definition is a deeply fact-intensive inquiry"), and its speculation that it will prevail. But such speculation does not outweigh the prejudice to Particle from delaying discovery on plausible claims. By contrast, proceeding on all claims is consistent with normal procedure under the Federal Rules and avoids unnecessary delay. While the Order directs the parties to expedite market definition discovery, it neither states that other discovery is stayed nor invokes Rule 26(c) as a basis for doing so. Particle thus requests clarification, as broad discovery stays are disfavored absent a specific finding of good cause, and the Order made no such finding. *See, e.g.*, *Y.Y.G.M., SA v. Ishay*, 2022 WL 22912055, at *1 (E.D.N.Y. Jan. 11, 2022) ("Discovery stays are disfavored absent a strong showing[.]").

\* \* \*

For the foregoing reasons, Particle respectfully requests the Court clarify that: (1) Epic must file its answer within 30 days of the Court's order concerning these letter briefs; (2) expedited discovery on market definition should proceed without the limitations Epic requests; and (3) the parties should negotiate a schedule under which there is expedited attention to market definition discovery, but otherwise no broad stay on discovery for the remainder of Particle's claims.

Respectfully submitted,

*/s/ Adam B. Wolfson*

Adam B. Wolfson

---

[1] Allowing discovery to proceed is particularly appropriate with respect to Particle's tortious interference claim, which is unrelated to antitrust and (regardless of the outcome of Epic's anticipated market definition motion) will proceed to discovery. Epic's counsel suggested that following summary judgment, this Court would subsequently decline to exercise supplemental jurisdiction over this claim. However, such speculation is no basis to stay discovery on a claim that Your Honor sustained in its entirety.