**quinn emanuel** trial lawyers | new york

295 5th Avenue,, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
adamwolfson@quinnemanuel.com

October 22, 2025
**VIA ECF**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:    *Particle Health Inc. v. Epic Systems Corporation*, 1:24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

      We write on behalf of Plaintiff Particle Health Inc. ("Particle") in the above-referenced case to respectfully request clarification of the Court's September 5, 2025 and October 3, 2025 Orders regarding initial discovery in this case. Dkts. 42, 47.

      As an initial matter, Particle is pleased to report the parties have met and conferred and largely agreed on a proposed discovery schedule. Following the Court's resolution of the issues raised in this letter, the parties will submit, in short order, a joint proposed schedule for the Court's consideration.

      The issue requiring resolution is whether Particle may exercise its rights under Rule 26(a)(2) to submit an expert report on market definition following the initial phased fact discovery. Epic has maintained that the Court implicitly barred Particle from submitting any such expert evidence, including if Epic makes good on its currently stated intent to move for summary judgment on Particle's antitrust claims—specifically, on the basis of market definition or some other reason Particle supposedly cannot meet its relevant market-related burdens for its antitrust claims. Particle has noted Epic's position cannot be correct under the Federal Rules of Civil Procedure or under basic tenets of fairness and due process.

      As the Court noted in both Orders, the three topics on which it ordered initial discovery are each related to market definition and are meant to help "shed light" on that critical topic. Dkt. 42 at 30; *see also id.* at 26, 31 (crediting Particle's allegation that "that no reasonably interchangeable products exist outside of the payer platform market that offer the same combination of features" and ordering discovery concerning "the exact functions offered by the parties' payer platform products"); *id.* at 27, 31 (crediting Particle's allegation that "a hypothetical monopolist of payer platforms can profitably implement a small but significant and nontransitory increase in price, or 'SSNIP', because payer platform users would not switch to other types of products" and ordering discovery concerning "the existence of alternative products available to suit payer needs.") (cleaned up). In antitrust cases, experts nearly always provide a critical role in relevant market definition because they contextualize and explain the economic significance of exactly the sorts of discovery the Court set for this initial phase. *See*, *e.g.*, *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 599 (1st Cir. 1993) ("In practice, the frustrating but routine question how to define

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

the product market is answered in antitrust cases by asking expert economists to testify."); *Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 294 F. Supp. 2d 1291, 1306 (M.D. Fla. 2003), *aff'd*, 479 F.3d 1310 (11th Cir. 2007) ("Construction of the relevant market 'must be based on expert testimony.'"); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 727 n.3 (D. Md. 2002), *aff'd*, 73 Fed. Appx. 576 (4th Cir. 2003) ("As a practical matter, however, it would seem impossible to prove such a complex economic question without the assistance of a qualified expert, *viz.*, an economist.").

Indeed, because Epic has already indicated it plans to move for summary judgment on market definition or related issues following the upcoming fact discovery, ordinary practice is for Particle to offer expert opinions on the issue and for Epic to either respond with expert opinions of its own or forego that right, if it so chooses.[1] Either way, if Particle's expert opinions are admissible and identify a genuine dispute of material fact on market definition, summary judgment would be improper on the subject. *See, e.g.*, *Caruso Mgmt. Co. Ltd. v. Int'l Council of Shopping Centers*, 403 F. Supp. 3d 191, 207–09 (S.D.N.Y. 2019) (relying on plaintiff's expert analysis to deny summary judgment on market definition).

In order to address this reality, Particle proposed a short expert discovery period, purely on market definition, in between the close of the expedited fact discovery process and any summary judgment motion from Epic, if Epic does indeed make such a motion following the upcoming discovery. There would be no prejudice to Epic from that procedure, particularly because it is standard practice given a plaintiff bears the burden on market definition. Epic nevertheless maintained the Court has precluded Particle from providing such expert evidence at all. The parties therefore agreed they would submit the dispute to the Court for its input, due to their diverging understandings of the Court's prior Orders. Once resolved, the parties will submit a joint proposed schedule—they have alternative versions queued up, depending on the Court's answer.

Particle maintains that the Federal Rules of Civil Procedure and the general law of due process each grant it the right to provide expert evidence on issues for which it bears the burden of proof, meaning Epic's position cannot be correct. *See, e.g.*, *Tolan v. Cotton*, 572 U.S. 650, 659 (2014) (reversing grant of summary judgment where "the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion").

Respectfully submitted,

*/s/ Adam B. Wolfson*
Adam B. Wolfson

---

[1] For example, Epic apparently intends to seek summary judgment on "the existence of alternative products available to suit payer needs." Dkt. 42 at 31. Whether any "alternative products" exist that adequately "suit payer needs," such that they are reasonable substitutes for the parties' payer platforms, is the core market definition question to which expert testimony is consistently directed. *See, e.g.*, *Fed. Trade Comm'n v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 442–45 (S.D.N.Y. 2024) (relying on economic analysis of product substitution rates to find that defendant's proposed alternative products are not reasonable substitutes).