# EXHIBIT 4

# CRAVATH

Michael P. Addis
maddis@cravath.com
T+1-212-474-1956
New York

December 1, 2025

Re: <u>Particle Health Inc. v. Epic Systems Corporation</u>, No. 24-cv-07174-NRB (S.D.N.Y.)

Counsel:

      I write on behalf of Epic Systems Corporation ("Epic") in response to Particle Health Inc.'s ("Particle") November 25, 2025 email and further to the parties' November 24, 2025 meet and confer. Epic does not undertake to correct every mischaracterization in Particle's November 25, 2025 email other than to say that Epic disagrees with them.

## I.    Custodians

### A.    Epic Custodians

      As discussed during the parties' November 24, 2025 meet and confer, Epic does not maintain in the ordinary course of business traditional organizational charts reflecting the Epic employees with business decision-making responsibility for Epic Payer Platform. Based on our investigation, Epic is able to query the names of employees who currently work on Epic's Payer Platform product in technical roles (*e.g.*, software development and implementation). However, the individuals that Epic has identified as custodians have responsibility for sales and overall management of Epic Payer Platform and are the most likely to have documents that relate to the three narrow topics at issue in Phase I (the "Phase I Topics").[1]

      Particle's suggestion that the two individuals identified in Epic's initial disclosures—Jim McDermott and Patrick Schenk—are not the "most relevant individuals for assessing the limited issues in this phase", including because Particle "ha[d] not heard of these individuals" (11/25/2025 Email from L. Beck), is misinformed. Contrary to Particle's suggestion, Mr. McDermott and Mr. Schenk are knowledgeable about Epic Payer Platform and the Phase I Topics. Mr. McDermott is the Vice President of Payer Software at Epic and in that role serves as the lead software developer for Epic Payer Platform. Mr. Schenk is a Vice President at Epic who has served as an Implementation Executive and sales executive for Epic Payer Platform. Epic believes that Mr. McDermott and Mr. Schenk are more than sufficient custodians for this limited Phase I discovery. In the interest of compromise, however, if it will resolve all disputes on this issue, Epic will agree to add Derek De Young as a custodian. Mr. De Young served as the R&D (Research and Development) Product Lead for Epic Payer Platform through October 2025.

---

[1] As Particle knows, the Phase I Topics are "(i) the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (*i.e.*, retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs". (Dkt. No. 42 at 31.)

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

Epic does not agree to add the seven additional individuals that Particle identified. Epic has already identified the custodians most likely to have documents responsive to the Phase I Topics, and, to the extent any of the additional individuals Particle proposes have any documents relevant to Phase I, such documents likely would be duplicative and/or cumulative of documents contained in the files of the three custodians Epic is offering, and Particle provides no basis to believe otherwise. Adding additional custodians would not be proportionate given the narrow focus and scope of Phase I discovery.

### B. Particle Custodians

To date, Particle has not identified its proposed custodians. We expect that Particle has already collected documents for the individuals associated with Particle that are identified on Particle's initial disclosures for Phase I, and, at a minimum, Particle must propose as custodians any such individuals that it intends to rely on in Phase I. Please promptly provide Particle's list of proposed custodians for Phase I document discovery for Epic's evaluation.

## II. Search Protocol

Epic is generally willing to engage in the process that Particle proposes with respect to the exchange of search terms and proposed additions and/or revisions to those search terms. Epic's proposed exchange schedule is set forth below, which we also sent via email earlier today. (*See* 12/1/2025 Email from M. Vaughn.) To be clear, Epic does not agree to collect the custodial files for the additional individuals that Particle identified. Epic will test search terms only against the documents for the three custodians for whom Epic has agreed to produce documents as part of Phase I.

- **December 2, 2025 at 9 AM ET**: Particle and Epic each propose search terms to run on its own documents, along with information regarding the resulting hit counts (including individual hits and unique hits for each term, along with overall document count)

- **December 3, 2025 at 9 AM ET**: Parties exchange reasonable set of proposed revisions to each other's proposed search terms

- **December 3, 2025 at 6 PM ET**: Parties exchange hit reports for the amended proposed search terms and meet and confer from that point on as necessary

## III. Protective Order and ESI Order

*First*, with respect to the Protective Order, Epic is still awaiting Particle's response to the questions Epic posed during the November 24, 2025 meet and confer regarding Particle's in-house counsel. Specifically, (i) whether Particle has more than one in-house counsel, and (ii) whether any Particle in-house counsel does not engage in competitive decision-making.

*Second*, with respect to the ESI Order, Epic accepts Particle's proposed revisions and has made one minor revision in the attached version in track changes to reflect production specification changes from Epic's document vendor.

