# EXHIBIT 5

quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3084**

WRITER'S EMAIL ADDRESS
adamwolfson@quinnemanuel.com

December 4, 2025

**VIA E-MAIL**

Re: *Particle Health Inc. v. Epic Systems Corporation*, No. 24-cv-07174-NRB (S.D.N.Y.)

Counsel:

I write on behalf of Particle Health Inc. ("Particle") in response to Epic Systems Corporation's ("Epic") December 1, 2025 letter ("Letter").

**A.     Custodians**

As you know, we provided a list of eight potential Epic custodians detailing their known involvement with EPP and their clear relevance to the topics at issue in Phase I (the "Phase I Topics") based on extensive diligence performed by our team, including through discussions with our client who has communicated regarding EPP directly with Epic personnel, as well as with third parties, and through information available in the public record. *See* Ex. A (11/25/2025 Email from L. Bec,k). You have responded substantively with respect to just *one* of the custodians Particle identified, Derek De Young (and acknowledged his relevance). You apparently have declined to perform any diligence or investigation into the remaining seven custodians Particle identified (the "Potential Custodians") and have failed to provide any information regarding what their roles are with EPP and whether they possess any potentially relevant documents.

While Particle is not suggesting that all seven of the Potential Custodians must be included in Phase I, Epic's failure to engage with the facts presented by Particle following time-intensive diligence of those custodians is disappointing. Instead, Epic rejected the Potential Custodians outright, without any information regarding their roles or involvement with EPP. This refusal to perform routine diligence is particularly concerning in light of the asymmetry between the custodians Particle has offered and the custodians Epic has offered. Particle—a relatively small startup company—proposed **6 *custodians*** to sufficiently cover all three of the Phase I Topics, including certain of its highest level executives who have communicated regarding market position and alternative products. Particle is also considering the 2 additional Particle custodians you have proposed. By comparison, Epic—a large and sprawling company with 1000s of employees—has offered ***only 3 custodians***.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Accordingly, Particle remains concerned regarding both the number of Epic's custodians and Epic's counsel's seemingly arbitrary selection of custodians, even with the addition of Derek De Young. Indeed, it bears reiterating that the two custodians you initially proposed are not known by Particle. As to Mr. McDermott, contrary to your representation that he is the "Vice President of Payer Software at Epic," Mr. McDermott describes his role at Epic as the Vice President of "Health Plan Products."[1] It is thus not clear to what extent Mr. McDermott's role is related to EPP as opposed to other products. Moreover, although Mr. McDermott's role as a software developer is potentially relevant to the second of the Phase I Topics ("The exact functions offered by the parties' payer platform products . . . ."), we would not expect that his technical role would result in him having communications with EPP's payer or payvider customers nor communications regarding higher level discussions regarding market-position strategy and alternative products as relevant to the first and third Phase I Topics. As to Mr. Schenk, his vague role as a "Vice President"[2] untethered to any product or department does little to indicate the depth of his involvement with EPP. We understand you have represented that Mr. Schenk has served as a sales executive for EPP, and while we would expect that such an undefined sales role may result in at least some relevant communications regarding the first of the Phase I Topics related to customers, again, it does not appear that Mr. McDermott would have been involved in broader market-position strategy or have communications regarding the existence of alternative products as relevant to the third of the Phase I Topics. And while we appreciate your acknowledgement of Mr. De Young's clear relevance (given that we understand he is one of the key individuals involved with EPP), his role in R&D similarly leaves gaps in at least the first and third of the Phase I Topics.

Particle's concerns regarding Epic's counsel's selection of custodians are heightened by the absence of the requested organizational charts or any information about departmental or hierarchical structure, which Epic claims not to possess. As we explained during the last meet and confer, the production of organizational charts at the outset of discovery is standard practice precisely because the requesting party otherwise lacks the information necessary to confirm appropriate custodians are chosen. In light of this asymmetry of information, Particle cannot simply accept the custodians that Epic is willing to offer without further information regarding the Potential Custodians—custodians that are clearly relevant to the Phase I Topics based on their titles, publicly available information, information known to Particle, and information provided by EPP's potential customers. Moreover, given your statements on prior meet and confers that Epic anticipates filing an early motion for summary judgment on the Phase I Topics, it is crucial that Epic provide documents from the key individuals relevant across the three Phase I Topics, and not just the few custodians Epic has identified which do not sufficiently cover all three. Depriving Particle of relevant evidence—or even basic information regarding the Potential Custodians as a starting point—in the face of a dispositive motion is fundamentally unfair.

