UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARTICLE HEALTH INC.,<br><br>     *Plaintiff*,<br><br>   v.<br><br>EPIC SYSTEMS CORPORATION<br><br>     *Defendant*. | Case No.: 1:24-cv-07174-NRB |

<u>**STIPULATED [PROPOSED] ORDER REGARDING THE
DISCOVERY OF ELECTRONICALLY STORED INFORMATION**</u>

  Plaintiff Particle Health Inc. and Defendant Epic Systems Corporation (referred to herein individually as a "Party" or collectively as "Parties"), by and through their undersigned counsel, hereby stipulate and agree that the exchange of electronically stored information ("ESI") in the above-captioned case (the "Action") should proceed in accordance with the below protocols. Therefore, it is hereby agreed and ordered as follows concerning ESI in this Action:

**I.  <u>PURPOSE AND SCOPE</u>**

  This Stipulated Order Regarding the Discovery of ESI (the "ESI Order") governs discovery of ESI in this Action and incorporates the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Southern District of New York, the Individual Practices of Judge Naomi Reice Buchwald, and any other applicable orders or rules, and, as set forth herein, supplements those sources of authority.

  Nothing in this ESI Order establishes any agreement as to either the temporal or subject matter scope of discovery in this Action. Nothing in this ESI Order establishes any agreement as

to any search or review protocol, including which sources shall be searched for responsive Documents or ESI, or how a responsive Document is to be identified.

This ESI Order is without prejudice to a Party's right to request additional ESI or information if it can demonstrate that the requested ESI or information is relevant and not unreasonably cumulative of ESI and information already produced. The other Party can object to the scope of the additional ESI or information sought pursuant to the Federal Rules of Civil Procedure 26(b)(1) and applicable caselaw. This ESI Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests or waive any objections to discovery or admissibility, or any other privileges or immunities. Each Party reserves the right to challenge the sufficiency of a Producing Party's production. If the Parties cannot reach agreement, any dispute may be presented to the Court. By allowing a Party the right to reserve its objection, no Party is agreeing, either explicitly or implicitly, that such objections are legitimate.

**II.   DEFINITIONS**

A.   "**Document**" or "**Documents**" shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

B.   "**Electronically Stored Information**" or "**ESI**," shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

C.   "**Extracted Text**" means the text extracted from a Document, and includes all header, footer, and Document body information when available.

D.   "**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents,

2

including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

E.     "**Metadata**" means (i) information associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

F.     "**Native Format**" means the format of ESI in which such ESI was generated or used by the Producing Party in the usual course of business and in its regularly conducted activities.

G.     "**Non-Party**" means any natural person or entity that is not a named party to this Action.

H.     "**OCR File**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

I.     "**Producing Party**" means any Party or Non-Party that produces Documents in this Action.

J.     "**Receiving Party**" means a Party in this Action to whom Documents are produced.

K.     "**Requesting Party**" means the Party that serves a request for the production of Documents and/or ESI.

### III.   PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The Parties agree the following sources of ESI are not reasonably accessible and need not be preserved, collected,

processed, reviewed, and/or produced, absent specific Court order to the contrary: (1) deleted, fragmented, or otherwise compromised data only retrieved by forensics; (2) random access memory, temporary files, or other ephemeral data that are difficult to preserve without disabling the operation of an electronic system; (3) temporary online data such as temporary internet files, history, cache, cookies, and the like; (4) server, system, and/or network logs that are not maintained in the ordinary course; (5) data from systems no longer in use that cannot reasonably be accessed; and (6) backup and/or disaster recovery tapes or files.

The Parties agree that they will cooperate with the express objective of reasonably meeting each Party's discovery requirements under the Federal Rules of Civil Procedure, Local Civil Rules, Orders of this Court, and applicable decisional authority while at the same time reducing discovery burdens on the Parties.

## IV. PRODUCTION FORMAT

The Parties agree to produce Documents and files in the formats and manner described below. If particular Documents or files warrant a different production format, the Parties will cooperate to arrange for the mutually acceptable production of such Documents in that format. The Parties agree not to materially degrade the searchability of Documents as part of the Document production process.

### A. File Transfer Method

Documents will be produced using a secure file transfer protocol or similarly secure method (*e.g.*, encrypted hard drive) ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"); volumes should be numbered consecutively. Each piece of Production Media shall also identify: (1) the Producing Party's name; (2) the production date; and (3) the Bates number range of the materials contained on the Production Media.

