# CRAVATH

Lauren A. Moskowitz
lmoskowitz@cravath.com
T+1-212-474-1648
New York

December 22, 2025

<u>Particle Health Inc. v. Epic Systems Corporation</u>, No. 24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

I write on behalf of Epic Systems Corporation ("Epic") in opposition to Plaintiff Particle Health Inc.'s ("Particle") letter motion to compel production of documents. (Dkt. No. 57.) This Court has repeatedly articulated its "explicit directive" for Phase I discovery to be "'focused', 'narrow', and 'limited'" (Dkt. No. 47 at 1), conducted on an "expeditious schedule", and cabined to three specific questions of fact (the "Phase I Topics") (Dkt. No. 42 at 30-31, 69; *see also* Dkt. No. 54).[1] And Particle has repeatedly tried to evade that directive. Here we are again.

Epic's initial position was that documents relevant to the Phase I Topics were not the type of documents that needed to be found through custodial email collections and that it would be most efficient and expeditious for the parties to produce documents stored in centrally located repositories. Particle insisted on custodial productions, and Epic agreed in an effort to avoid burdening the Court with a dispute. Then Particle repeatedly asked for more and more custodians. Again, Epic repeatedly agreed as a means to avoid burdening the Court with a dispute. (Dkt. No. 57-4 at 1; Ex. A at 3; Dkt. No. 57-6 at 2.) Then, Particle demanded that Epic provide four additional custodians, including Epic's CEO, along with a laundry list of patently unreasonable questions (reproduced by Particle in its letter motion (Dkt. No. 57 at 3)) about those individuals and additional questions about Epic's investigation into who the appropriate custodians should be. (Dkt. No. 57-3 at 2.) The following day, Particle also lobbed in an eleventh-hour demand to expand the date range by an additional year. (*Id.* at 1.)

Remarkably, last Thursday, December 18, 2025, after already filing this motion to compel, Particle served nine equally unreasonable interrogatories. (Ex. B.) Notwithstanding that the Court has repeatedly emphasized the limited and focused nature of Phase I discovery, these requests are enormously broad in their scope and seek discovery on discovery. Particle asks Epic to name and describe *all* individuals "known to Epic", not even limited to employees, with *any* information about the Phase I Topics (*id.* at 6 (Interrogatory No. 1)); to describe *all* categories of documents and communications that concern the Phase I Topics (*id.* (Interrogatory No. 2); and to describe *all* categories of documents and communications relating to any meeting at which the Phase I Topics were discussed in any way (*id.* (Interrogatory No. 3)). Similarly, for each of the additional custodians Particle requested, it now demands that

---

[1] The Phase I topics are "(i) the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (*i.e.*, retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs". (Dkt. No. 42 at 31.)

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

Cravath, Swaine & Moore llp

Epic state whether each had "possession, custody, or control of any Documents or Communications concerning any of the Phase I Topics", and, if so, to provide descriptions and locations for those documents. (*Id.* at 7-8 (Interrogatory Nos. 5-8).) This is a fishing expedition, not limited discovery.

The parties' agreed-upon search terms hit upon approximately 58,000 (deduplicated) Epic custodial documents spanning a nearly four-year period from six custodians, in addition to documents from non-custodial sources. That is more than appropriate to answer the three narrow questions posed by the Phase I Topics. Particle's motion is its second-most recent attempt (in light of the interrogatories) to evade the limitations placed by this Court on Phase I discovery. Its motion should be denied because (1) Particle cannot meet its burden of showing why searching the files of four additional custodians and an additional year of documents would yield non-cumulative relevant documents to address the Phase I Topics, and (2) the burden and cost of such a search outweighs any marginal document benefit that those cumulative or irrelevant searches would yield.

