# Exhibit A

# CRAVATH

Michael P. Addis
maddis@cravath.com
T+1-212-474-1956
New York

December 8, 2025

Re: <u>Particle Health Inc. v. Epic Systems Corporation</u>, No. 24-cv-07174-NRB (S.D.N.Y.)

Counsel:

I write on behalf of Epic Systems Corporation ("Epic") in response to Particle Health Inc.'s ("Particle") December 4, 2025 letter. Epic does not undertake to correct every mischaracterization in Particle's December 4, 2025 letter other than to say that Epic disagrees with a number of Particle's representations and positions.

## I.    Custodians

### A.    Epic Custodians

As explained in Epic's December 1, 2025 letter, Epic's proposed custodians—Patrick Schenk, Jim McDermott, and now Derek De Young, added at Particle's request—along with the non-custodial searches Epic is conducting, are appropriate and sufficient to capture documents responsive to each of the three narrow topics at issue in Phase I (the "Phase I Topics").[1] (*See* 12/1/2025 Letter from M. Addis at 1.)

Epic completely rejects Particle's suggestion that Epic's proposed custodians reflect a "seemingly arbitrary selection of custodians". (12/4/2025 Letter from A. Wolfson at 2.)[2] Epic performed an investigation and identified the two most relevant individuals who would have documents responsive to the Phase I Topics. With respect to Patrick Schenk, Particle concedes that Mr. Schenk's role is relevant to the first of the Phase I Topics, but conclusorily alleges that in his sales role Mr. Schenk likely would not "have been involved in broader market-position strategy or have communications regarding the existence of alternative products as relevant to the third of the Phase I Topics". (*Id.*) That is wrong. As an implementation and sales executive, Mr. Schenk is most likely to have documents regarding the existence of other products available to suit payer needs. In addition, Mr. Schenk is relevant to the third topic by Particle's own standard, as he is involved in executive-level strategy discussions regarding Epic Payer Platform. With respect to Jim McDermott, Particle concedes that Mr. McDermott's role is relevant to the

---

[1] As Particle knows, the Phase I Topics are "(i) the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (i.e., retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs". (Dkt. No. 42 at 31.)

[2] Particle's concerns appear to come from its undue reliance on the job titles for the Epic custodians, but job titles for Epic employees cannot be used to define the scope of their roles. *See generally* https://medcitynews.com/2024/12/judy-faulkner-shares-3-strategies-that-fuel-epics-success/?utm_source=chatgpt.com (explaining that Epic does not "use titles much at all in the company" and titles shared externally are often "made-up title[s]").

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

second of the Phase I Topics, but conclusorily alleges that Particle would not expect Mr. McDermott to be relevant as to the first and third of the Phase I Topics because he is allegedly in a "technical role" that likely would not "result in him having communications with EPP's payer or payvider customers nor communications regarding higher level discussions regarding market-position strategy and alternative products". (*Id.*)  Again, that is wrong. Mr. McDermott is relevant to both the first and third of the Phase I Topics by Particle's own standard, as he has been a key figure in the development of Epic Payer Platform since its inception (serving as *the* lead software developer of Epic Payer Platform, not merely *a* developer as Particle describes) and would have been involved in executive-level strategy discussions regarding Epic Payer Platform.  At Epic, "technical roles" are not siloed from customers but instead are expected to engage directly with customers to ensure that Epic software is developed in a way to best suit customer needs.

Based on *Particle's request*, Epic investigated and then agreed to add Derek De Young as a custodian.  Particle now backtracks and claims that Mr. De Young's "role in R&D similarly leaves gaps in at least the first and third of the Phase I Topics". (*Id.*)  That is incorrect.  In his role as the Epic Payer Platform product lead through October 2025, Mr. De Young had responsibility for customer relationships and communicated with Epic Payer Platform customers.  According to Particle's own standard, that makes him relevant to the first of the Phase I Topics. (*Id.* (explaining Particle's view that an individual has relevance to the first of the Phase I Topics if he has "communications with EPP's payer or payvider customers").)  Epic also expects that he would have been involved in market-based strategy discussions that would have taken place while he held his role, which addresses the third of the Phase I Topics.  (*Id.*)

Document discovery in Phase I is supposed to be limited, tailored, and expedited.  The Phase I Topics boil down to what Epic's Payer Platform product does and what type of payer customer it serves, the same for Particle's product, and what other products and services are out there that serve those customers.  Particle seems intent on trying to turn this into a full-blown fishing expedition not only far beyond the Phase I Topics but also beyond any of the issues that remain in this case.

