**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
adamwolfson@quinnemanuel.com

March 20, 2026

**VIA ECF**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     *Particle Health Inc. v. Epic Systems Corporation*, 1:24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

Plaintiff Particle Health, Inc. ("Particle") respectfully requests a pre-motion conference under Section 2(B) of the Court's Individual Practices in anticipation of a motion to compel production of documents from Defendant Epic Systems Corporation ("Epic").

The Parties have been engaging in document discovery regarding the market definition-related topics set forth in the Court's September 5, 2025 Order. Dkt. 42. To help answer the Court's question regarding "whether the parties' products are truly in competition with one another," *id.* at 29, Particle's RFP 9 sought all documents and communications "discussing or referring to Particle between September 1, 2023 and the present." Ex. A at 11. Epic responded it "***will produce responsive, non-privileged documents, if any, that it locates***" through the parties' agreed-upon search protocol. *Id.* Under that protocol, Epic agreed to search for documents mentioning "Particle" alongside certain competition-related terms like "threat," "rival," and "compet[itor]." Ex. B. These search strings returned 1,000+ hits among Epic's Phase I custodians (a limited set of employees involved with Epic's Payer Platform). *Id.* Epic did not otherwise qualify the category of responsive documents it agreed to produce in response to RFP 9. Ex. A at 11.

Despite this agreement, Epic produced just *five* documents out of the 1,000+ that hit on the heavily negotiated and agreed-upon "Particle"-related search strings. Epic's explanation: it may withhold responsive, non-privileged documents if Epic unilaterally deems them irrelevant to Phase I Discovery. Ex. C at 2. Then, in a March 19 letter (offering *one* more document), Epic reconfirmed it is withholding documents on unilaterally determined relevance grounds, including third-party communications mentioning Particle. Ex. D at 2-3. Whether that accounts for all of the withheld documents or only a fraction remains unclear. This murky withholding is improper and prejudicial, and this pre-motion conference request is the result.

**I.     Epic May Not Withhold Responsive Documents On "Relevance" Grounds**

Epic's "relevance" screening contravenes both its own prior agreement and the basic rules of document discovery. If Epic believed Particle's RFP 9, as limited by the Parties' search protocol, went beyond the permissible scope of Phase I Discovery, then the Rules required Epic, in its Responses & Objections, to (1) "state with specificity the grounds for objecting to the request,

including the reasons," (2) "state whether any responsive materials are being withheld on the basis of that objection," and (3) "specify" what responsive material is being withheld. Fed. R. Civ. P. 34(b)(2). Epic did none of this. To defend its rule-defying unilateral relevance calls, Epic now stands on a boilerplate objection it lodged to every single Request purporting to object "to the extent that it seeks documents beyond the scope of the three narrow topics identified by the Court as the proper subject of discovery." Ex. A at 11. This position has no merit for two reasons.

First, Epic's response to RFP 9 did not specifically indicate that Epic would withhold any responsive documents based on the boilerplate objection. *Id.* Failure to "state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)." *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *Herman v. City of New York*, 334 F.R.D. 377, 383 n.6 (E.D.N.Y. 2020) ("[M]aking an objection to discovery, without stating that documents are being withheld, is meaningless boilerplate."). Epic disclosed this "relevance" screen 29 days after serving its Responses & Objections. Ex. E at 2. That belated, informal assertion cannot cure waiver. *See Tedaldi v. Am. Paving Inc.*, 2025 WL 1349033, at *2 (E.D.N.Y. Apr. 23, 2025) ("By failing to timely assert their objections within 30 days of service of the discovery demands, defendants have waived those objections.") (quotation omitted).

Second, even if Epic had timely objected, its "relevance" screening is still improper. "Parties to litigation have the right to challenge the relevance of documents through discovery motion practice, rather than unilateral determinations by individuals in whose interest it is to seek to withhold the production of documents that may lead to the discovery of admissible evidence." *Au New Haven, LLC v. YKK Corp.*, 2023 WL 2612204, at *14 (S.D.N.Y. Mar. 23, 2023) (quotation omitted). The Rules do not allow Epic to decide for itself "what documents are relevant and produce those documents only." *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998). This would allow Epic to "arrogate[] to itself the authority to decide the question of relevance which is unquestionably the decision of the judge" and provide "no mechanism for either plaintiff[] or the Court to review defendant's decisions," leaving the Court and Particle "wondering what documents are being produced and what documents are being withheld." *Id.* "Stated another way, no party possesses the unilateral ability to dictate the scope of discovery based on their own views of the parties' respective theories of the case." *Conserv. L. Found., Inc. v. Shell Oil*, 2023 WL 5434760, at *18 (D. Conn. Aug. 22, 2023) (cleaned up).

