# Exhibit E

# CRAVATH

Michael P. Addis
maddis@cravath.com
T+1-212-474-1956
New York

December 11, 2025

Re: <u>Particle Health Inc. v. Epic Systems Corporation</u>, No. 24-cv-07174-NRB (S.D.N.Y.)

Counsel:

I write on behalf of Epic Systems Corporation ("Epic") in response to Particle Health Inc.'s ("Particle") December 8, 2025 letter and further to the parties' December 8, 2025 meet and confer and Particle's December 10, 2025 and December 11, 2025 emails.  Epic does not undertake to correct every mischaracterization in Particle's December 8, 2025 letter and December 10, 2025 and December 11, 2025 emails other than to say that Epic disagrees with a number of Particle's representations and positions.

## I.      ESI Order and Protective Order

*First*, with respect to the ESI Order, Epic consents to Particle's signing and filing of the draft joint letter to the Court requesting entry of the ESI Order.

*Second*, with respect to the Protective Order, Epic disagrees that its questions concerning Particle's in-house counsel are irrelevant to the draft Protective Order.  (*See* 12/8/2025 Letter from A. Wolfson at 2.)  Epic is surprised by Particle's representation that its sole in-house counsel "does not engage in competitive decision-making" (*id*. at 1).  Epic expects it is highly likely that Particle's only in-house lawyer is regularly involved in such decision-making, which would disqualify her from having access to "Highly Confidential – Attorneys' Eyes Only" material.  Please confirm whether Particle's in-house counsel is regularly involved in any competitive decision-making no later than Friday, December 12.

## II.     Custodians

### A.      Particle Custodians

Epic appreciates Particle's confirmation that it will add Garrett Montague and Steven Swank as custodians (*see* 12/11/2025 Email from L. Beck), whom Epic identified as additional individuals who likely have highly relevant, noncumulative documents related to the Phase I Topics.  (*See* 12/8/2025 Letter from M. Addis at 4; 12/3/2025 Email from M. Vaughn.)  Given Particle's addition of these custodians, Epic confirms that it agrees to Particle's proposal to run the search terms across its documents that Epic proposed on December 9, 2025 (*see* 12/9/2025 Email from M. Vaughn), with Particle's one modification reflected in its December 11, 2025 email (*see* 12/11/2025 Email from L. Beck).

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

### B.    Epic Custodians

As agreed during the December 8, 2025 meet and confer, Epic is attaching an updated search term hit report that includes custodial data for Ryan Bohochik and Karsten Smith. In providing this search term hit report, Epic does not waive any of its prior objections to applying search terms to all of Mr. Bohochik's and Mr. Smith's custodial data. Nevertheless, in the interest of compromise and because Particle has agreed to add Mr. Montague and Mr. Swank as custodians, Epic will agree to add Mr. Bohochik and Mr. Smith as custodians for all agreed search terms.

During the parties' December 8, 2025 meet and confer, Particle indicated that despite Epic's compromise to add Alan Hutchison, Mr. Bohochik, and Mr. Smith as custodians, Particle intends to move to compel Epic to add Judy Faulkner and Katie O'Brien as custodians. Epic will oppose Particle's motion as to each. They are not relevant or proportionate to the three narrow topics at issue in Phase I (the "Phase I Topics").[1]

*First*, as to Ms. Faulkner, Particle has not offered any new or specific argument to support why she is relevant or proportionate to the Phase I Topics. Instead, during the parties' December 8, 2025 meet and confer, Particle simply reiterated generally that it believes that Ms. Faulkner is not the "typical" CEO and that she is involved in all decision-making at Epic. Particle also stated, without any support, that Ms. Faulkner has been driving Epic Payer Platform strategy and market-positioning and giving instructions regarding the same, and that she has purportedly participated in discussions about how Epic Payer Platform and Particle's payer product allegedly compete. When Epic asked Particle to articulate how Ms. Faulkner is relevant to the three narrow Phase I Topics specifically, Particle vaguely claimed that Ms. Faulkner is relevant to the "strategy and market positioning topic", which Particle thought was the third Phase I Topic. After Epic reminded Particle what the third Phase I Topic actually is—"*the existence* of alternative products available to suit payer needs" (Dkt. No. 42 at 31 (emphasis added)—Particle, appearing to recognize that that Topic did not concern strategy, suggested that the "strategy" topic must be the first Phase I Topic instead. When confronted with what that Phase I Topic actually is—"the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers" (*id.*)—Particle then reverted to claiming that "strategy and market positioning" would be highly relevant to the third Phase I Topic after all.

