

Lauren A. Moskowitz
lmoskowitz@cravath.com
T+1-212-474-1648
New York

March 25, 2026

<u>Particle Health Inc. v. Epic Systems Corporation</u>, No. 24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

I write on behalf of Epic Systems Corporation ("Epic") in response to Particle Health Inc.'s ("Particle") March 20, 2026 letter requesting a pre-motion conference to move to compel Epic's production of certain documents. (Dkt. No. 66.) Particle has repeatedly tried to evade the Court's "explicit directive" that the parties conduct "'focused,' 'narrow,' and 'limited' discovery solely addressing three issues . . . relating to market definition" (the "Phase I Topics"). (Dkt. No. 47 at 1; *see also* Dkt. No. 42 at 30-31 (the "Court's Orders").)[1] This is another attempt at the same.

Particle's pre-motion letter is untimely because the Court-ordered deadline for motions to compel regarding the scope of production was more than three months ago, on December 15, 2025. (Dkt. No. 56.) Particle's delay is unsurprising: Prior to the December 15, 2025 cutoff date, the parties had agreed to a search protocol relevant to Phase I discovery, and consistent with the parties' agreement, Epic has produced more than ***24,000 documents***. Particle embarks on its current eleventh-hour fishing expedition that goes far beyond the Phase I Topics, because contrary to Particle's assertions, the documents produced in Phase I *refute* Particle's allegations. Epic should not now be required to produce additional documents simply because Particle is disappointed that Phase I discovery does not support its allegations.

## I. Particle's Pre-Motion Letter Is Untimely as Particle Did Not Move To Compel By the Court-Ordered Deadline.

Contrary to Particle's assertions otherwise, prior to the Court-ordered December 15, 2025 deadline for "Motion[s] to Compel re: Scope of Production" (Dkt. No. 56), Particle was well aware that Epic would not produce documents referencing "Particle" that were beyond the scope of the Phase I Topics. (Dkt. No. 66-10 at 1-2.) Particle waived any objection by ignoring the Court's deadline.

Particle's RFP No. 9 "sought all documents and communications 'discussing or referring to Particle between September 1, 2023 and the present'". (Dkt. No. 66 at 1 (quoting Dkt. No. 66-1 at 11).) Epic timely objected to RFP No. 9 "to the extent it seeks documents beyond the scope of the three narrow topics identified by the Court as the proper subject of discovery". (Dkt.

---

[1] The Phase I Topics are "(i) the definitions of 'payer' and 'payvider,' and whether either or both of the parties' payer platform products have payers and/or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (*i.e.*, retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs". (Dkt. No. 42 at 31.)

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

No. 66-1 at 11.)  Epic agreed to perform the "Phase 1 Search Protocol"—explicitly defined as "a targeted, reasonable search for responsive custodial documents *concerning these narrow issues*"—and to produce responsive, non-privileged documents from that search.  (*Id.* at 5, 11 (emphasis added).)  Thus, from the outset, consistent with the Court's Orders, Epic agreed only to produce documents that discuss Particle if they concern the Phase I Topics.[2]

Moreover, throughout the parties' meet and confer process in November and December 2025, Epic was clear that it would "be limiting its production of documents in Phase I to those that concern the Phase I topics".  (Dkt. No. 66-5 at 4.)  Specifically, Epic reiterated that RFP No. 9 "plainly seeks documents beyond the Phase I Topics" and "consistent with the Court's order for limited discovery into the Phase I Topics, Epic will only produce documents concerning [the Phase I Topics]".  (*Id.* at 5.)  Epic again reiterated its position in its December 15, 2025 letter:

> Epic has been expressly clear, including in the parties' first and subsequent meet and confers and in correspondence, that documents that refer to Particle or the Carequality dispute with Particle, that do not otherwise concern any of the Phase I Topics, are irrelevant to the Phase I Topics and will not be produced, even if they would technically be responsive to Particle's RFPs, including RFP No. 9 from Particle's First Set of RFPs.

(Dkt. No. 66-11 at 2.)  Particle never responded to that letter.  Nor did Particle timely seek relief on this issue by the December 15, 2025 deadline.  Instead, Particle filed a motion to compel on December 15, 2025 on two separate issues—Epic's custodians and the appropriate time period for document discovery.  (Dkt. No. 57.)

While Particle claims that it unilaterally "reserve[d] the right to re-raise these issues" "after reviewing Epic's productions" (Dkt. No. 66 at 3), no such right to ignore the Court-ordered deadline exists.  Epic timely objected, the parties discussed the issue for weeks, and Particle chose not to raise it with the Court.  Particle therefore waived any dispute.  *See Shred-IT USA, Inc. v. Confidential Shredding, LLC*, 2005 WL 2290448, at *2 (E.D.N.Y. Sept. 20, 2005) (noting that "the failure of a party to make a motion to compel could be found to be a waiver of that party's right to seek further discovery after a scheduling deadline has passed").

## II.  Particle Improperly Seeks Discovery In Violation of the Court's Orders.

It was Particle's obligation to propound discovery consistent with the Court's Orders related to the Phase I Topics.  (Dkt. No. 47 at 1; *see also* Dkt. No. 42 at 30-31.)  Particle did not do so, and Epic therefore limited Particle's requests to the Phase I Topics through clear objections.  Particle did not dispute these objections, yet now, with Phase I discovery failing to support its allegations, improperly seeks documents that go far beyond the scope of the Phase I Topics and the parties' agreed-to search protocol.  That is a fishing expedition that should be rejected.

