**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007

NAOMI REICE BUCHWALD                                                  (212) 805-0194
UNITED STATES DISTRICT JUDGE

May 27, 2026

Lauren A. Moskowitz
Cravath, Swaine & Moore LLP
375 Ninth Avenue
Two Manhattan West
New York, NY 10001

Adam B. Wolfson
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017

**Re: <u>Particle Health Inc. v. Epic Systems Corporation</u>**
**24 Civ. 7174 (NRB)**

Dear Counsel:

The Court is in receipt of the parties' letters of April 30, May 1, and May 5, 2026, ECF Nos. 79, 80, 84, 90, setting forth each party's proposed course of action following the completion of Phase I discovery.  The Court previously directed the parties to complete limited discovery concerning three discrete issues: (i) the definitions of "payer" and "payvider," and whether either or both of the parties' payer platform products have payers or payviders as customers; (ii) the exact functions offered by the parties' payer platform products, and specifically the unique characteristics identified by Particle (i.e., retrieval at scale, storage, and analytics); and (iii) the existence of alternative products available to suit payer needs.  The Court further directed the parties, upon completion of that limited discovery, to submit proposals concerning appropriate next steps in light of what had been learned during Phase I discovery.

The Court specifically ordered Phase I discovery having realized, after oral argument, that there was a lack of clarity even as to basic terminology and that there were fundamental disagreements regarding the contours of the alleged product market, including disagreements as to the nature of the products at issue, the respective functions that Epic Payer Platform ("EPP") and Particle Signal perform, and the composition of their respective customer bases.   The aim of Phase I discovery was to provide the Court with a more developed record bearing on threshold market definition issues and, in turn, to assist the Court in evaluating Particle's claims.

Unfortunately, after carefully reviewing the parties' submissions, the Court concludes that the letters provide less clarity than hoped for regarding the issues that Phase I discovery was designed to address.  In substantial part, the parties' submissions reiterate old arguments and do not squarely address the factual questions that the targeted discovery was intended to clarify.   The present record leaves unclear, among other things, the scope and suitability of the alleged product

market, the capabilities of the payer platform products, the extent to which the products serve the same customer base and needs, and the significance of purported alternatives.

Accordingly, no later than June 5, 2026, each party shall submit a supplemental letter, not to exceed five pages and using as little industry jargon as possible, responding to the following:

- What is Particle's definition of the relevant product market?

- How does each party define the terms "payer," "payvider," and "provider"?   Each party shall also explain whether, and to what extent, those categories overlap and provide at least one example of each.

- What percentage of EPP's and Particle Signal's customer bases are payers, payviders, and/or providers?

- Specifically, what further discovery does Particle contend is necessary before the Court can evaluate the sufficiency of its claims?

- Does Particle contend that a customer who is only a "payer" takes an active role in improving the health and treatment of their members through value-based care?

- What is Epic's definition of "healthcare operations"?

- Can EPP and Particle Signal be used by different types of customers in different ways?

- Does either party contend that a payer or payvider may request or use records or data for treatment purposes through either EPP or Particle Signal?

- Does either party contend that the permissible purpose associated with a request for records or data is a defining characteristic of the relevant product market?

- To the extent that Epic contends that EPP supports only non-treatment requests from payers, the parties shall explain whether, and under what circumstances, payers or payviders may use EPP to obtain and/or use records or data for treatment-related purposes. In that context, how do the parties define "treatment"?

Very truly yours,

Naomi Reice Buchwald
United States District Judge

cc: All counsel of record (by ECF)