September 25, 2026

**<u>VIA ECF</u>**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Particle Health Inc. v. Epic Systems Corporation*, 1:24-cv-07174-NRB (S.D.N.Y.)

Dear Judge Buchwald:

Pursuant to the Court's September 3, 2026 Order (Dkt. No. 101), we write jointly on behalf of Plaintiff Particle Health, Inc. ("Particle") and Defendant Epic Systems Corporation ("Epic") to submit this letter regarding the Parties' proposed schedule for completion of fact and expert discovery.

The Parties met and conferred in good faith and have reached agreements on the following two deadlines:

| **Event** | **Date** |
|---|---|
| Last Day to Reissue/Serve RFPs | Sept. 29, 2026 |
| Search Methodologies Agreement (or Impasse) | Nov. 23, 2026 |

Despite the Parties' good-faith efforts, they have been unable to reach agreement on the remaining deadlines outlined below and respectfully request the Court's resolution of the disputed dates:

| **Event** | **Particle's Proposal** | **Epic's Proposal** |
|---|---|---|
| Motion to Compel re: Scope of Production, If Any, Due | Nov. 23, 2026 | Dec. 4, 2026 |
| Substantial Completion of Party Document Discovery | Jan. 29, 2027 | Mar. 15, 2027 |
| Close of Party Fact Discovery | Apr. 30, 2027 | June 14, 2027 |
| Plaintiff Opening Expert Reports | May 28, 2027 | July 2, 2027 |
| Defendant Rebuttal Expert Reports | June 28, 2027 | Sept. 3, 2027 |
| Plaintiff Reply Expert Reports | July 16, 2027 | Sept. 21, 2027 |
| Close of All Remaining Fact Discovery and Close of Expert Discovery | Aug. 16, 2027 | Nov. 1, 2027 |
| Deadline to File Pre-Motion Letters for Summary Judgment and Daubert Motions | Sept. 10, 2027 | Nov. 8, 2027 |

The Parties' respective positions on the disputed deadlines are set forth below.

**Particle's Position**

Particle's proposed schedule accords with its representation that fact and expert discovery can and should proceed on a "short" and "efficient[]" timeline. Dkt. No. 101 (quoting Dkt. Nos. 80 at 5, 95 at 3). Although Phase Two covers more issues than Phase One, the parties do not begin from scratch. Phase One produced a governing ESI stipulation and protective order, substantial document collection and review, and knowledge of potential custodians and search terms, all of which carry forward. Accounting for both the broader scope and those efficiencies, Particle requests roughly four months from service of document requests to substantial completion of production, and three months thereafter to resolve outstanding production and complete fact depositions. Epic wishes to extend fact discovery by more than six weeks, so it appears not to credit any of the existing work. The gap only widens in expert discovery, which Epic would not close until eleven weeks after Particle would; Epic's demand for 63 days of rebuttal expert reports alone more than doubles the 30-day default under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). Two years into this litigation, with fact discovery still open, each month of delay would permit Epic's market dominance to entrench further, Particle to lose customers and revenue, and consumers to suffer (*see, e.g.*, Dkt. No. 1 ¶¶ 36-42, 45-49, 136, 145), whereas Particle's schedule is designed to move the case efficiently toward resolution. Particle respectfully requests that the Court enter its proposed schedule as set forth above.

**Epic's Position**

Phase I discovery was "'focused,' 'narrow,' and 'limited' discovery solely addressing three issues . . . relating to market definition". (Dkt. No. 47 at 1 (citing Dkt. No. 42 at 30-31, 69).) That is, Phase I was limited to a subpart of *one* element of Particle's antitrust claims. Particle's proposed schedule fails to account for the fact that Phase II encompasses a far broader range of issues than Phase I. Specifically, the Parties have not engaged in discovery on the following issues: (i) the full scope of market definition issues not addressed in Phase I, including customer perceptions of substitutability, pricing, and evidence of actual competition (including customer switching and win/loss data); (ii) the market definition necessary for Particle's monopoly leveraging claim; (iii) the other elements of Particle's antitrust claims, including alleged exclusionary conduct, anticompetitive effects, and market power; (iv) Particle's tortious interference with contract claim; and (v) Epic's defenses to each of Particle's claims. Particle itself has previously represented to the Court that Phase II discovery must encompass the aforementioned issues, acknowledging that Phase I discovery only "overlapped in part with discovery relevant to the broader analysis of market definition and the other antitrust elements" and that discovery on Particle's claim of tortious interference with contract "has not occurred". (Dkt. No. 94 at 3.) To conduct this discovery, the Parties will need to negotiate custodians, search terms, and other search parameters;[1] collect, review, and produce documents; take party depositions across the full breadth of issues;