### IV.   Epic's Responses to Particle's RFPs

#### A.   Search Methodology for Certain RFPs

For certain RFPs where Epic proposed to conduct only non-custodial searches,[2] Particle requested that Epic also conduct custodial searches by the application of search terms. (11/25/2025 Email from L. Beck.)  Epic does not believe that individualized search terms geared at those RFPs are necessary.  Similar to user guides and manuals that are responsive to RFP No. 6 from Particle's Second Set of RFPs for which Particle agreed on the parties' November 24, 2025 meet and confer only non-custodial searches are appropriate, searches for documents describing each of Epic Payer Platform's features and capabilities, customer types, roadmaps, policies, and SWOT analyses are best suited for non-custodial searches and any incremental custodial searches for such documents would be overly burdensome during this limited Phase I. (*See* RFP No. 5 from Particle's First Set of RFPs and RFP Nos. 2, 5, 7, and 15.)  However, in the interest of compromise, if it will resolve all disputes on this issue, Epic is willing to run reasonable, targeted search terms focused on RFP Nos. 4 and 12 from Particle's Second Set of RFPs—which on their face are seeking documents concerning a specific subset of Epic Payer Platform functionalities and analyses concerning the Epic Payer Platform target market—as long as the searches are appropriately and reasonably tailored.

In any event, as Epic explained during the November 24, 2025 meet and confer, to the extent non-privileged documents responsive to these RFPs and the Phase I Topics are returned by the search terms directed at Particle's other RFPs, Epic will produce them.

#### B.   Epic's Objections to Certain RFPs

For certain RFPs where Epic objected to producing documents in full (specifically, RFP Nos. 9, 16-18 and 20), Particle has requested that Epic reconsider its position and clarify what portions (if any) of the RFPs that Epic will produce documents in response to.

RFP No. 9 seeks "All Documents and Communications discussing or referring to the relationship (or lack thereof) between Epic Payer Platform and Epic Payer Gateway, as discussed at open.epic :: Interoperability Guide, including Documents sufficient to show the differences and functionality between the Epic Payer Platform and Epic Payer Gateway."  As Epic explained during the parties' November 24, 2025 meet and confer, Epic Payer Gateway is a separate product and not relevant to the Phase I Topics.  And to the extent this RFP seeks documents regarding the features and functionalities of Epic Payer Platform, Epic has already agreed to perform a reasonable search for such documents, including in response to RFP No. 5 from Particle's First Set of RFPs and RFP Nos. 4, 6, 11, and 15 from Particle's Second Set of RFPs.  However, for the avoidance of doubt, Epic will not withhold any non-privileged documents responsive to RFP No. 9 to the extent they relate to the Phase I Topics.  To the extent such documents are returned by Epic's agreed-upon searches, Epic will produce them.

RFP No. 16 seeks "All Documents and Communications concerning cross-elasticity of demand between Epic Payer Platform and any other products or services, including any analyses of how price changes for Epic Payer Platform or competitive products to Epic Payer Platform affect customer demand, and vice versa."  As Epic explained during the parties' November 24, 2025 meet and confer, how the price and demand of alternative products is impacted by the

---

[2] Specifically, RFP No. 5 from Particle's First Set of RFPs and RFP Nos. 2, 4-5, 7, 12, and 15 from Particle's Second Set of RFPs.

price of Epic Payer Platform is beyond the scope of the Phase I Topics, including the question of whether alternative products exist to suit payer needs. Epic has already agreed to perform a reasonable search for documents concerning the question of whether alternative products exist and the competitiveness of those products, including in response to RFP Nos. 3-4, 6, and 9 from Particle's First Set of RFPs and RFP Nos. 1, 7, 10-11, and 13 from Particle's Second Set of RFPs. However, for the avoidance of doubt, Epic will not withhold any non-privileged documents responsive to RFP No. 16 to the extent they relate to the Phase I Topics. To the extent such documents are returned by Epic's agreed-upon searches, Epic will produce them.

RFP No. 17 seeks "All Documents and Communications concerning integration between Epic Payer Platform and health information exchanges, networks, or interoperability frameworks, including any analyses of how such integration affects Epic Payer Platform's competitive positioning." As Epic explained during the parties' November 24, 2025 meet and confer, this RFP is beyond the scope of the Phase I Topics and Particle cannot claim otherwise merely by inserting the phrase at the end regarding "how such integration affects Epic Payer Platform's competitive positioning". To the extent Particle is seeking documents regarding the features and functionalities of Epic Payer Platform, Epic has already agreed to perform a reasonable search for such documents, including in response to RFP No. 5 from Particle's First Set of RFPs and RFP Nos. 4, 6, 11, and 15 from Particle's Second Set of RFPs. And to the extent Particle is seeking documents regarding alternatives to Epic Payer Platform, Epic has already agreed to perform a reasonable search for such documents, including in response to RFP Nos. 3 and 6 from Particle's First Set of RFPs and RFP Nos. 7, 10-11, and 13 from Particle's Second Set of RFPs. However, for the avoidance of doubt, Epic will not withhold any non-privileged documents responsive to RFP No. 17 to the extent they relate to the Phase I Topics. To the extent such documents are returned by Epic's agreed-upon searches, Epic will produce them.