In order to facilitate a good-faith exchange of information and negotiation regarding the appropriate number and identity of Epic's custodians, we reiterate our request that Epic investigate the Potential Custodians and provide the information Particle requested. Absent a sufficient response on these proposed custodians, Particle will seek relief from the Court.

---

[1] https://www.linkedin.com/in/jim-mcdermott-39429124/.

[2] https://www.linkedin.com/in/patrick-schenk-3247232b/.

- Judith Faulkner (Founder and CEO): As explained in our November 25, 2025 email, Ms. Faulkner is widely reported to be deeply involved in operational and product decisions. We further understand that she has ultimate decision-making authority within Epic. Please confirm that you have investigated, as Particle requested, whether Ms. Faulkner is the final decision-maker regarding EPP, has been involved throughout the process of its development and marketing, and has attended meetings during which Particle's payer platform has been discussed. After further investigation, Particle understands that these meetings may internally be referred to as "execution meetings" or "strategic discussions." Given our understanding that Ms. Faulkner (along with Mr. Hutchinson) has been one of the key strategy drivers in attempting to address the payer and payvider market and position EPP vis-à-vis other products and specifically Particle, she is highly relevant to the first and third of the Phase I Topics.

- Alan Hutchinson (VP, Population Health & Payer Strategy): As explained in our November 25, 2025 email, Mr. Hutchinson oversees Payer operations and has issued public statements on EPP and its market position.[3] These facts plainly bear on the questions posed by the Court. As noted above, we understand that Mr. Hutchinson (along with Ms. Faulkner) has been one of the key strategy drivers in attempting to address the payer and payvider market and position EPP vis-à-vis other products and specifically Particle. Accordingly, he is highly relevant to the first and third of the Phase I Topics. Please confirm that you have investigated, as Particle requested, the scope and nature of Mr. Hutchinson's involvement in EPP, his knowledge of Particle as competitor, and whether he has regularly attended any meetings at which Particle's platform has been discussed.

- Seth Howard (VP, R&D): As explained in our November 25, 2025 email, Mr. Howard is one of the key individuals involved in EPP and has issued public statements regarding payer technology and platform strategy.[4] Again, these facts plainly bear on the questions posed by the Court, including the second and third of the Phase I Topics. Please confirm that you have investigated, as Particle requested, the scope and nature of Mr. Howard's involvement in EPP.

- Rob Klootwyk (Director of Interoperability): As explained in our November 25, 2025 email, our research indicates that Mr. Klootwyk possesses knowledge and documents regarding EPP's EHR retrieval functions. He has also made public statements regarding EHR access and interoperability. Given his intimate knowledge of the capabilities of EPP, Mr. Klootwyk is clearly relevant to the second of the Phase I Topics. Please confirm that you have investigated, as Particle requested, the scope and nature of Mr. Klootwyk's involvement in EPP.

- Dave Fuhrmann (Senior VP, Research and Development): As explained in our November 25, 2025 email, Mr. Fuhrmann has been involved in Epic's interoperability products since 2008 and his key role in R&D indicates that he most likely possesses documents regarding

---

[3] *See, e.g.,* https://www.beckershospitalreview.com/healthcare-information-technology/ehrs/epic-expands-reach-among-payers-retail-disruptors/.

[4] *See, e.g.,* https://www.fiercehealthcare.com/health-tech/epic-unveils-major-ai-features-ai-charting-microsoft-cosmos-ai-risk-prediction-and-rcm.

3

> EPP's EHR retrieval functions. We also understand that Mr. Fuhrmann has been involved in discussions regarding Particle's platform in the strategy meetings referenced above. Like Mr. Klootwyk, Mr. Fuhrmann is likely to possess numerous communications regarding the capabilities of EPP and thus is relevant to at least the second of the Phase I Topics. Please confirm that you have investigated, as Particle requested, the scope and nature of Mr. Fuhrmann's involvement in EPP.