B.  **Document Image Format**

Where practicable, and except where native files must be produced as provided below, Documents should be produced as single page Group IV TIFFs. Each page of a Document should be produced as a separate TIFF image in black and white at 300 (or more) dots per inch and named according to a unique corresponding Bates number associated with the Document, with corresponding multi-page text and necessary load files. If a Document consists of more than one page, the unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. Each image must be assigned and branded with a unique Bates number that is sequential within a given Document and across the production sets. Each image must also be branded with the designating Party's confidentiality designation (consistent with the confidentiality designations provided in the Parties' Stipulated Protective Order). Original Document orientation should be maintained where possible (*i.e.*, portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Requesting Party may request that the Producing Party provide a higher quality TIFF image or the native of the original Document. Parties may make reasonable requests for color copies of particular Documents on a Document-by-Document basis where it appears that a Document produced in black and white contains color that is reasonably necessary to the Document's comprehension or use.

C.  **Text and OCR Text Files**

Where practicable, a single multi-page text file will be provided for each Document, and the filename should match its respective TIFF filename (or, in the case of natively produced Documents, its respective native filename). When possible, the text of native files should be extracted directly from the native file. For redacted Documents and scanned Documents, OCR

text files shall be provided instead of extracted text files, and such files will not contain the redacted portions of the Documents.

D. **Database Load Files/Cross-Reference Files**

Productions will include, in addition to single page TIFFs and text files: (a) a delimited data file (.txt, .dat, or .csv) encoded in UTF-8; and (b) an image load file that can be loaded into commercially acceptable production software (*e.g.*, Relativity). Each TIFF in a production must be referenced in the corresponding image load file.

E. **Deduplication**

To the extent that exact duplicate Documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, a Party shall take reasonable steps to produce only a single copy of a responsive Document. Reasonable steps include using automated de-duplication (*i.e.*, de-duplication functionality provided by document review platforms) across custodians and at the family-level (*i.e.*, if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document) by removing documents identified as duplicative based on MD5 or SHA-1 hash values or other industry standard methods to de-duplicate responsive ESI. Documents within a Document family shall be considered duplicative of other Documents only if all Documents within each Document's Document family are duplicative. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of another email that does not include content in the BCC or other blind copy field, even if all remaining content is identical. A Producing Party will make a reasonable effort to identify all agreed-upon custodians who were in possession of any deduplicated Documents through the field AllCustodian. Duplicate custodian information may be provided by a metadata "overlay" and a Producing Party will make reasonable efforts to provide such overlay after each production of Documents. A Producing Party

6

may use other commercially acceptable and reasonable methods to remove duplicate Documents from production provided that method is disclosed to the Requesting Party.

      F.     **System Files/Application Executable Files**

Each Party will use reasonable efforts to filter out common system files and application executable files. Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST). Additional culling of system files based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers. Parties need not produce Documents that are empty or not human-readable, except for good cause shown.

      G.     **Parent-Child and Document Families**

Where feasible, parent-child relationships will be maintained in production. In addition, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, except for: (1) junk files (*e.g.*, thumbnails) and non-user-created content routinely excluded during processing; and (2) Documents that are withheld on the bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege. However, if any member of a produced Document family is withheld on the bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party must instead produce a slipsheet indicating that the Document has been withheld on such basis. For the

7

avoidance of doubt, Document families do not include hyperlinked files (*e.g.*, those that may be present in an email or stand-alone Document). If the Receiving Party believes such a hyperlinked file is responsive, it may request the Producing Party investigate and provide the target Document, if available.

H. **Metadata Fields and Processing**

Each of the Metadata and coding fields set forth in Appendix A that can reasonably be extracted will be produced for each Document, if such Metadata is reasonably available to the Producing Party. Metadata that would reveal the substance underlying redacted portions of Documents need not be produced, but any Metadata withheld for this reason must be replaced with a clear indication of redactions (*e.g.*, "[REDACTED]"), and logged in the same manner as other Document redactions. The Parties will make reasonable efforts to ensure that Metadata fields automatically extracted from the Documents are correct; however, the Parties acknowledge that such Metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the ordinary course of operating electronic systems and/or during the collection process.