## I.  Particle's Demands Are Unlikely To Yield Non-Cumulative Relevant Documents.

### A.  Custodians.

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(i), "the court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative". Particle's motion should be denied because Particle has not met its burden to show that any of the four additional custodians Particle seeks "is likely to have non-cumulative relevant documents" to the narrow Phase I Topics. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2023 WL 2871090, at *9 (S.D.N.Y. Apr. 10, 2023) (Buchwald, J.); *see also, e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013). Moreover, courts in this District have recognized that "the responding party is entitled to select the custodians most likely to possess responsive information", and that courts should not compel custodians unless the responsive party's "choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient". *Mortg. Resol. Serv., LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

Epic has already agreed to review and produce responsive documents from six custodians. The two custodians Epic first proposed are a software developer and sales executive with responsibility for Epic Payer Platform, who plainly are not "the least relevant" custodians, as Particle claims without basis. (Dkt. No. 57 at 4.)

- Jim McDermott serves as the lead software developer for Epic Payer Platform and has been a key figure in its development since its inception. (Dkt. No. 57-4 at 1; Ex. A at 1-2.) He is likely to have documents regarding all three of the Phase I Topics. Particle itself concedes that Mr. McDermott's role as lead software developer makes him relevant to the second Phase I Topic. (Dkt. No. 57-5 at 2.) Furthermore, as Epic has already explained to Particle, his role involves both engaging directly with Epic Payer Platform's customers, relevant to the first Phase I Topic, and participating in executive-level strategy discussions regarding Epic Payer Platform and its market positioning, relevant to the third Phase I Topic. (Ex. A at 2.)

- Patrick Schenk serves as an implementation executive and sales executive for Epic Payer Platform and is responsible for engaging with Epic's payer customers about Epic Payer Platform. (Dkt. No. 57-4 at 1; Ex. A at 1.) Mr. Schenk is likely to have documents regarding

at least the first and third of the Phase I Topics.  Given his responsibilities related to both
implementation and sales for Epic Payer Platform, Mr. Schenk is knowledgeable about the
first Phase I Topic.  (Ex. A at 1.)  Particle itself agrees.  (Dkt. No. 57-5 at 2.)  And
Mr. Schenk's responsibilities in those roles, as well as his participation in executive-level
strategy discussions regarding Epic Payer Platform, requires him to be familiar with Epic
Payer Platform's competitors, the third Phase I Topic.  (Ex. A at 1.)

Despite the fact that the files of Mr. McDermott and Mr. Schenk, in addition to the non-
custodial documents Epic is searching, are more than sufficient to respond to the Phase I Topics,
Epic agreed to review the documents of four more custodians whom Particle specifically
requested.

- Derek De Young was product lead for Epic Payer Platform through October 2025.  (Dkt.
  No. 57-4 at 1.)  In addition to product development, which Particle concedes is relevant to
  the second Phase I Topic (Dkt. No. 57-5 at 2), Mr. De Young communicated with Epic Payer
  Platform customers, had responsibility for those relationships, and participated in market-
  based strategy discussions (Ex. A at 2-3).  Thus, Mr. De Young is likely to have documents
  regarding all three of the Phase I Topics.

- Alan Hutchison is a senior Epic employee who focuses, with respect to Epic Payer Platform,
  on product strategy and market positioning.  Particle itself concedes that Mr. Hutchison is
  therefore "highly relevant" to the first and third of the Phase I Topics.  (Dkt. No. 57-5 at 3.)
  Furthermore, given his role with respect to strategy and market positioning for Epic Payer
  Platform, Mr. Hutchison is also likely to have documents responsive to the product's
  functionality, the second Phase I Topic.

- Ryan Bohochik provides sales overviews and product demonstrations of Epic Payer Platform
  to current and prospective customers.  (Ex. A at 3.)  Mr. Bohochik is likely to have
  documents regarding at least the first and second of the Phase I Topics, as Particle concedes
  (Dkt. No. 57-5 at 4).

- Karsten Smith has similar responsibilities with respect to Epic Payer Platform as
  Mr. Bohochik.  (Ex. A at 3.)  And, as Particle concedes (Dkt. No. 57-5 at 4), Mr. Smith is
  likely to have documents regarding at least the first and second of the Phase I Topics.

Of course, Particle cannot suggest that these four custodians are unlikely to have documents
relevant to the Phase I Topics because Particle itself requested them.  Nevertheless, Particle now
demands four more custodians, in addition to the six custodians Epic has agreed to search who
are the most likely individuals to have relevant documents.  Particle fails to meet its burden to
support their inclusion as custodians here.