Particle's explanation of the purported relevance of many of these individuals makes that clear.  For example, under Particle's logic, Epic should be required to add Epic board members as full-blown custodians because Particle posits that Epic's Payer Platform must have been discussed at the board level. (*See* 12/4/2025 Letter from A. Wolfson at 3-4.)  Particle similarly seems to think that any individuals who attend any form of "strategic discussions" at Epic should be added as custodians because Particle believes Particle may have been discussed at one or more of those meetings. (*Id.*)  That is clearly not the standard for when someone should be added as a custodian ever, let alone in a narrow Phase I discovery situation like here.  And the notion that Epic's CEO is appropriate to add as a custodian to get at these Phase I Topics is nonsensical, regardless of whether she has ever been present at a meeting during which Particle's name may have been mentioned.[3]  Nor does "ultimate decision-making authority"—a hallmark of the CEO role at every company—make the CEO or other executives or board members relevant custodians, especially in a situation like this.  Epic does not believe that Epic's

---

[3] As Particle itself acknowledges, the CEOs of Particle and Epic are differently situated:  Particle is "a relatively small startup company" and its "highest level executives . . . have communicated regarding market position and alternative products", whereas Epic is "a large and sprawling company with 1000s of employees".  (12/4/2025 Letter from A. Wolfson at 1.)

CEO and certain other custodians Particle is pressing are being raised by Particle in good faith, and they will not be added as custodians, as discussed further below.

Nevertheless, in the interest of compromise and to resolve all disputes on this issue—but this will be the final addition and only if the parties have final agreement—Epic will agree to add Alan Hutchison as a general Phase I custodian and will agree to conduct certain targeted searches across the custodial documents of Ryan Bohochik and Karsten Smith. To be clear, Mr. Bohochik's and Mr. Smith's roles related to Epic Payer Platform are to provide sales overviews and demonstrations of Epic Payer Platform to current and prospective customers; they do not "operate as heads of product running EPP" as Particle asserts. (12/4/2025 Letter from A. Wolfson at 4.) As such, Epic will conduct targeted searches from their custodial files for materials from Epic Payer Platform sales overview presentations and demonstrations relevant to Phase I.

As to the remaining individuals—Judy Faulkner, Seth Howard, Dave Fuhrmann, Rob Klootwyk, Katie O'Brien, and Ladd Wiley—Epic does not agree to add them as custodians. But to be clear, contrary to Particle's assertion and notwithstanding Particle's facially baseless explanations for these additional custodians, Epic independently investigated each of these individuals' roles with respect to Epic Payer Platform (if any) to determine whether they were likely to have any non-cumulative documents relevant to the Phase I Topics that would make it appropriate and proportionate to add them as document custodians in Phase I. The answer is no. As discussed above, presence at a theoretic meeting at which Particle may have been mentioned does not a custodian make. That point will not be repeated below.

*First*, Particle seems to misunderstand what interoperability refers to and what that means at Epic for those in roles relating to interoperability. Interoperability at Epic first and foremost refers to Care Everywhere, but also encompasses a broad range of Epic products and services, including Epic's role as an implementer in networks like Carequality and TEFCA, API connections made available on open.epic, among others. Mr. Klootwyk's role is focused on Carequality and TEFCA, while Mr. Fuhrmann's role is focused on Care Everywhere. Particle fails to provide any basis to suspect that Mr. Klootwyk's and Mr. Fuhrmann's documents would have unique Epic Payer Platform information relevant to Phase I or otherwise. Particle emphasizes Mr. Fuhrmann's involvement "in Epic's interoperability products since 2008" (12/4/2025 Letter from A. Wolfson at 3), but Particle fails to provide any explanation for why (if at all) such historical knowledge is relevant for this litigation, including in particular for Phase I, when Epic Payer Platform was not released until more than a decade later and Particle alleges to have only entered the purported market in 2023. (*See* Compl. ¶ 9.) To the extent Mr. Klootwyk and Mr. Fuhrmann have any relevant documents regarding Epic Payer Platform functionalities, the content of such documents likely would be duplicative and/or cumulative of documents contained in the files of existing Epic custodians, including those who Particle has conceded are relevant to the second Phase I Topic (*e.g.*, Mr. McDermott and Mr. De Young). (12/4/2025 Letter from A. Wolfson at 2.)