The Court's prior Orders limited discovery *topics* but did not change the *procedural rules*. Particle believes that all search string hits responsive to its RFP 9 meet the low threshold for relevance—indeed, they all contain "Particle" and at least one competition-related term that would highlight the competitive dynamics between the parties; *i.e.* the hallmarks of market definition. Epic may (now) disagree, but the rules require such disagreements be resolved through timely and proper objections. Having promised to "produce responsive, non-privileged documents, if any, that it locates through [its] search," Ex. A at 11, Epic must deliver.

## II.    Epic's Assertions of Irrelevance Are Not Plausible

Even if Epic could properly screen for "relevance," its claim that nearly all 1,000+ documents are irrelevant is not credible. Despite Epic's prior representations to this Court, Phase I Discovery has made clear that Epic's and Particle's payer platforms perform the same core combination of functions and serve the same unique use cases for the same types of customers. Both are marketed to and used by payers as integrated tools for live, bidirectional data exchange

with healthcare providers at scale for the *express purpose* of improving patient treatment and healthcare quality. *Compare, e.g.*, Ex. F at *67812 (EPP " ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████ "), *with* Ex. G (Particle " ███████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████ .").

Given their substantially identical, competitively unique functions (and Particle's direct efforts to convert EPP's customers), it is highly implausible that *over 99%* of the 1,000+ search term hits discussing "Particle" alongside words like "threat," "rival," and "competitor"—from the files of the individuals responsible for EPP's competitive positioning—are *completely* irrelevant to Phase I. "Relevance, for purposes of discovery, is an extremely broad concept." *Steinberg v. Constellation Agency*, 2025 WL 1802981, at *1 (S.D.N.Y. July 1, 2025) (quotation omitted). Epic's *ir*relevance determinations demonstrate why it appears to have violated this low bar to production. For example, only after Particle pushed it to do so, Epic produced a " ██████ " (*i.e.*, competitive concern) report it had previously withheld, even though it discusses Particle's entry into the payer market and the competitive concerns those raise for Epic. Ex. H. And on the eve of this filing, Epic produced an internal customer meeting document that mentioned Particle while expressly disputing its relevance. Ex. I. But Epic apparently overlooked that the same document family discusses the health provider customer's ████████████████████ ██████████████████████████████████████████████████████—*the precise subject matter of Phase I*. *Id.* at *126055. If Epic's "relevance" screen missed this document's obvious Phase I relevance—specifically, why and how EPP is used, and who wants to use it— simply because of how Epic discussed Particle in the document, neither Particle nor the Court can be confident of Epic's hundreds of similar "irrelevance" determinations. Furthermore, it is not Epic's role to determine if how Epic discusses Particle is "good enough" for production purposes. How Epic discusses Particle is essential to understanding Epic's true view of Particle and goes to the heart of whether the products compete. For example, if Epic's VP of *Payer Software* called Particle a "threat," that is relevant to Phase I, even if that communication did not discuss the specifications of Particle's product.

### III.    <u>This Dispute Is Timely</u>

Epic has incorrectly suggested this dispute is untimely as a dispute about "Search Methodologies" or "Scope of Production" that should have been raised in December. *See* Dkt. 56. But the parties *agreed* on a "scope of production" for RFP 9. Long *after* that agreement, Epic stated it would perform an additional "relevance" screen on documents *within* the agreed scope of production (strongly suggesting it saw something in the documents it did not like). Particle promptly objected. Ex. J at 1-2. Epic downplayed it, stating it "does not believe there is a substantive dispute between the parties." Ex. K at 2. Particle "*reserve[d] the right to re-raise these issues by the March 20 deadline after reviewing Epic's productions*." Ex. J at 2 (emphasis added). <u>**Epic did not contest that statement**</u>. Ex. K. Once Particle's review clarified Epic was improperly withholding documents on "relevance" grounds, Particle promptly re-raised the issue, just as it told Epic it would months prior. Ex. L at 2. The Phase I Schedule, Dkt. 56, expressly sets March 20 as the deadline for filing motions regarding Phase I document discovery. This letter is timely, and Particle requests a pre-motion conference on a motion to compel Particle-related documents.

Respectfully submitted,

*/s/ Adam B. Wolfson*
Adam B. Wolfson