The fact that Particle cannot actually tie the sole basis for asserting that Ms. Faulkner is a relevant and proportionate custodian to any of the Phase I Topics is telling. Whether Ms. Faulkner is a decision-maker at Epic (of course she is) or plays a role in strategy and market positioning with respect to Epic Payer Platform is not the standard for her inclusion as a custodian for discovery of the Phase I Topics, none of which encompasses general "strategy and market positioning" and which is supposed to be "'focused,' 'narrow,' and 'limited'". (Dkt. No. 47 at 1.)

By email on December 10, 2025, Particle recycled many of the same arguments that Epic has already addressed about Ms. Faulkner's purported relevance. (12/10/2025 Email from L. Beck.) Particle points to a statement purportedly made by Ms. Faulkner that "roughly half of

---

[1] As Particle knows, the Phase I Topics are "(i) the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (i.e., retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs". (Dkt. No. 42 at 31.)

the Epic health system and medical group customers and seven of the nation's largest payers are connected to [Epic Payer Platform], with the goal of reducing denials and improving the prior authorization process".[2]  This purported statement simply confirms that Epic Payer Platform's customers are payers and that Epic Payer Platform provides payer-related services, like assistance with the prior authorization process.  Such a high-level description is no basis to demand that Ms. Faulkner become a custodian here.  Particle also attached a screenshot from a purported "Epic Systems Chart Gateway (Insurance Products) Agreement" showing that Ms. Faulkner is listed as a contact for notice that may be required under the terms of that agreement.  (12/10/2025 Email from L. Beck.)  According to Particle's own description, the agreement is not even for Epic Payer Platform and is, therefore, irrelevant to the Phase I Topics on its face.  Regardless, whether Ms. Faulkner is listed as a contact for legal notice required under the terms of Epic's agreements does not mean that Ms. Faulkner is likely to have non-cumulative documents relevant to the Phase I Topics that would make her a proportionate Phase I custodian.

Particle asked in its December 10, 2025 email about execution meetings that Particle claims Ms. Faulkner attended "where competition with Particle's payer platform was discussed".  Based on Epic's reasonable investigation, Ms. Faulkner was not present at any execution meeting where competition with Particle's purported payer platform was discussed.

*Second*, with respect to Ms. O'Brien, Particle insisted during the parties' December 8, 2025 meet and confer that Ms. O'Brien is involved in negotiating Epic Payer Platform contracts with payer customers, notwithstanding Epic's representation to the contrary.  (*See* 12/8/2025 Letter from M. Addis at 3.)  Particle also stated during the meet and confer that it understands Ms. O'Brien to be "Judy's right-hand" and that she would have participated in any strategic discussions about Epic Payer Platform with Ms. Faulkner, citing "industry knowledge and conversations with their client", without more.  Epic reiterated that documents concerning the contracting and sales process with Epic Payer Platform customers (to the extent relevant) would be in the files of existing custodians, including Mr. Hutchison and Patrick Schenk.

By email on December 10, 2025, Particle asked Epic to confirm whether Ms. O'Brien was "responsible for negotiating deals regarding [Epic Payer Platform] with third parties" and "whether Epic currently has a cooperation agreement in place with Ms. O'Brien given her status as a prior employee".  (12/10/2025 Email from L. Beck.)  Epic reiterates, as it did both in its prior letter and during the December 8, 2025 meet and confer, that, based on its reasonable investigation to date, Ms. O'Brien was not involved in the negotiation of Epic Payer Platform contracts with customers.  In its December 10, 2025 email, Particle also claimed that it "recently learned from vendors that Ms. O'Brien did indeed negotiate third party deals for Epic".  (*Id.*)  Epic previously explained to Particle that Ms. O'Brien's role in procurement relates to third-party sublicensing, third-party contract facilitation assistance, and procurement for internal development projects.  (12/8/2025 Letter from M. Addis at 3.)  It is, therefore, unsurprising that a third-party vendor may have noted that Ms. O'Brien negotiated certain contracts for Epic.  Again, based on Epic's reasonable investigation to date, Ms. O'Brien's prior third-party contracting responsibilities did not involve negotiation of Epic Payer Platform contracts with customers and are irrelevant to the Phase I Topics.  The only negotiating and contracting that is arguably relevant to the Phase I Topics is with respect to Epic Payer Platform and its customers, which is covered by custodians that Epic has already agreed to include.  Particle's question regarding whether Epic currently has a cooperation agreement in place with Ms. O'Brien has no