To be clear, Epic has not imposed some arbitrary "'relevance' screen" or "dictate[d] the scope of discovery" based on its own views of the case.  (Dkt. No. 66 at 2.)  To the contrary, Epic has done what every party does in discovery:  it applied search terms as a first screen, and then reviewed the resulting documents for responsiveness and privilege.  Unlike in the cases Particle cites, the

---

[2] Particle's reliance on *Fischer v. Forrest*, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017), and *Herman v. City of New York*, 334 F.R.D. 377 (E.D.N.Y. 2020), is misplaced.  The defendants in those cases did not include in their objections any description of the search limitations they would implement to identify responsive documents.  But Epic did just that, by stating that its productions would be limited to the Phase I Topics.  (Dkt. No. 66-1 at 5, 11.)  That is sufficient. *See* Fed. R. Civ. P. 34, Advisory Committee Notes, 2015 Amendment ("[A]n objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. . . .  An objection that states the limits that have controlled the search for responsive . . . materials qualifies as a statement that the materials have been 'withheld'".).

Court has been explicit that discovery here is limited to the narrow Phase I Topics. (Dkt. No. 47 at 1; *see also* Dkt. No. 42 at 30-31.) The parties are obligated to comply with the Court's Orders by propounding discovery requests that are limited to the Phase I Topics. Epic has not improperly "withheld" responsive documents (Dkt. No. 66 at 1); Epic has merely complied with the Court's Orders and the agreed-to search protocol, thus producing only responsive documents related to the Phase I Topics.[3]

Contrary to Particle's assertions (Dkt. No. 66 at 2), it makes complete sense that there are few Epic documents mentioning Particle that also concern the Phase I Topics. Discovery has confirmed what Epic has stated since the initiation of this lawsuit: Epic Payer Platform does not compete with Particle, and even if it did, Particle was simply not on Epic's radar in this regard. And as Epic already explained to Particle, more than 75% of the non-responsive documents hitting on the term "Particle" post-date Particle's initiation of this lawsuit and include hundreds of calendar entries and communications with counsel, as well as news alerts and other media coverage about the litigation that do not relate to the Phase I Topics. (Dkt. No. 66-3 at 2; Dkt. No. 66-4 at 2-3.) And at Particle's request, Epic already rereviewed the universe of non-responsive documents that hit on the term "Particle" to determine whether any fell into certain categories identified by Particle (Dkt. No. 66-4 at 2-3) and Epic confirmed, *inter alia*, that none of the documents included discussions of Particle's competitive positioning or discussed Particle as a competitor or potential competitor (*id.*).[4]

The two documents Particle cites—which Epic has already produced—are case in point. *First*, the ███████████ related to Particle does not describe competition between Epic and Particle, but rather Epic's concern that Particle was ████████████████████████████████ ████████████████████████████████████ (Dkt. No. 66-8 at 1.) This ████████████ has nothing to do with "competitive concerns", as Particle posits (Dkt. No. 66 at 3), but rather concerns a risk to patient privacy from Particle's improper conduct (Dkt. No. 66-8 at 1). Nor does the report mention Epic Payer Platform, instead identifying the ████████████████████████████ (a product for EHR provider customers not at issue here). (*Id.*) *Second*, the document related to ████████████ (Dkt. No. 66-9), one of Epic's *provider* customers, merely notes that ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ (*Id.* at EPIC_PARTICLE_00126055.) The document provides no information about "the exact functions offered by the parties' payer platform products" (Dkt. No. 42 at 31) or anything about Epic Payer Platform's customers beyond what the product name itself conveys. Notably, Particle does not even attempt to argue that the single reference to Particle in the document has anything to do with the Phase I Topics.

Particle's Phase I discovery efforts refute Particle's allegations: Phase I discovery has yielded documents showing Particle's market definition is flawed and that the parties do not compete. Particle's last ditch effort to go far beyond Phase I discovery should be denied.

---

[3] Particle cherry-picks quotes from three cases to suggest that it is improper to review documents for responsiveness prior to production. (Dkt. No. 66 at 2.) Those cases dealt with a party's refusal to produce documents on the basis that they were, in their view, irrelevant to the claims and defenses in the case, as opposed to unresponsive to the Court-ordered scope of discovery. *See Au New Haven, LLC v. YKK Corp.*, 2023 WL 2612204, at *13-14 (S.D.N.Y. Mar. 23, 2023); *Conservation L. Found., Inc. v. Shell Oil Co.*, 2023 WL 5434760, at *18 (D. Conn. Aug. 22, 2023); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190-91 (D.D.C. 1998). That is not the case here, where Epic's objection, which was undisputed, rendered documents unrelated to the Phase I Topics unresponsive.

[4] Particle notes that the parties' agreed-upon search terms included "certain competition-related terms like 'threat,' 'rival,' and 'compet[itor]'", arguing that it is therefore implausible that documents discussing Particle do not concern the Phase I Topics. (Dkt. No. 66 at 1.) But Particle ignores that the search terms also included overinclusive terms like "start", "new", "plan", and "product" (Dkt. No. 66-2 at 1).

Respectfully submitted,

*/s/ Lauren A. Moskowitz*

Lauren A. Moskowitz

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Copies To:

All Counsel of Record

BY ECF