[1] Particle's contention that Epic has "had nearly a year—and, for Particle's first set of requests, more than eighteen months—to consider its positions" on Particle's RFPs (Ex. B (9/23/2026 Ltr. from K. Bonacorsi) at 2) is beside the point. The Parties are in agreement regarding the deadlines to serve and respond to RFPs. Epic, of course, was not going to undertake the burden of collecting and reviewing documents unrelated to the Phase I topics before there was clarity on whether the case would proceed to Phase II.

serve and negotiate subpoenas and take third parties' depositions; and prepare expert reports and take expert depositions on the full range of issues. Epic's proposed schedule is necessary and appropriate for discovery in this case.

A comparison of Particle's Phase II proposal to the Phase I schedule confirms the inadequacy of Particle's proposal. Particle's Phase II proposal allocates a shorter window for ESI negotiations and provides only one additional week for the Parties to substantially complete their document productions as compared to what the Court ordered in Phase I, despite the broad range of additional topics for Phase II discovery. (*See* Ex. A (9/21/2026 Ltr. from L. Moskowitz) at 1.)[2] In Phase I, the Parties each noticed and completed only *one* party deposition. Particle's proposal for the close of fact discovery in Phase II ignores that the scope of party depositions will be broader. Particle's Phase II proposal also does not account for third party discovery, including the time necessary to negotiate subpoenas, take third party depositions, and move to compel if necessary. (*Id.* at 1-2.)

Particle's proposed expert discovery schedule is particularly inadequate with respect to Epic's expert reports. In a case involving antitrust market definition, monopoly power, competitive effects analysis, and damages, a 31-day window for Epic's expert reports—which must address multiple complex expert disciplines and multiple experts—is insufficient. Particle's suggestion that Epic's proposal creates an "asymmetry" because Particle would have less time after the close of fact discovery to serve its opening reports (*see* Ex. B at 2 n.1) misses the mark for two reasons. *First*, unlike Particle, which can work on its opening expert reports throughout the entire fact discovery period, Epic cannot begin to rebut Particle's expert reports until after they are served. *Second*, Epic proposed the deadline for Particle's opening expert reports as it did in an effort to keep the overall end date of the schedule closer to Particle's proposal. If Particle prefers additional time for its opening expert reports, Epic has no objection. Epic only asks that Epic be allotted at least 60 days following service of Particle's opening reports to serve its expert reports.

For the foregoing reasons, Epic respectfully requests that the Court enter Epic's proposed schedule, or, in the alternative, a schedule that accounts for the concerns Epic raises above.

***

The Parties respectfully request that the Court resolve this dispute and set forth a schedule for the remaining deadlines as identified above. The Parties thank the Court for its attention to this matter and are available at the Court's convenience to discuss the Parties' proposed dates.

[2] Specifically, the Phase I schedule allotted 33 days for ESI-parameter and RFP objections negotiations, whereas Particle's Phase II proposal allocates only 26 days. (*See* Ex. A at 2.) Similarly, Phase I allowed 60 days for substantial completion of document production, whereas Particle's Phase II proposal allows only 67 days—a mere one-week increase despite the far broader scope of Phase II. (*Id.*)

Respectfully submitted,

*/s/ Adam B. Wolfson*

Adam B. Wolfson

*Counsel for Plaintiff Particle Health, Inc.*

*/s/ Lauren A. Moskowitz*

Lauren A. Moskowitz

*Counsel for Defendant Epic Systems Corporation*