RFP No. 18 seeks "All Documents and Communications constituting, reflecting, or concerning notes, agendas, minutes, recordings, or other memorializations of meetings held between July 1, 2023 to the present where Particle, Particle's payer platform, or Epic Payer Platform were discussed, including meetings attended by Judy Faulkner, Alan Hutchison, Dave Fuhrmann, and/or Katie O'Brien, or others involved with the Epic Payer Platform, and including specifically the weekly strategy meetings held on Fridays." As Epic explained during the parties' November 24, 2025 meet and confer, as drafted, this RFP is vastly overbroad as it effectively seeks all documents and communications regarding any meeting that took place at Epic over the past 2.5 years that merely mention Particle, Particle's purported "payer platform", or Epic Payer Platform. For example, documents that concern the Carequality dispute with Particle are not encompassed within the Phase I Topics. Moreover, Epic is not aware of the "weekly strategy meetings held on Fridays" referred to in this RFP, and Particle stated on the meet and confer that it would follow up with more detail about the information it allegedly received on these meetings, which Particle has yet to do. As explained during the meet and confer, to the extent Particle is seeking documents regarding whether Epic considers Particle a competitor to Epic Payer Platform, Epic has already agreed to perform a reasonable search for such documents, including in response to RFP Nos. 3 and 9 from Particle's First Set of RFPs and RFP No. 1 from Particle's Second Set of RFPs. However, for the avoidance of doubt, Epic will not withhold any non-privileged documents responsive to RFP No. 18 to the extent they relate to the Phase I Topics. To the extent such documents are returned by Epic's agreed-upon searches, Epic will produce them.

RFP No. 20 seeks "All Documents and Communications from, to, or involving the Interoperability Division, including communications with, from, or involving Dave Fuhrmann, concerning Particle or Epic Payer Platform, including any analyses, assessments, or discussions

4

of Particle as a competitor to Epic Payer Platform." As Epic explained during the parties' November 24, 2025 meet and confer, this RFP—which effectively requests all documents that discuss either Particle or Epic Payer Platform from an unidentified set of individuals (as Particle was unable to define "Interoperability Division")—is vastly overbroad and seeks documents well beyond the Phase I Topics. For example, documents that concern the Carequality dispute with Particle are not responsive to the Phase I Topics. And to the extent this RFP seeks documents concerning whether Epic considers Particle a competitor to Epic Payer Platform, Epic has already agreed to perform a reasonable search for such documents, including in response to RFP Nos. 3 and 9 from Particle's First Set of RFPs and RFP No. 1 from Particle's Second Set of RFPs. However, for the avoidance of doubt, Epic will not withhold any non-privileged documents responsive to RFP No. 20 to the extent they relate to the Phase I Topics. To the extent such documents are returned by Epic's agreed-upon searches, Epic will produce them.

## V.      Particle's Responses to Epic's RFPs

Epic is still awaiting confirmation from Particle that it will produce documents in response to Epic's RFP Nos. 6 and 7. During the parties' November 24, 2025 meet and confer, Particle otherwise confirmed that it will produce documents responsive to Epic's remaining RFPs as drafted.

RFP No. 6 seeks "Documents sufficient to show which employees of Particle's customers have log-in access to Particle's Payer Platform and how, if at all, such access varies depending on the type of Particle customer employee". As Epic explained during the parties' November 24, 2025 meet and confer, RFP No. 6 is relevant to both (i) whether Particle's products have payers and/or payviders as customers, and (ii) the exact functions offered by Particle's products, including the retrieval function in particular, and how Particle's products differ from Epic Payer Platform.

RFP No. 7 seeks "All Documents Concerning how Particle's Payer Platform verifies that a payer's relationship with a patient entitles the payer to request that patient's record, including but not limited to how Particle's Payer Platform confirms active coverage by the payer, or that there was no decision to self-pay by the patient". As Epic explained during the parties' November 24, 2025 meet and confer, like RFP No. 6, RFP No. 7 is relevant to the exact functions offered by Particle's products, including the retrieval function that Particle identified as "unique", as it seeks documents regarding how Particle's products verify whether a customer is entitled to retrieve the record being requested.

As Epic further explained during the November 24, 2025 meet and confer, RFP Nos. 6 and 7 seek the same types of documents that would be responsive to RFP No. 5 from Particle's Second Set of RFPs, which seeks "Documents sufficient to show any processes You undertake, policies you maintain, or features built into Epic Payer Platform that relate to the amount, nature, and scope of records a customer who obtains medical records through Epic Payer Platform receives".

Please confirm that Particle agrees to produce documents in response to Epic's RFP Nos. 6 and 7.

* * *

Epic is available to meet and confer further about any of these issues.

        Sincerely,

        */s/ Michael P. Addis*

        Michael P. Addis

Lauren Beck
 Quinn Emanuel Urquhart & Sullivan, LLP
  295 Fifth Avenue
   New York, NY 10016

BY EMAIL