- <u>Katie O'Brien (Strategic Partnerships and Procurement Oversight)</u>: As explained in our November 25, 2025 email, Ms. O'Brien's title expressly includes "strategic partnerships" and we understand she will be in possession of documents related to payer partnership agreements. We also understand that Ms. O'Brien has been a participant in the strategy meetings described above. Given Ms. O'Brien's deep knowledge of EPP's customer base and her involvement in broader market strategy, she is highly relevant to at least the first and third of the Phase I Topics. Please confirm that you have investigated, as Particle requested, the scope and nature of Ms. O'Brien's involvement in EPP.

- <u>Ladd Wiley (Head of Public Policy)</u>: As explained in our November 25, 2025 email, Mr. Wiley is a reported board member involved in strategic discussions regarding payer platform market strategy. Mr. Wiley's participation in high-level strategy for the market is directly relevant to at least the first and third of the Phase I Topics, as Mr. Wiley is likely to have communications regarding the nature of the market and its customers, the incentives for entering the market, and EPP's competitors and efforts to establish itself in the space. Please confirm that you have investigated, as Particle requested, the scope and nature of Mr. Wiley's involvement in EPP.

In addition, since the parties November 24, 2025 meet and confer, Particle has come to understand that **Ryan Bohochik** and **Karsten Smith** are key Epic employees likely to possess relevant information on the market definition questions posed by the Court. Specifically, we understand that Mr. Bohochik and Mr. Smith operate as heads of product running EPP, regularly interact with potential customers, providing EPP product demonstrations regarding its functionality and EPP sales pitches in their roles. Mr. Bohochik, Director of Value Based Care, has repeatedly made statements about EPP and its functionality, and has referred to discussions with payer customers using EPP.[5] Similarly, Mr. Smith appears to be involved in communications with payer and payvider customers. Indeed, his title is Vice President of Health Plan Applications. In light of these facts, we thus expect that both Mr. Bohochik and Mr. Smith will have extensive knowledge of and communicate regularly regarding the capabilities of EPP and EPP's payer and payvider customers. Please investigate the scope and nature of these individuals' involvement in EPP so that the parties can assess relevance.

B.   **Search Protocol and Search Terms**

Epic's statement that it will "test search terms only against the documents for the three custodians for whom Epic has agreed to produce documents as part of Phase I" is not a good-faith position, particularly where Epic appears not to have even investigated the relevance of the

---

[5]   *See*   https://www.epicshare.org/perspectives/improving-outcomes-with-provider-payer-collaboration-and-a-digital-first-mindset

4

Potential Custodians. It remains Particle's position that Epic is obligated to perform that investigation and, to the extent certain of the Potential Custodians are confirmed to be highly relevant as we suspect, test search terms against those individuals to assess relevance and burden.

With respect to search terms Particle has proposed certain reasonable revisions by email on December 3, 2025, designed to target a broader universe of relevant documents where applicable on the one hand, and to target a narrower universe and reduce false positives where applicable on the other hand. In addition, specifically as to search string 5 (("EPP" OR "payer platform") W/40 (("win" OR "won") W/5 ("lose" OR "loss"))) which resulted in only 6 hits, although Particle has proposed certain revisions it believes are appropriate, we query whether the appropriate terms used within Epic are being utilized in search string 5 given the low hit rate. Please confirm whether Epic creates or otherwise assesses wins and losses with respect to EPP in the ordinary course of business and, if so, please confirm the language Epic uses to refer to those reports and/or assessments. We understand that Epic uses "red" and "yellow" flags to assess various issues within its system, including with customers of EPP, and records such issues in an internal portal called "Guru."

Finally, we understand that Epic's employees regularly use Microsoft Teams in conducting their roles related to EPP. Please confirm that your searches and collections include Teams data.

C.    **Epic's Responses to Particle's RFPs and Particle's Responses to Epic's RFPs**

Particle will respond separately by letter regarding the parties' requests for production and responses by December 5, 2025.

*    *    *

Given the current schedule, particularly the deadline for the parties to reach impasse as to search methodology by December 8, 2025, please let us know your availability to meet and confer on December 5 or December 8, 2025.