I. **Native Files**

Spreadsheets (*e.g.*, Microsoft Excel) and presentations (*e.g.*, Microsoft PowerPoint) will be produced in Native Format unless redacted. If a spreadsheet or presentation needs to be redacted, redactions may be applied: (1) onto the native spreadsheet and produced in native form; or (2) onto an image, or images, of the spreadsheet and/or presentation and produced as a set of TIFF images with OCR text, provided that the Document and its content remains legible and reasonably readable. For all Documents produced in Native Format, a TIFF placeholder indicating that the Document was provided in Native Format shall also be produced in the same way as any other non-native file. Any Party downloading, saving, printing, or distributing the native file for

use in this Action shall append and use the placeholder as a cover sheet to the native file at all times. The Parties will make reasonable efforts to ensure that any spreadsheets or presentations that are produced only as TIFF images are formatted so as to be readable. To the extent that they are produced in this Action, audio, video, and multi-media files will also be produced in Native Format. Native Format may also be requested for other Documents, such as a Microsoft Word Document containing track changes and/or comments, where the Requesting Party can, in good faith, show that the image does not adequately capture the full contents of the Document.

J. **Text Messages, Chats, and Instant Messages**

Text message, chats, and instant messages, to the extent the Parties agree to produce such files if any exist, will be produced such that individual messages are grouped into threads (*i.e.*, continuous conversations between one or more individuals) of 24 hours or more to allow for the context of conversations to be visible. A Party may make a particularized request for the production of additional messages in the thread where additional messages are reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

K. **Email Threading**

Each Party may utilize email threading to remove emails and their attachments where the contents of an email and its attachments are wholly included within another email and its attachments that are not removed. For the sake of clarity, if a Producing Party withholds the most recent email in a thread based on the grounds of privilege, immunity, privacy, or any similar claim, that party must nevertheless produce the most recent, wholly inclusive non-privileged email in the thread.

L. **Embedded Objects**

A Producing Party shall, when reasonably feasible, produce non-image objects that are embedded in other Documents ("Embedded Objects") (*e.g.*, a spreadsheet embedded within a word processing or presentation Document) as separate Documents, which shall be treated as attachments to the Document from which it was extracted. Embedded images (*e.g.*, logos, signature blocks) shall not be produced as separate Documents.

M. **Databases, Structured, Aggregated or Application Data**

For requests in which responsive information is contained in a database (*e.g.*, Microsoft Access) or other structured or aggregated data source or otherwise maintained by an application, a Party may produce relevant information by generating one or more reports used in the ordinary course of business. If the Requesting Party believes that the generation of ordinary course reports is not adequate, the Parties agree to meet and confer to discuss alternative forms of production. If the Parties cannot reach agreement, the dispute may be submitted to the Court for resolution.

N. **Production of Physical Documents**

Documents or records which either were originally generated as or converted into ESI but now only exist in physical hard-copy format, or Documents or records that were originally generated in hard-copy format, shall be converted to single page image files (at least 300DPI BLACK AND WHITE 1-BIT Group IV TIFF or Medium Quality Color JPEG) and produced following the same protocols set forth herein or otherwise agreed to by the Parties. Reasonable efforts are to be employed to scan the pages of physical Documents in the same order in which are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same Document as a single Document; and to treat Documents that clearly appear to be separate Documents as separate Documents. For physical Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and

tabs shall be scanned where reasonably practicable. Original Document orientation (*i.e.*, portrait v. landscape) should be maintained. All such Documents will be produced with an OCR file as outlined above.

    O.    **Replacement Productions**

Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegDoc and EndDoc of the Documents being replaced. Replacement productions shall include load files necessary to link the replacement file to other previously produced Document family members. Where the replacement Document image occupies more pages than the original Document image, the Producing Party shall apply an appropriate numerical suffix to the Bates number of the replacement images (*e.g.*, ABC000123.001 to ABC000123.005). If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production".

**V.**    **SEARCH**

    A.    **General Principles**

The Parties agree to take reasonable and good faith steps to identify, review, and produce Documents responsive to the propounded discovery, the propounded discovery as modified by the Parties' agreements following meet-and-confers, or Court order (as may be applicable). Except as to matters specifically addressed herein, nothing in this ESI Order will narrow or limit the Parties' respective discovery obligations under the Federal Rules of Civil Procedure.