Judy Faulkner.  As CEO, Ms. Faulkner is not directly responsible for Epic Payer Platform and, as
a final decision-maker over the entire company, does not act in a vacuum.  Even in plenary
discovery, courts deny requests to add "high-level executives" as custodians because they are
"unlikely to possess unique information" about business activities from which they are more
"removed" than their subordinates.  *In re LIBOR*, 2023 WL 2871090, at *10; *accord Allianz
Glob. Inv. GmbH v. Bank of Am. Corp.*, 2021 WL 5299238, at *1 (S.D.N.Y. Oct. 18, 2021)
(denying request to add senior executives as custodians because they "relied on others—
including existing custodians and less senior proposed supplementary custodians" such that
"Defendants will be able to obtain relevant internal communications . . . via the counterparties
to those communications, who are the persons actually in possession of relevant knowledge").

As Epic has told Particle on multiple occasions, to the extent Ms. Faulkner has any relevant documents, they would likely be cumulative of those in Epic's other custodians' files.

Particle's argument that Ms. Faulkner, Epic's CEO, should be a custodian because she is likely to have "relevant" documents (Dkt. No. 57 at 3) is inapposite. Instead, Particle must show that Ms. Faulkner "is likely to have *non-cumulative* relevant documents". *In re LIBOR*, 2023 WL 2871090, at *9 (emphasis added). Particle has not done so and has not even made a single argument to that effect.[2] That failure alone is dispositive.

Even apart from its failure to show that Ms. Faulkner would be a non-cumulative custodian, Particle has failed to show that she is "a highly relevant custodian at this phase of discovery" as it claims. (Dkt. No 57 at 7.) Particle asserts that Ms. Faulkner had extensive involvement in Epic Payer Platform's development and marketing. (*Id.* at 6.) But Particle fails entirely to support that assertion. The three articles Particle cites merely quote Ms. Faulkner promoting the Epic Payer Platform product while also discussing other products offered by Epic that are entirely separate, like the Cosmos research database, which does not do anything to support her relevance to the Phase I Topics. (*Id.* at 6-7.) And the fact a notice provision in a contract (for yet another product not at issue here) directs that correspondence be sent to Ms. Faulkner's attention as CEO (Dkt No. 57 at 7-8; Dkt. No. 57-3 at 5; Dkt. No. 57-6 at 3) is also irrelevant, particularly given that Epic's notice provision in the contract Particle cites requires that a copy of such correspondence also be sent to counsel at Epic.[3]

Furthermore, the record refutes Particle's accusations that Epic answered questions about meetings attended by Ms. Faulkner with "shifting responses" that were "inconsistent with counsel's good faith obligations in discovery under Rule 26". (Dkt. No. 57 at 7.) Particle first mentioned supposed "weekly strategy meetings held on Fridays" in its Second Set of Requests for Production. (Dkt. No. 57-2 at 19.) Epic objected that this request "assumes facts that are not accurate or the occurrence of events that did not take place", since Epic had found no evidence of weekly strategy meetings held on Fridays, let alone weekly meetings that include the list of attendees Particle identified. (*Id.*) Particle continued to mention strategy meetings in its negotiations over the parties' search protocols (*e.g.*, Dkt. No. 57-3 at 15-16), eventually clarifying that the meetings in question are called "execution meetings" (Dkt. No. 57-5 at 3), and asking Epic to provide information on any such meetings attended by Ms. Faulkner "where competition with Particle's payer platform was discussed" (Dkt. No. 57-3 at 5). Having received this clarification, Epic proceeded to conduct a reasonable investigation of the (non-weekly) execution meetings. That investigation did not identify any such meeting where competition with Particle's (purported) payer platform was discussed—or, frankly, any mention of Particle at all—and Epic expressly communicated that to Particle. (Dkt. No. 57-6 at 3.) Unhappy with Epic's answer, Particle then asked an entirely different question, demanding whether "*any*" meeting *ever* attended by Ms. Faulkner involved discussion of Particle's product "in relation to" Epic Payer Platform. (Dkt. No. 57-3 at 2.) No reasonable investigation could ever answer a

---

[2] For example, while Particle recites caselaw highlighting the importance of "ordinary course documents" to market definition (Dkt. No. 57 at 7), that term plainly encompasses the tens of thousands of custodial and non-custodial documents that Epic has already agreed to review. Particle does not even attempt to explain how that caselaw shows that the custodial documents of *Ms. Faulkner* in particular are required.