*Second*, with respect to Katie O'Brien, Ms. O'Brien's role in procurement relates to third-party sublicensing, third-party contract facilitation assistance, and procurement for internal development projects, none of which is relevant to the Phase I Topics (or this case more broadly). Particle provides no basis to suspect that Ms. O'Brien possesses unique Epic Payer Platform information (or any Epic Payer Platform information at all) that is relevant to the narrow Phase I Topics. With respect to Particle's reference to "payer partnership agreements" (*id.* at 4), documents concerning the contracting and sales process with Epic Payer Platform customers (to the extent such documents are relevant) would be in the files of existing custodians, including Mr. Schenk and Mr. Hutchison.

*Third*, as already addressed above, Epic strongly disputes that its CEO, Judy Faulkner, or other executives or board members are relevant to Particle's claims solely because they possess certain decision-making authority or may have attended a meeting where Particle may (or may not) have been mentioned. With respect to Ms. Faulkner, as made clear above, her documents are plainly outside the limited scope of Phase I. As to Seth Howard, who oversees R&D across all products at Epic, his role also extends far beyond Epic's suite of products for payers or Epic Payer Platform in particular. While Mr. Howard unsurprisingly has made public statements about numerous products, including payer products, as Particle points out (*see* 12/4/2025 Letter from A. Wolfson at 3), such statements provide no basis to justify adding Mr. Howard as a custodian for these narrow Phase I Topics, especially given the inclusion of Mr. McDermott, the lead software developer for Epic Payer Platform, and Mr. De Young, who served as the R&D Product Lead for Epic Payer Platform through October 2025, as custodians. Ladd Wiley leads the Public Policy team at Epic and is a member of Epic's Board of Directors. Mr. Wiley has no day-to-day business role or responsibilities with respect to Epic Payer Platform. As discussed above, his membership on the Board does not make him an appropriate document custodian here.

### B.    Particle Custodians

Epic is awaiting confirmation from Particle whether it will agree to add Garrett Montague (who Particle identified in its initial disclosures as likely to have discoverable information about each of the Phase I Topics) and Steven Swank as custodians, who Epic identified as additional individuals who likely have highly relevant, noncumulative documents related to the Phase I Topics. (*See* 12/3/2025 Email from M. Vaughn.) While Particle attempts to make this a numbers game by emphasizing that it proposed six custodians while Epic had agreed to three custodians (*see* 12/4/2025 Letter from A. Wolfson at 1)—a largely moot argument now that Epic has agreed to search the files of six custodians to the extent it will resolve all disputes as described above—Particle neglects to acknowledge that part of the reason it was necessary for Particle to propose more custodians from the outset is that most of its custodians only worked at Particle for a limited time period. For example, Particle proposed both its former and current CEOs as custodians because its current CEO, Jason Prestinario, took over from former CEO Troy Bannister in the middle of the relevant time period in May 2023. And while Particle proposed Jean Barmash, its current Chief Technical Officer, as a custodian, the reason that Epic has requested that Particle add Garrett Montague as a custodian is in large part because Mr. Barmash did not start at Particle until February 2024 and Mr. Montague was in a relevant technical role prior to that time.

## II.    Search Protocol and Search Terms

Particle asked Epic to investigate and confirm both (1) whether search terms relating to wins and losses with respect to Epic Payer Platform are adequately capturing any responsive documents in Epic custodial files given the low hit count, and (2) whether Epic's "searches and collections include Teams data". (*See* 12/4/2025 Letter from A. Wolfson at 5.)

Epic is continuing to modify the search terms that Particle has proposed to ensure the terms are constructed to identify documents that are relevant and proportional to the needs of Phase I to the extent such documents exist. Moreover, Epic is also conducting non-custodial searches to collect targeted information such as any reports regarding so-called "wins" and "losses". With respect to Microsoft Teams data, this is the first time that Particle has raised such data, and Particle provides no basis for why such additional searches would be proportionate here given the narrow focus and scope of Phase I discovery.

### III.    Particle's Responses to Epic's RFPs

Epic is still awaiting confirmation from Particle that it will produce documents in response to Epic's RFP Nos. 6 and 7 following the parties' discussion during the November 24, 2025 meet and confer regarding this issue.  (*See* 12/1/2025 Letter from M. Addis at 5.)  Epic reiterates its request to promptly confirm that Particle agrees to produce documents in response to Epic's RFP Nos. 6 and 7.

* * *

Epic is prepared to discuss any of these issues during our upcoming meet and confer.

Sincerely,

*/s/ Michael P. Addis*

Michael P. Addis

Adam Wolfson
    Quinn Emanuel Urquhart & Sullivan, LLP
        865 South Figueroa Street, 10th Floor
            Los Angeles, CA 90017-2543

BY EMAIL