---

[2] *See* Eric Wicklund, *4 Key Takeaways from the Epic UGM*, HealthLeaders (Aug. 27, 2024), https://www.healthleadersmedia.com/innovation/4-key-takeaways-epic-ugm.

bearing on whether Ms. O'Brien is a relevant or proportionate custodian for the Phase I Topics, and Epic owes no response.

*Third*, in its December 10, 2025 email, Particle requested that Epic investigate whether Seth Howard has "had frequent communications with third parties regarding issues with [Epic Payer Platform] software and functionality". (12/10/2025 Email from L. Beck.) The deadline to reach impasse regarding custodians for Phase I was December 8, 2025. The parties agreed to respond to the questions asked during the December 8, 2025 meet and confer and to determine whether they could avoid impasse. Particle did not mention Mr. Howard during the parties' December 8, 2025 meet and confer and raised a question concerning him two days after the deadline for impasse and two days after the parties' December 8, 2025 meet and confer. That said, whether or not an employee had communications with third parties regarding Epic Payer Platform software and functionality is not the standard for whether such a custodian is proportionate to Phase I. In any event, based on our reasonable investigation, Mr. Howard did not have frequent communications with third parties regarding issues with Epic Payer Platform software and functionality. Moreover, Epic has already agreed to search the files of Mr. Hutchison, Mr. Schenk, Jim McDermott, and Derek De Young, who collectively can speak to Epic Payer Platform's functionalities, product development, customer relationships, customer contracting, and competitors. (12/8/2025 Letter from M. Addis at 1-3.)

## III.    Epic's Custodial Document Review Process

Particle raises—for the first time—a purported concern that Epic will withhold documents that are responsive to Particle's RFPs but unrelated to the Phase I Topics. (*See* 12/8/2025 Letter from A. Wolfson at 4.) It should be no surprise to Particle that Epic will be limiting its production of documents in Phase I to those that concern the Phase I Topics. First, the Court gave an "explicit directive that the parties schedule and complete 'focused,' 'narrow,' and 'limited,' discovery ***solely*** addressing three issues identified in the [Court's September 5, 2025] Order relating to market definition." (Dkt. No. 47 at 1 (citing Dkt. No. 42 at 30-31, 69) (emphasis added).) Seeking documents beyond the Phase I Topics is inconsistent with the Court's order. Second, Epic expressly objected to searching for and producing documents beyond the Phase I Topics in the responses and objections that Epic has served to Particle's RFPs, as well as during the parties' meet and confers. (*See, e.g.*, 11/12/2025 Epic's Responses and Objections to Particle's First Set of RFPs at 2-3, 8-11 (objecting to the extent the RFPs "seek to impose burdens or obligations on Epic that are broader than, inconsistent with or not authorized under the Court's decisions and orders . . . with respect to the three narrow issues identified by the Court as the proper subject of discovery during phase 1" and objecting to specific RFPs that sought documents "beyond the scope of the narrow topics identified by the Court as the proper subject of discovery").) It is for this very reason, for example, that Epic objected to searching for and producing any documents responsive to RFP Nos. 9 and 16-21 from Particle's Second Set of RFPs. (*See* 11/12/2025 Epic's Responses and Objections to Particle's Second Set of RFPs at 13, 18-21; *see also* 12/1/2025 Letter from M. Addis at 3-5.) Although, as discussed below, Epic is willing to agree to certain limited non-custodial searches responsive to RFP Nos. 9, 18, and 20, Epic does so only in the interest of compromise and without waiver to its objections and, consistent with the Court's "explicit directive", will limit production to those documents that relate to the Phase I Topics for which the Court ordered limited discovery.