Very truly yours,

*/s/ Adam Wolfson*

Adam Wolfson

# Exhibit A

# Lauren Beck

| | |
|---|---|
| **From:** | Lauren Beck |
| **Sent:** | Tuesday, November 25, 2025 1:06 PM |
| **To:** | 'Madalyn Vaughn'; Steven Becker; Adam Wolfson; Kathryn Bonacorsi; Johnston Hill |
| **Cc:** | Lauren Moskowitz; Michael Addis; Lauren Reisig; Nikol Oydanich; Jonathan Sarnoff |
| **Subject:** | RE: Particle Health, Inc. v. Epic Systems Corp. -- Epic's R&Os to Particle's RFPs |
| **Attachments:** | [QE Edits 11.24] Particle v. Epic - Draft Protective Order.docx; [QE Edits 11.24] Particle v. Epic - Draft ESI Order.docx |

Counsel,

Thank you for the productive meet-and-confer yesterday. We write to memorialize our call and follow up on a few issues discussed.

I.      **Search Protocol**

As we discussed, we believe it makes sense for the parties to agree to a process for determining search terms and custodians, even if outside of the ESI protocol. Epic indicated it believed that it would be most efficient for the parties to draft the search terms to be run on their own documents in the first instance. As discussed, while we are generally amenable to this as a starting point, the responding party should have an opportunity to propose additions and revisions, which should be run as a matter of course to assess burden. Below is the process we propose.

1. 11/28 - Particle and Epic each propose search terms and custodians to run on its own documents, along with information on the resulting hit counts (including individual hits and unique hits for each term, along with overall document count)
2. 12/2 - Particle proposes amended or additional search terms and/or custodians to Epic's proposed terms (and vice versa)
3. The parties run and exchange hit reports for the amended proposed search terms and custodians and meet and confer from there.

The parties would complete this process and identify any impasses by 12/8 as provided for in the schedule, so that there is sufficient time to move to compel on the scope of production if needed. As noted on the meet and confer, we believe the parties should agree at the outset to run one another's proposed search term and custodian revisions without waiver to any objections regarding production so that the parties can concretely assess relevance and burden.

II.     **Custodians**

As discussed in our initial email and on our call, Particle requests that the parties exchange organization charts identifying personnel and reporting relationships concerning the parties' respective products for payers. Epic indicated it does not possess organization charts but would investigate. We asked Epic to confirm its position and, if charts or other documents reflecting reporting relationships for Epic personnel exist, provide them.

1

Relatedly, Epic has identified only two individuals—Jim McDermott and Patrick Schenk—as possessing discoverable information. As we noted, neither our client nor the publicly available information indicates that these are the most relevant individuals for assessing the limited issues in this phase. Indeed, our client has not heard of these individuals and we have not been able to verify their involvement in EPP based on our research to date. However, both our client and the publicly available information does indicate that there are additional Epic personnel that possess responsive documents and should also serve as custodians. As you know, Particle has been in regular discussions with Epic for years as its primary competitor, as well as other industry participants and potential clients of EPP, who have provided Particle with information regarding the personnel at Epic involved in EPP. Publicly available information has confirmed this understanding in many instances. While necessarily preliminary, at least the following individuals appear to be highly relevant:

- **Judith Faulkner** (Founder and CEO): Ms. Faulkner is widely reported to be involved in operational and product decisions. We further understand from conversations with our client and other industry participants that Ms. Faulkner is the final decision-maker regarding EPP, has been involved throughout the process of its development and marketing, and regularly attends strategy meetings at which Particle's platform has been discussed.
- **Alan Hutchinson** (VP, Population Health & Payer Strategy): We understand that Mr. Hutchinson oversees Payer operations. He has also issued public statements on EPP and market positioning. https://www.beckershospitalreview.com/healthcare-information-technology/ehrs/epic-expands-reach-among-payers-retail-disruptors/. We understand from our client that Mr. Hutchinson is a key person involved in EPP and also understand that Mr. Hutchinson has similarly attended the strategy meetings at which Particle's platform has been discussed.
- **Derek de Young** (R&D, Operational Services/Customer Success): Mr. de Young is reported to be Epic's Payer Platform Lead. https://thisweekhealth.com/news_story/ai-far-from-fixing-prior-authorization-epic-exec-says/. We understand from conversations with our client that Mr. de Young is one of the key individuals involved in EPP.
- **Seth Howard** (VP, R&D): We similarly understand from our client that Mr. Howard is one of the key individuals involved in EPP. He has also made public statements regarding payer technology and platform strategy. https://www.fiercehealthcare.com/health-tech/epic-unveils-major-ai-features-ai-charting-microsoft-cosmos-ai-risk-prediction-and-rcm
- **Rob Klootwyk** (Director of Interoperability): We understand from our client and publicly available sources that Mr. Klootwyk likely possesses knowledge and documents regarding EPP's EHR retrieval functions. He has also made public statements regarding EHR access and interoperability that indicate he likely possesses documents related to, at a minimum, the EHR access and interoperability functions of EPP.
- **Dave Fuhrmann** (Senior VP, Research and Development): Mr. Fuhrmann has been involved in Epic's interoperability products since 2008 and his key role in R&D indicates that he likely possesses documents regarding EPP's EHR retrieval functions. We also understand that Mr. Fuhrmann has been involved in discussions regarding Particle's platform in the strategy meetings referenced above.
- **Katie O'Brien** (Strategic Partnerships and Procurement Oversight): Ms. O'Brien's title expressly includes "strategic partnerships" and we understand she will likely be in possession of documents related to payer partnership agreements. We also understand that Ms. O'Brien is also a participant in the strategy meetings described above.
- **Ladd Wiley** (Head of Public Policy): Reported board member involved in strategic discussions regarding payer platform market strategy.

### III.      Protective Order and ESI Order

Thank you for proposing revisions to the Protective Order and ESI Order. We are amenable to most of Epic's revisions. However, as discussed in the call, we have issues with a few. We have attached versions of the Orders Epic sent with our additional proposed revisions in redline.

First, regarding the Protective Order, we do not agree to allow one non-attorney employee of each party to access information designated Attorneys' Eyes Only. Such access would defeat the purpose of the AEO provision. We also believe that the disclosure of AEO information to in-house attorneys should be limited to in-house attorneys who are not regularly involved in competitive decision-making. It is standard practice in the Second Circuit to have individual in-house attorneys' access turn on this question. *See, e.g., Travel Leaders Group Holdings, LLC v. Thomas*, 2024 WL 2058436, at *1 (S.D.N.Y. May 8, 2024) ("[C]ourts apply a two-step analysis to determine on an individualized basis whether in-house counsel 'has a part in the type of competitive decision-making that would involve the potential use of confidential information.'"); *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784, at *3 (S.D.N.Y. May 16, 2007) ("Whether it is appropriate for [in-house counsel] to be denied access to [defendant's] 'highly confidential' information depends on whether they are involved in competitive decision-making."); *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 83 (S.D.N.Y. 2015) (similar).

Second, regarding the ESI Order, we do not agree with your proposal to omit documents redacted for privilege from the privilege logs produced by the parties. As you know, Epic's proposal strays from standard practice. If Epic is withholding portions of relevant, responsive documents, we are entitled to a privilege log identifying its basis for withholding those portions. Moreover, as discussed, although Epic proposed the idea of a metadata log for such documents based on a burden objection, any burden at this juncture will be minimal given the scope of discovery at this phase. As stated, we are happy to revisit the issue after this phase of discovery but do not believe there is any current burden that would justify omitting attorney explanations for why information is being withheld.

## IV.     Epic's Responses to Our RFPs

In our call, Epic clarified that its current position is that it will not produce any documents in response to RFP Nos. 9, 16, 17, 18, 19, 20, and 21 from Particle's Second Set of Requests for Production. As discussed on the call, each of these RFPs calls for documents that go to the heart of the topics identified by the Court. Epic stated that it would consider Particle's position on these requests and get back to us. When it does so, we request that Epic supplement its responses and objections to our RFPs to identify the boundaries of what it is producing and what it intends to withhold, as required by Rule 34.