The Parties agree that, prior to undertaking an electronic search for ESI, the Parties shall meet and confer in good faith about methods to search ESI in order to identify ESI that is subject to production and filter out ESI that is not subject to discovery, including the selection of appropriate custodians, custodial and non-custodial sources, date ranges, file types, or any

additional proposed method to cull Documents for review (*e.g.*, search terms, technology-assisted review, etc.).

B.  **Search Terms**

If a Producing Party intends to use search terms to limit its collection, review, or production of ESI, that Producing Party shall disclose to the Requesting Party (1) the universe of ESI to which it proposes to apply search terms (*e.g.*, custodians and date ranges); and (2) the search terms to be applied to that universe of ESI. The Parties shall timely meet and confer regarding any disputes regarding this protocol, which shall include an exchange of reasonable information regarding any search terms in dispute, including the number of Documents returned by such search terms. Because discovery has been divided into phases in this Action, the Parties shall engage in these discussions separately for each phase of discovery.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if Documents captured by search terms are in fact relevant to the Requesting Party's request. Similarly, nothing in this ESI Order may be construed or interpreted as requiring the production of all Documents captured by any search term if any such Document(s) is, in good faith, reasonably deemed not responsive to the Requesting Party's request or is otherwise privileged or protected from discovery.

C.  **Technology Assisted Review**

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from using advanced search, analytical, and retrieval technologies like generative AI, predictive coding, or other technology-assisted review ("TAR") to fulfill its Document production obligations. If a Producing Party elects to use TAR as a means of culling, limiting the volume of information to be reviewed for responsiveness, or otherwise selecting Documents for production,

12

the Producing Party shall promptly notify the Requesting Party of such use and provide a protocol that will include: (1) the TAR software or system to be used; (2) the universe of ESI to which TAR is to be applied (*e.g.*, custodians, date ranges); (3) a description of the method for training the TAR model and identifying responsive ESI; and (4) a description of the method for validating the results of the TAR model.  If the Requesting Party objects to the Producing Party's procedures for using TAR and the Parties are unable to resolve their dispute after meeting and conferring in good faith, any dispute may be presented to the Court, with the burden being on the Requesting Party to explain their objections to the Producing Party's use of TAR.

## VI. PRIVILEGE LOGS

The Parties agree that for Documents withheld from production or redacted on the bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party will provide privilege logs.  For each Document withheld or redacted based upon a claim of privilege, each Party's privilege log must provide the objective Metadata listed below (to the extent it is reasonably available and does not reflect privileged or protected information), the privilege or protection being asserted (*e.g.*, attorney-client; attorney work product; joint defense and/or common interest; etc.), and a description (*e.g.*, "legal advice re patent litigation") adequate to ascertain the basis for the asserted privilege.  Attorneys or their staff must be identified on the log with an asterisk (or similar notation).

Communications with outside counsel or such counsel's work-product that post-date September 23, 2024 (the filing date of Particle's Complaint in this Action) need not be placed in a privilege log.

Objective Metadata includes the following fields, as defined in Appendix A to this ESI Order (to the extent those fields are available for a particular Document):

    a.    FILENAME

      b.      EMAILSUBJECT

      c.      AUTHOR

      d.      TO/FROM/CC/BCC

      e.      DATETIMESENT

      f.      DATETIMERECEIVED

      g.      DATETIMECREATED

      h.      CUSTODIAN

      i.      ALLCUSTODIANS.

Privilege logs shall be produced within 28 days of the substantial completion deadline and thereafter promptly after any Court ordered completion date for Document production. The Producing Party shall provide its privilege log in PDF format, which shall be accompanied by a Microsoft Excel copy of the log.  The PDF copy will be the official log of record.

In the event that a Document family contains multiple Documents and one or more but not all of the Documents in that family are privileged, then the responsive non-privileged Document(s) must be produced.  In that case, the remaining Documents in the family must be logged on the privilege log.  However, Documents that are privileged only by virtue of being attached to a privileged communication may be logged as privileged, but a copy of the otherwise unprivileged Document shall be produced as a stand-alone Document.

To the extent a Document is redacted, rather than withheld in full from Document productions, the following information in the Document may be redacted: (i) information withheld on the basis of attorney-client privilege, work product privilege, joint defense and/or common interest privilege; and/or (ii) information listed in Federal Rule of Civil Procedure 5.2(a) or other sensitive personally identifiable information (*e.g.*, credit card numbers,

account passwords, SSNs) or Protected Health Information.  The redacted Document must state the reason for the redaction in the text of the redaction box (*e.g.*, Privilege, PII).