[3] Contrary to Particle's claim that "public allegations" of a suit recently filed against Epic by the State of Texas are "consistent" with "Ms. Faulkner's intimate involvement in the minutiae of Epic's day-to-day business" (Dkt. No. 57 at 7-8), the publicly filed complaint does not support that assertion. In any event, a pleading filed by another plaintiff is not evidence of anything.

question like that.  Epic's responses have not shifted; Particle's different questions have, unsurprisingly, received different answers.

Finally, Particle's argument that Ms. Faulkner should serve as a custodian because Particle has included its own current and former CEOs as custodians is baseless.  *First*, Epic did not request that Particle search the files of its CEOs; Particle indicated in its Rule 26 initial disclosures that Particle intends to rely in Phase I on the documents of its CEOs, and it was Particle who proposed its CEOs as custodians.  *Second*, by its own description, Particle is "a relatively small startup company" (Dkt. No. 57-5 at 1), in contrast with Epic, which Particle alleges to be a "massive" company (Compl. ¶ 2).  It is unsurprising that Particle's senior leadership, unlike Epic's, is more likely to have non-cumulative relevant documents.[4]

<u>Seth Howard</u>.  Particle claims that Mr. Howard "has had unique involvement in Epic's strategic decision-making regarding specific features of [Epic Payer Platform] and how those features relate to [its] broader competitive positioning".  (Dkt. No. 57 at 8.)  Particle cites an article that purports to quote Mr. Howard describing a session he attended that, based on Epic's reasonable investigation, was run not by Mr. Howard but by Mr. Hutchison, Mr. McDermott, and Mr. De Young, all of whose custodial files Epic has already agreed to review.  And without any cited support, Particle states that it "understands that Mr. Howard had regular communications with third parties regarding issues with [Epic Payer Platform's] software and functionality".  (*Id.*)  Epic already informed Particle that based on its reasonable investigation, such an understanding is incorrect.  (Dkt. No. 57-6 at 4.)

Epic has already agreed to review documents from multiple custodians who are involved in a variety of functions related to Epic Payer Platform, including research and development, sales, and strategy.  Any involvement with Epic Payer Platform that Mr. Howard might have had as Vice President of Research and Development would likely involve the custodians who are specifically responsible for research and development for Epic Payer Platform, namely Mr. McDermott and Mr. De Young, who are agreed-upon custodians.  Particle fails to show that Mr. Howard is likely to have non-cumulative relevant documents regarding the narrow Phase I Topics.

<u>Rob Klootwyk</u>.  Particle's only asserted basis for adding Rob Klootwyk as a custodian is that he "was the primary Epic employee with whom Particle dealt during the 2024 Carequality dispute".  (Dkt. No. 57 at 9.)  But the Carequality dispute, related to the protection of sensitive patient health information, is irrelevant to the Phase I Topics, as Particle itself concedes.  (*Id.*)  Indeed, as Epic has already explained to Particle, Mr. Klootwyk has no role with respect to Epic Payer Platform and does not work on payer products.  (Ex. A at 3.)  Particle has offered no basis to show why Mr. Klootwyk is likely to have non-cumulative relevant documents regarding the narrow Phase I Topics.

<u>Katie O'Brien</u>.  Particle claims, without any cited support, that it understands Katie O'Brien, who formerly worked for Epic in procurement, will be in possession of documents relevant to the first and third Phase I Topics and that Ms. O'Brien was purportedly "known as Ms. Faulkner's right-hand person, including for major decisions regarding" Epic Payer Platform.  (Dkt. No. 57

---

[4] Nor does any supposed disparity between the number of custodians Particle is searching justify additional Epic custodians.  Particle itself initially proposed all but two of its custodians, and Epic understands that it is Particle's personnel changes that prompted Particle in multiple instances to propose two custodians to capture documents corresponding to a single job function.  Regardless, the relevant inquiry is whether custodians have non-cumulative relevant documents, not whether there is precise parity in the number of custodians.

at 9.)  Epic has already explained to Particle that, based on its reasonable investigation, Ms. O'Brien did not negotiate agreements with payers related to Epic Payer Platform, as Particle had claimed.  (Dkt. No. 57-3 at 5; Dkt. No. 57-6 at 3; Ex. A at 3.)  Particle has offered no basis to show why Ms. O'Brien is likely to have non-cumulative relevant documents regarding the narrow Phase I Topics.