That Epic will not search for and produce documents unrelated to the Phase I Topics— even if such documents hit on the parties' agreed-upon search terms—is far from "lodg[ing] a blanket relevance objection". (12/8/2025 Letter from A. Wolfson at 4.) Rather, Epic's approach is plainly consistent with the Court's "explicit directive" to do just that. (Dkt. No. 47 at 1 (citing

Dkt. No. 42 at 30-31, 69) (emphasis added).)  To give an example, RFP No. 9 from Particle's First Set of RFPs plainly seeks documents beyond the Phase I Topics, as it requests, in part, "All Documents and Communications (including with any third party) discussing or referring to Particle between September 1, 2023 and the present", which, as written, encompasses documents concerning the Carequality dispute with Particle.  Therefore, in response to this RFP, Epic has agreed to run search terms related to Particle, but, consistent with the Court's order for limited discovery into the Phase I Topics, Epic will only produce documents concerning "the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers"; "the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (i.e., retrieval at scale, storage, and analytics)"; and "the existence of alternative products available to suit payer needs".  (Dkt. No. 42 at 31.)

## IV.    Epic's Responses to Particle's RFPs

As explained in Epic's December 1, 2025 letter, Epic maintains that RFP Nos. 9, 16-18, and 20 are beyond the scope of the three narrow topics at issue in Phase I.  (*See* 12/1/2025 Letter from M. Addis at 3-5.)  Moreover, and as Particle acknowledges, Epic has already confirmed that it will produce any non-privileged documents responsive to RFP Nos. 9, 16-18, and 20 that are returned by Epic's agreed-upon searches to the extent they relate to the Phase I Topics.  (*See id.*; 12/8/2025 Letter from A. Wolfson at 2.)  While Epic believes this agreement is more than sufficient given the tenuous relevance of these RFPs to the Phase I Topics, in the interest of compromise and to resolve all disputes as to these RFPs, Epic will agree to perform the following non-custodial searches for documents responsive to RFP Nos. 9, 18, and 20, and will produce documents that relate to the Phase I Topics.  (*See* 11/12/2025 Epic's Responses and Objections to Particle's Second Set of RFPs at 13, 19-21.)

RFP No. 9 seeks "All Documents and Communications discussing or referring to the relationship (or lack thereof) between Epic Payer Platform and Epic Payer Gateway, as discussed at open.epic :: Interoperability Guide, including Documents sufficient to show the differences and functionality between the Epic Payer Platform and Epic Payer Gateway."  As Epic previously explained, Epic Payer Gateway is a separate product and is not on its face directly relevant to the Phase I Topics.  (*See* 12/1/2025 Letter from M. Addis at 3.)  Interestingly, and contrary to Particle's position in the Complaint and during the motion to dismiss briefing that Epic Payer Platform and Particle are the only competitors in the purported payer platform market (*see* Compl. ¶ 75; Dkt. No. 28 at 12, 17, 27, 33), Particle now claims that "Epic Payer Gateway is also, of course, relevant to 'the existence of alternative products available to suit payer needs' as it is itself an alternative product that purports to fulfill some needs of payers" (12/8/2025 Letter from A. Wolfson at 3).  Subject to and without waiving any objections stated herein or made previously, Epic will agree to perform a reasonable, non-custodial search for documents sufficient to show the differences between Epic Payer Platform and Epic Payer Gateway.

RFP No. 18, which, as "narrowed" by Particle, now seeks "agendas, minutes, recordings, or other memorializations of meetings held between July 1, 2023 and the present where both (A) Particle was discussed ***and*** (B) the meeting was attended by Judy Faulkner, Alan Hutchison, Dave Fuhrmann, or Katie O'Brien" is still vastly overbroad.  (*Id.*)  Even as amended, this RFP effectively purports to require a search of documents regarding any meeting that took place at Epic over the past 2.5 years to determine whether there was any mention whatsoever of Particle.  Nor has Particle's "narrowing" done anything to address the fact that this RFP encompasses documents beyond the scope of the Phase I Topics.  For example, as Epic previously stated, documents regarding the Carequality dispute with Particle, despite not being relevant to any of