We also discussed several RFPs where Epic stated it will limit its productions to non-custodial searches only. As we stated, we believe this limitation is inappropriate for at least some of the RFPs to which Epic has applied it, particularly before search terms have been discussed. Below is a list identifying the RFPs where we believe this limitation is inappropriate:

- **No. 5 (first set)**: All Documents and Communications (including, but not limited to, any presentations, slide decks, or promotional materials) discussing or referring to the features and capabilities of the Epic Payer Platform (or any related Payer offering).
- **No. 2 (second set)**: All Documents and Communications concerning the definition, meaning, or scope of the terms "payer," "payvider," "health plan," "insurance company," "managed care organization," or any other term You use to describe actual or potential customers of the Epic Payer Platform, including any Documents discussing the differences between such customer types.
- **No. 4 (second set)**: All Documents and Communications discussing or referring to the use of the Epic Payer Platform to provide EHRs to Payers for any purpose or use case related to the improvement of patient health, including any provision of EHRs to Payers to "Improve Clinical Outcomes and Quality Scores," as discussed at https://vendorservices.epic.com/Resources/payerplatformoverview/, for "value-based initiatives" or "transact[ing] care-gap data," as discussed at https://www.epic.com/epic/post/trinity-andanthem- sign-new-value-based-epic-partnership/, to "[f]acilitate a care management strategy," as discussed at https://www.prnewswire.com/news-releases/nations-largest-

member-owned-healthplan-to-launch-epic-platform-to-improve-patient-and-provider-experience-301078435.html, or to "Close[] care gaps with automated clinical and claims data exchange," as discussed at https://www.epicshare.org/share-and-learn/payer-platform-success-stories.

- **No. 5 (second set)**: Documents sufficient to show any processes You undertake, policies you maintain, or features built into Epic Payer Platform that relate to the amount, nature, and scope of records a customer who obtains medical records through Epic Payer Platform receives.
- **No. 7 (second set)**: All Documents and Communications discussing, referring to, or reflecting any competitive analyses (e.g., Strengths, Weaknesses, Opportunities and Threats ("SWOT")) related to the Epic Payer Platform.
- **No. 12 (second set)**: All Documents and Communications concerning Epic Payer Platform's target market, addressable market, serviceable available market (SAM), total addressable market (TAM), or market sizing, including any calculations, estimates, or analyses of market opportunity.
- **No. 15 (second set)**: All Documents and Communications concerning product roadmaps, development strategies, or feature plans for Epic Payer Platform, including any Documents or Communications discussing planned enhancements to compete with Particle or other competitors.

In addition to the above, we believe our RFP Nos. 9, 16, 17, 18, and 20 from our second set, which are among those Epic is currently objecting to in full, should be included in the custodial search and review process.

**V.    Our Responses to Epic's RFPs**

We confirmed that Particle's position is that it will not produce documents responsive to Epic's RFP Nos. 6 or 7. Epic provided its position on these RFPs. As stated, we will consider Epic's statements and report back regarding these RFPs.

Thanks,
Lauren

**Lauren Beck**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

295 Fifth Avenue
New York, NY 10016
212-849-7354 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
laurenbeck@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Madalyn Vaughn <mvaughn@cravath.com>
**Sent:** Thursday, November 20, 2025 1:00 PM
**To:** Steven Becker <stevenbecker@quinnemanuel.com>; Adam Wolfson <adamwolfson@quinnemanuel.com>; Kathryn Bonacorsi <kathrynbonacorsi@quinnemanuel.com>; Lauren Beck <laurenbeck@quinnemanuel.com>; Johnston Hill <johnstonhill@quinnemanuel.com>
**Cc:** Lauren Moskowitz <LMoskowitz@cravath.com>; Michael Addis <maddis@cravath.com>; Lauren Reisig <lreisig@cravath.com>; Nikol Oydanich <noydanich@cravath.com>; Jonathan Sarnoff <jsarnoff@cravath.com>
**Subject:** RE: Particle Health, Inc. v. Epic Systems Corp. -- Epic's R&Os to Particle's RFPs

[EXTERNAL EMAIL from mvaughn@cravath.com]

Counsel:

Epic is available to meet and confer on Monday, November 24 at 11 a.m. ET. Let us know if that works for Particle.