Where a Producing Party changes, in whole or in part, the redaction or privilege designation of a Document, the updated Document shall be produced with an overlay and load file indicating the Document being replaced.  The Producing Party shall, if reasonably possible, assign the replacement Document the same Bates numbers as the Document being replaced.

Should a Receiving Party be unable to ascertain whether or not a particular entry on the log is privileged, or have reason to believe a particular entry on the log does not reflect privileged information, the Receiving Party may request a meet and confer, and the Parties must meet and confer about such deficiencies prior to seeking any relief from the Court.  If the Parties cannot agree on the appropriateness of a particular entry on the log, the Receiving Party may promptly move the Court for resolution.

## VII. **<u>NON-PARTY DOCUMENTS</u>**

A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this ESI Order with the subpoena and state that the Parties to this Action have requested that Non-Parties produce Documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any Documents obtained pursuant to a Non-Party subpoena to all other Parties within three (3) business days.  Nothing in this ESI Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

## VIII. **<u>DOCUMENTS PROTECTED FROM DISCOVERY</u>**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected Document is not a waiver of privilege or protection from discovery in this Action or in any other federal or state proceeding.  A Producing Party may assert privilege or protection over produced

Documents at any reasonable time by notifying the Receiving Party in writing of the assertion of privilege or protection. After being notified, a Party must promptly return (if requested) or destroy the specified information and any copies it has unless the Party intends to file a motion to compel, in which case the Party may sequester the specified information until the claim is resolved. Any such motion to compel must be made by a Receiving Party within twenty-one (21) days after receiving notification of the claimed privileged and/or protected material from the Producing Party. Each Party may use the content of the Document(s) at issue solely in briefing or argument submitted in connection with the motion to compel, in which case the Receiving Party agrees not to argue that such use constitutes waiver of the claimed privilege or work product protection. Nothing in this ESI Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

## IX.   MODIFICATION

Nothing herein shall preclude any Party from seeking in writing to amend this ESI Order for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the ESI Order until it has met and conferred with the other Party in good faith. Nor shall anything herein preclude the Parties from modifying any practice or procedure set forth herein by mutual agreement.

## X.   MISCELLANEOUS

1.   If in-house or outside counsel for the Producing Party learns that after the duty to preserve arose, responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the Party's Document retention policies, the Producing Party shall explain

where and when the ESI was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

2. Nothing in this ESI Order shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to the production, discoverability, or confidentiality of ESI, hard copy files, or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth, or relevance of Document requests related to ESI, hard copy files, or any other discovery materials, or relating to the production of ESI or hard copy files in a form specified in this ESI Order.

**SO ORDERED.**

Dated: December 19, 2025

_____
Honorable Naomi Reice Buchwald
United States District Judge

17

## Appendix A: Required Metadata Fields

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first Document in a family |
| ENDATTACH | Last production Bates number of the last Document in a family |
| PRODUCTIONVOLUME | Name of the production volume |
| CUSTODIAN | Individual from whom the Document originated |
| ALLCUSTODIAN(S) | Individual(s) whose Documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to Document |
| HASHVALUE | MD5 hash value of Document |
| AUTHOR | Any value populated in the Author field of the Document properties (Edoc or attachment only) |
| DATETIMECREATED | Date and time the Document was created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment only) |
| DATETIMEMODIFIED | Date and time when Document was last modified according to filesystem information (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |

18

| Field Name | Field Description |
|---|---|
| IMPORTANCE | Importance Property of email (*e.g.*, Normal, Low, High) |
| INSTANT MESSAGE TYPE | The type of electronic message (*e.g.*, Text Message, Slack, Microsoft Teams, Instant Bloomberg) |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM:SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM:SS) |
| FILESIZE | The original file size of the produced Document |
| FILEPATH | Original file path of the location where the item was located at the time of collection |
| REDACTIONS | Indicate Yes if Document redacted |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for Document |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. (Microsoft application Documents only) |
| EMAILSUBJECT | Subject line of email |
| TIMEZONEUSED | Time zone used to standardize date/time during Document processing |
| FILENAME | File name of the edoc or email |
| TITLE | Any value populated in the Title field of the Document properties |
| SUBJECT | Any value populated in the Subject field of the Document properties |
| DOCEXT | File extension of the Document |

19