*        *        *

Particle fails to argue, let alone meet its burden to show, that these four additional custodians are likely to have non-cumulative relevant documents concerning the Phase I Topics.  *In re LIBOR*, 2023 WL 2871090, at *9.  Particle's failure is unsurprising given that the Phase I Topics are narrow and discovery into them is limited; the six custodians Epic has already agreed to are more than sufficient for Phase I discovery, and Particle's motion should be denied.[5]

### B.  Documents from 2021

Particle likewise fails to carry its burden to demonstrate the non-cumulative relevance of discovery back to January 1, 2021 as to the Phase I Topics.  (Dkt. No. 47 at 1.)

As an initial matter, this issue is untimely.  Particle did not raise any issue regarding the time period of Epic's review until December 12, 2025 (Dkt. No. 57-3 at 1)—four days after the Court-ordered deadline to reach impasse on the parties' search protocol and nearly two weeks after the parties first exchanged search parameters and hit reports, which clearly stated that Epic was searching its documents from January 1, 2022 onward.  Particle thus waived any argument regarding the time period of Epic's search.[6]

In any event, Particle cannot meet its burden on the merits.  Particle's only justification for seeking an additional year of documents is that documents from 2021 "are critical to understanding how Epic marketed its product early on".  (Dkt. No. 57 at 6.)  But Particle does not explain why such an understanding is relevant to the Phase I Topics.  Indeed, it is hard to fathom why documents from that time period are relevant at all given that Particle does not even claim to have entered the alleged market until 2023 (*see* Compl. ¶ 9), more than a year after the start date for Epic's document production.

## II.  The Burden and Cost of Particle's Demands Outweigh Any Utility.

Pursuant to Federal Rule of Civil Procedure 26(b)(1) and (2)(C)(iii), "the court must limit the frequency or extent of discovery . . . if it determines", among other things, that "the burden or expense of the proposed discovery outweighs its likely benefit".  Given that Particle has failed to meet its burden to show that its demand for four additional custodians and a year of discovery is likely to yield non-cumulative relevant documents, the Court need not "balance its utility against its cost".  *In re LIBOR*, 2023 WL 2871090, at *9.

---

[5] Contrary to Particle's suggestion, Epic is not planning to withhold, from the documents it has agreed to review, any non-privileged documents responsive to Particle's document requests regarding the Phase I Topics (Dkt. No. 57 at 4), a point Epic has already made plain to Particle (Dkt. No. 57-6 at 4-5; Ex. C at 1-2).

[6] Contrary to Particle's suggestion otherwise, the parties agreed to continue to work together in good faith in the days after Monday, December 8, 2025 to attempt to resolve disputes as to the issues that the parties had raised, not to raise entirely new, non-previewed issues on the eve of the motion to compel deadline.  (*See* Dkt. No. 57-7 at 1.)

However, even if Particle had met its initial burden, the Court should deny Particle's motion for the additional reason that the ordered scope of discovery in Phase I does not justify the additional burden and cost Particle would have Epic undertake.  The demand for an additional four custodians and an additional year of discovery, on top of (i) the nearly 58,000 (deduplicated) Epic documents hit upon by the parties' agreed-upon search terms across six custodians for a nearly four-year period and (ii) non-custodial documents, is overly burdensome, given the "'focused', 'narrow', and 'limited'" (Dkt. No. 47 at 1) scope of discovery the Court ordered in Phase I.

Respectfully submitted,

*/s/ Lauren A. Moskowitz*

Lauren A. Moskowitz

The Honorable Naomi Reice Buchwald
    United States Courthouse
        500 Pearl St.
            New York, NY 10007-1312

Copies To:

All Counsel of Record

BY ECF