the Phase I Topics (*see* 12/1/2025 Letter from M. Addis at 4), are still within the scope of the amended RFP as it is written.  Moreover, Epic remains unaware of the purported "weekly strategy meetings held on Fridays" attended by the individuals referred to in Particle's RFP. (*Id.*)  Notwithstanding its objections stated herein or made previously with respect to this RFP, as described above, based on Epic's reasonable investigation, Ms. Faulkner was not present at any execution meeting where competition with Particle's purported payer platform was discussed.[3]  While Epic believes it has already more than sufficiently investigated Particle's RFP, Epic has also agreed to add Mr. Hutchison as a custodian and his documents will be searched using the parties' agreed-upon search terms (including broad search terms regarding Particle), which should resolve any dispute as to this RFP.

RFP No. 20, which now seeks a non-custodial "production of analyses, reports, or presentations prepared by or for Dave Fuhrmann and discussing or referring to Particle", is also still vastly overbroad and beyond the scope of Phase I.  (*Id.* at 4.)  As Epic previously explained, Mr. Fuhrmann's role at Epic relates to interoperability, which encompasses a broad range of Epic products and services, but "first and foremost refers to Care Everywhere".  (12/8/2025 Letter from M. Addis at 3.)  As a result, this RFP, even as amended, continues to encompass documents that concern the Carequality dispute with Particle, which is beyond the scope of Phase I.  (*See* 12/1/2025 Letter from M. Addis at 5.)  Nevertheless, subject to and without waiving any objections stated herein or made previously, Epic will investigate whether it is able to conduct a reasonable, non-custodial search for any reports or presentations prepared by or for Dave Fuhrmann that discuss or reference Particle, but only to the extent the discussion is relevant to any of the Phase I Topics.

## V.    Particle's Responses to Epic's RFPs

Epic appreciates Particle's confirmation that it will produce documents responsive to Epic's RFP Nos. 6 and 7 to the extent such documents are returned by the agreed-upon search terms.  (*See* 12/8/2025 Letter from A. Wolfson at 5.)  Epic also understands that Particle will conduct a non-custodial search for documents responsive to Epic's RFP No. 7 now that Epic has agreed to conduct non-custodial searches in connection with Particle's RFP Nos. 8 and 18 as set forth above.  (*See* 12/8/2025 Letter from A. Wolfson at 5 (stating that "Particle will agree to search for and produce non-custodial documents responsive to Epic's RFP No. 7 on the condition that Epic agree to the compromise we have proposed above regarding Particle's RFP Nos. 8 and 18 (Second Set)").)

As to Epic's RFP No. 6, Epic disagrees with Particle's refusal to search for non-custodial documents and maintains its position that this RFP seeks documents relevant to both (i) whether Particle's products have payers and/or payviders as customers, and (ii) the exact functions offered by Particle's products, including the retrieval function in particular, and how Particle's products differ from Epic Payer Platform.  (*See* 12/1/2025 Letter from M. Addis at 5.)  Epic also reiterates that RFP No. 6 seeks the same types of documents that would be responsive to RFP No. 5 from Particle's Second Set of RFPs.  (*Id.*)

---

[3] To be clear, Epic's reasonable investigation it conducted for documents related to execution meetings attended by Ms. Faulkner is not an admission that Epic believes Ms. Faulkner is relevant to the issues in Phase I.  Epic continues to maintain its objections to Particle's request for adding Ms. Faulkner as a custodian.

## VI.     Instant Messaging Data

During the parties' December 8, 2025 meet and confer, Particle agreed to investigate the instant messaging platform(s) Particle uses and whether Particle's custodians regularly use such platform(s) for business purposes.  To the extent Particle maintains its request that Epic search for and produce Microsoft Teams data for Epic's custodians, Particle should provide the requested information to Epic no later than Friday, December 12.

* * *

Epic is available to meet and confer with respect to any issues raised herein, or any other issue, this week.  Please confirm Particle's availability.

Sincerely,

*/s/ Michael P. Addis*

Michael P. Addis

Adam Wolfson
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

BY EMAIL