Best,
Madalyn

**Madalyn Vaughn**
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue, New York, NY 10001
T+1-212-474-1328
mvaughn@cravath.com

**From:** Steven Becker <stevenbecker@quinnemanuel.com>
**Sent:** Tuesday, November 18, 2025 9:12 AM
**To:** Madalyn Vaughn <mvaughn@cravath.com>; Adam Wolfson <adamwolfson@quinnemanuel.com>; Kathryn Bonacorsi <kathrynbonacorsi@quinnemanuel.com>; Lauren Beck <laurenbeck@quinnemanuel.com>; Johnston Hill <johnstonhill@quinnemanuel.com>
**Cc:** Lauren Moskowitz <LMoskowitz@cravath.com>; Michael Addis <maddis@cravath.com>; Lauren Reisig <lreisig@cravath.com>; Nikol Oydanich <noydanich@cravath.com>; Jonathan Sarnoff <jsarnoff@cravath.com>
**Subject:** RE: Particle Health, Inc. v. Epic Systems Corp. -- Epic's R&Os to Particle's RFPs

Counsel,

Thank you for your Responses and Objections to Particle's Requests for Production. We would like to schedule a time to meet and confer on Epic's responses and other preliminary discovery matters. Please provide times this week that you are available to meet and confer.

Specifically, we would like to meet and confer on the following topics:

- **Preliminary production of organizational charts and similar documents**: In order to facilitate productive discussion of search terms and custodians, we believe it makes sense for each party to make a preliminary production of organizational charts, job descriptions, and other documents that will be of assistance in identifying search terms and custodian before such discussions take place. We would like to discuss whether Epic is amenable to exchanging such materials on a preliminary basis, and, if so, the timing and content of such productions.

- **RFPs for which Epic has not provided its position**: In response to several of Particle's RFPs, specifically RFP Nos. 9, 16, 17, 18, 19, 20, and 21 from Particle's Second Set of Requests for Production, Epic has not stated whether it will produce responsive documents or if it is withholding responsive documents on the basis of an objection, as required by Rule 34(b)(2) ("An objection must state whether any responsive materials are being withheld on the basis of that objection"). We would like to get clarity on Epic's position as to these RFPs and, to the extent Epic is refusing to produce responsive documents on the basis of an objection, discuss the bases for Epic's refusal. These Requests seek documents which are plainly and unambiguously relevant to the Court-identified topics.

- **Our proposed Protective Order and ESI Protocol**: It has been over a month since we sent you a proposed Protective Order and ESI Protocol. Epic still has yet to provide its position on these documents. These are foundational materials necessary for framing the discovery process, including how the parties will decide upon custodians and search terms. Please provide your position on these documents and your proposed revisions, if any, no later than 24 hours in advance of our meet-and-confer, or by end of day Wednesday, whichever is earlier.

Thank you.

**Steven Becker**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7159 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
stevenbecker@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Madalyn Vaughn <mvaughn@cravath.com>
**Sent:** Wednesday, November 12, 2025 11:44 PM
**To:** Adam Wolfson <adamwolfson@quinnemanuel.com>; Kathryn Bonacorsi <kathrynbonacorsi@quinnemanuel.com>; Lauren Beck <laurenbeck@quinnemanuel.com>; Johnston Hill <johnstonhill@quinnemanuel.com>; Steven Becker <stevenbecker@quinnemanuel.com>
**Cc:** Lauren Moskowitz <LMoskowitz@cravath.com>; Michael Addis <maddis@cravath.com>; Lauren Reisig <lreisig@cravath.com>; Nikol Oydanich <noydanich@cravath.com>; Jonathan Sarnoff <jsarnoff@cravath.com>
**Subject:** Particle Health, Inc. v. Epic Systems Corp. -- Epic's R&Os to Particle's RFPs

[EXTERNAL EMAIL from mvaughn@cravath.com]

Counsel:

Please see attached Epic's Responses and Objections to Particle's First Set of Requests for Production (Nos. 3-6 and 9) and Second Set of Requests for Production.

Best,
Madalyn

**Madalyn Vaughn**
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue, New York, NY 10001
T+1-212-474-1328
mvaughn@cravath.com

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail from the computer on which you received it.

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail from the computer on which you received it.